**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **REGENT COMMUNICATIONS, INC.,** | |
| **Plaintiff,** | |
| **v.** | No. _____ |
| **RILEY INVESTMENT PARTNERS MASTER FUND, L.P., RILEY INVESTMENT MANAGEMENT LLC, and SMH CAPITAL INC.,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Regent Communications, Inc. ("Regent" or the "Company"), by and through its undersigned attorneys, for its complaint against Defendants Riley Investment Management LLC ("RIM"), Riley Investment Partners Master Fund, L.P. ("RIP" and, collectively with RIM, "Riley") and SMH Capital Inc. ("SMH") (collectively "Defendants"), upon knowledge as to itself and upon information and belief as to all other matters, alleges as follows:

## INTRODUCTION

1.    This action involves ongoing violations of Sections 13 and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by two investment firms, Riley, a registered investment advisor which has been involved in more than 20 hostile corporate campaigns, and SMH, a registered broker-dealer, both subject to regulation by the Securities and Exchange Commission ("SEC") and the National Association of Securities Dealers ("NASD"). Riley and SMH, which also is a market-maker in, and provides research coverage with respect to, Regent, each have beneficial ownership of more than 5 percent of the Company's outstanding common stock – something SMH is required to but has failed to disclose. Indeed, SMH, which

has been making presentations without authorization in its effort to sell its and Riley's shares of

the Company, has represented that it controls as much as 15.5% to the potential buyers it is

soliciting. Given that Regent's Shareholder Rights Plan and the Delaware anti-takeover statutes

are triggered by 15% control by any person or group, the fact of these undisclosed holdings by

SMH alone and together with Riley and other members of their group may have significant

consequences.

2.      Acknowledging that Regent's stock is undervalued, Riley is snapping it up

on the cheap and seeking to wrest control of Regent's board, hoping to force a sale and pocket

the proceeds, depriving Regent's other shareholders of fair value or a control premium for their

shares. Riley's first step, employed in other of Riley's corporate conquests, is to attempt to force

its way onto the Board of Directors. In support of this effort, Riley solicited SMH and other

Regent shareholders to make a demand for a special meeting of Regent's shareholders to expand

the Board and elect a slate of Riley's own hand-chosen directors and amend the bylaws so that

those four directors can appoint additional directors – resulting in a majority position – as

vacancies occur. While the solicited shareholders submitted Riley's convenient fill-in-the-blanks

forms for making the demand Riley desired, Riley failed to provide all those shareholders with

all of the information about itself, its holdings, its purposes, intentions, agreements,

arrangements and understandings including with SMH and other Regent Shareholders - *i.e.*, all

of the information that the federal securities laws require.

3.      In connection with their unlawful solicitation and subsequent demand for a

special meeting of Regent's shareholders and their ultimate aim of control, Riley, SMH and other

shareholders formed a secret "group" with respect to the Company. The fact of this group and

the true facts concerning the purposes of arrangements between and among Riley and SMH and

2

other shareholders in their secret "group' are required to be, but have not been, disclosed.  This group includes both SMH and Riley and their principals, as well as Riley's nominees:  Mr. John Ahn, a Regent shareholder and a principal of RIP; Mr. Bob D'Agostino, a long-time Riley loyalist; Mr. Jared Davis, who was promised a board seat in exchange for filling out and submitting Riley's form demand letter; and Mr. Joseph Patrick Hannan, another Riley nominee.  Other Regent shareholders who have been solicited, and some, including Terry Jacobs, Regent's former Chairman and CEO, are also members of this group.  The undisclosed understandings and agreements in furtherance of Riley's efforts to secretly steal control of the Company are not limited to agreements to support the proposals and nominees put forward by Riley, but also include an understanding that SMH – which has been surreptitiously shopping the Company without authorization – will act as a participant and/or potentially as an investment banker, in any change of control transaction that Riley and SMH seek to engineer.

4.    On August 10, 2007, Riley belatedly filed a press release with the SEC as "soliciting materials" pursuant to Rule 14a-12.  This filing indicates that Riley "may" seek to solicit proxies in support of its proposals and director nominees.  This is the first SEC filing made by Riley in connection with its unlawful solicitation.  It does not even purport to address Riley's prior solicitation of demands for a shareholder meeting in violation of federal securities laws.  While these proxy materials are in themselves materially misleading, and in no way cure the ongoing violations of the federal securities laws, they at least acknowledge what should have been disclosed months ago: that Riley and its affiliates (1) have previously solicited proxies without providing the information that the securities laws require, and (2) have done so with the aim of obtaining votes for Riley's proposals and its candidates.  Indeed, the soliciting materials, while falsely indicating only that Riley "may" solicit proxies, are surprisingly candid in

3

acknowledging that long before any proxy materials were furnished, Riley was soliciting and "with a handful of telephone calls, . . . w[as] able to garner more than 20% of the shareholders to call a special meeting."

5.     Moreover, Riley's recent solicitation materials are materially false and misleading, as are Riley's prior filings on Schedule 13D, because they fail to disclose (1) Riley's arrangements, agreements and understandings with SMH and other shareholders who have demanded a special meeting at Riley's behest, and (2) Riley's intent to elect almost half and ultimately a majority of the Company's board of directors, to buy Regent's stock on the cheap and ultimately force and profit from Regent's sale at the expense of other shareholders..

6.     Moreover, SMH has failed to make the filings required of 5 percent shareholders under the federal securities laws.  SMH has thus failed to make any disclosure at all required by § 13 of the Exchange Act, and Riley's Schedule 13D fails to accurately disclose its purposes and intent with respect to the Company and its agreements and understandings with SMH and other persons in their "group."

7.     Defendants have concealed their concerted efforts and aim to steal control of Regent's board not only because they desire to avoid paying a control premium and hope to obtain that premium for theselves in a forced future sale, but also to avoid the anti-takeover protections that may be triggered if full disclosure of their full shareholding, purposes and group actions are made.   Those protective measures, provided for by Regent's bylaws and governing Delaware law, are meant to ensure what defendants seek to avoid:  that control – including control of the board and the Company's destiny -- may be obtained only upon payment of a control premium and only after full and fair disclosure to all of Regent's shareholders.

8.    In sum, Riley and its nominees violated the Exchange Act's clear requirements including under the proxy rules, that they provide full, candid and truthful disclosure of all material facts relating to their solicitations. Riley and SMH have failed to provide full, candid and truthful disclosure, or in SMH's case, any disclosure, relating to their intentions and agreements with respect to their sizeable holdings of Regent's shares. Such activity is inequitable, violative of the federal securities laws, and threatens irreparable harm to Regent and its shareholders and, thus, must be both disclosed and enjoined.

## PARTIES

9.    Regent is a Delaware corporation with its principal place of business in Covington, Kentucky. The Company is engaged in the business of owning and operating radio stations. As Riley has acknowledged in its public filings, in the past few years Regent has turned in strong operational performance, due both to the success of its continuing operations and to recent strategic acquisitions, and it has posted consistent organic growth rates which have outpaced the terrestrial radio industry's average. However, raiders such as Riley realize that due to "negative public sentiment to the terrestrial radio broadcasting market in general" Regent's public market value has continued to decline and may not reflect the Company's true value.

10.    Riley is a registered investment advisor subject to regulation by the SEC and NASD. Riley, which has been a Regent shareholder for only a matter of months, took advantage of Regent's depressed prices and stealthily acquired a significant stake. According to its latest filing with the SEC, Riley is the beneficial holder of 2,853,242 shares of common stock of the Company, representing approximately 7.4% of Regent's outstanding common stock. Of these holdings, 2,588,913 shares are held by RIP and 688,487 shares are held by investment advisory clients of, or of entities affiliated with, Riley or Riley's principal, Bryant Riley.

11.    According to its website, Riley "is primarily an activist fund" and as such
seeks to influence and ultimately control the companies it invests in.  As a result of these activist
activities, Riley often seeks to place its employees and affiliates on the Boards of  publicly-
traded companies it targets in an effort to "assist" such companies in acceding to its demands
including acquiescing to a forced sale.  Indeed, Riley has been involved in more than 20 hostile
corporate campaigns.  Recently, Riley has engaged in proxy contests resulting in board
representation by its principals, such as that attempted here.  These contests have resulted in Mr.
Riley and Mr. Ahn, a Riley principal and nominee for Regent's board, obtaining board seats at
Alliance Semiconductor Inc., Integrated Silicon Solution, and MAIR Holdings, Inc.  In addition,
Riley recently sought to obtain control of several other companies, including ESS Technologies
and NetManage.   Riley also nominated Bob D'Agostino to serve on the boards of ESS,
Integrated Silicon Solutions, Inc. and  Alliance Semiconductor, and seeks to nominate him as
well as Riley principal John Ahn to serve on the board of  Regent as well.  No information
concerning Riley's history as a corporate raider or its nominees' participation in such efforts at
other companies has been disclosed to Regent's shareholders.

12.    SMH Capital, a Houston-based firm incorporated in Texas, is a registered
broker dealer and a member of NASD/SIPC.  It is a subsidiary of Sanders Morris Harris Group,
Inc., which is also incorporated in Texas.  SMH Capital provides asset management and capital
markets services, investment baking and financial advisory services, trading and research, as
well as brokerage services for hedge funds and fixed income securities sales and trading.  SMH
is a market-maker for Regent's securities and is one of only three brokerage firms that provide
analysts' research on Regent securities.  SMH, without the authorization of Regent, has secretly
been "shopping" the Company, discussing with third parties a possible sale or going private

transaction from which it seeks to profit both as an investor and perhaps also as an investment banker, earning a lucrative fee.

13.    For the past several years, SMH and its affiliates have had direct or indirect voting and disposition authority with respect to shares representing more than 5% of Regent's outstanding stock.  SMH has represented to persons they have solicited to purchase their shares or the Company itself, that SMH controls as much as 15.5% of Regent's shares. Nonetheless, SMH has never made any filing disclosing its interest under § 13 of the Securities Exchange Act.

## JURISDICTION AND VENUE

14.    The claims asserted herein arise under Sections 13(d) and 14(a) of the Exchange Act.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

15.    Venue is proper in this district pursuant to 15 U.S.C. §§ 78aa because the violative conduct occurred in this district where both plaintiff and some of the defendants are incorporated.

## RILEY'S SOLICITATION OF REGENT SHAREHOLDERS FOR CONSENT TO DEMAND A SPECIAL SHAREHOLDER MEETING

16.    On April 4, 2007, Riley and its affiliates filed a Schedule 13D with the Securities and Exchange Commission disclosing for the first time that they were shareholders of Regent and, indeed, significant ones – indicating that they had acquired approximately 2,525,018 shares of Regent, or approximately 6.5% of Regent shares.  Riley's Schedule 13D further disclosed that Riley Investment Management had sole voting and dispositive power over all of such shares and dispositive power over 181,222 shares held by its investment advisory clients. The Schedule 13D disclosed further that Bryant Riley, one of the principals of Riley, controls all of the voting and investment decisions with respect to all of the shares beneficially owned by

7

Riley's investment advisory clients and that B. Riley & Company, which Mr. Riley controls, also owns Regent stock.  Mr. Riley signed the Schedule 13D and all subsequent amendments as an executive of RIP, RIM, B. Riley & Company and on his own behalf.

17.     Section 13(d) of the Exchange Act requires a shareholder holding more than 5% of a Company's shares to file a Schedule 13D and disclose, *inter alia*, the purposes of its investment to other stockholders as well as any arrangements, understandings or agreements with other shareholders with respect to the Company's stock and to amend that Schedule 13D when and if its purposes or other circumstances change.

18.     In its Schedule 13D filed on April 4, 2007, Riley stated that its purposes in acquiring and holding Regent's securities might include "seeking representation on the Board of Directors" or to "acquire the issuer."   In a letter to Regent dated April 4, 2007, which was attached to Riley's Schedule 13D, Riley stated that "we believe that selling Regent Communications may offer the best alternative" and that "we believe that the Company should not remain an independent public company."

19.     Other than the relationships between and among the Riley entities, their investment advisory clients and Mr. Riley, neither this original Schedule 13D nor any subsequent amendments disclosed any other arrangements, understandings or agreements with respect to Regent's securities between Riley and any other Regent shareholder, including SMH.

20.     On June 27, 2007, Riley filed an amendment to its Schedule 13D reflecting that Riley and its affiliates had increased their holdings to 2,824,433 shares, or 7.3 percent of Regents' total shares outstanding.  Of this amount, 2,562,843 were owned by RIP, 261,590 were beneficially owned by Mr. Riley and 397,024 were owned by investment advisory clients of RIM.   This June 27th Schedule 13D/A reflected that, since the original filing in April,

Mr. Riley had acquired beneficial ownership of an additional 261,590 shares including 90,649 which appear to have been purchased from Riley's investment advisory clients. It is not known whether Riley's investment advisory clients were advised of and consented to the interests of Riley and potential conflicts of interest represented thereby prior to the time of these additional significant acquisitions of Regent shares both from them and on their behalf were made or at any time.

21.    Beginning on July 19, 2007 Riley caused letters to be sent, purportedly on behalf of Riley and unnamed investment advisory clients of Riley (the "Riley Form Demand Letters"), calling for a special meeting of Regent's stockholders to: (1) amend the Company's bylaws to fix the number of directors at nine; (2) amend the Company's bylaws to allow stockholders to fill vacancies on the board created by increasing the size of the board or the removal of a director by the stockholders; (3) elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan as directors of the Issuer to fill the vacancies on the board; and (4) repeal any provisions or amendments to the Company's bylaws adopted after the last version filed with the Securities and Exchange Commission.

22.    The first Riley Form Demand Letter noted that Riley was the holder of record of 1,000 shares and  the beneficial holder of 2,587,913 shares (the "First Riley Form Demand Letter"). The second Riley Form Demand Letter, was purportedly sent on behalf of shares beneficially owned by Riley, Putnam NBF Securities and Richard McKenzie Jr., IRA, which shares were referred to collectively as "RIP," in the total amount of 3,056,969 (the "Second Riley Form Demand Letter"). The third Riley Form Demand Letter on behalf of Pershing LLC with respect to 3,744,882 shares asserted that "RIP" (Riley Investment Partners

Master Fund, L.P.) was the beneficial holder of those shares (the "Third Riley Form Demand Letter"). Copies of the three Riley Form Demand Letters are attached as Exhibit A.

23.    On information and belief, Riley solicited the consents of Putnam NBF Securities and Richard McKenzie Jr IRA and either solicited the consents of its investment advisory clients to send the Form Demand Letter on their behalfs or failed to obtain such consents. In either event, Riley failed to comply with the proxy solicitation rules under federal securities laws, and failed to disclose to any of the shareholders it solicited – or to its investment advisory clients – the nature of Riley's own interests in and intentions and agreements concerning Regent's securities, including its intention to take control of the Board, to force a sale and to keep any control premium for itself and its group to the detriment of other Regent stockholders.

24.    On July 20, 2007, Riley filed a further amended Schedule 13D/A, reflecting that Riley and its affiliates owned 2,853,242 Regent shares or 7.4% of Regent's total shares outstanding. Of this total, 2,588,913 were held by RIP. The 264,329 shares shown in the June 27th Schedule 13D/A as being owned by Mr. Riley were now indicated as being held by his investment advisory clients.

25.    In its July 20th Schedule 13D/A, Riley reported that the Riley Form Demand Letters had been sent, and acknowledged that its purposes in acquiring and holding Regent's securities included seeking the special meeting to attempt to increase the board and elect its own directors, *i.e.*, Messrs. Ahn, D'Agostino, Davis and Hannan. The July 20, 2007 Schedule 13D/A acknowledged that "[t]he taking of the actions proposed by [Riley] at the special meeting of Issuer's stockholders described above would result in a change in the Issuer's present board of directors and management."

26.     In the July 20, 2007 Schedule 13D/A, Riley disclosed that Mr. Davis and Mr. Ahn, its nominees for election to Regent's board of directors, owned 376,065 and 13,000 Regent shares, respectively.  The Schedule 13D/A did not disclose that Mr. Ahn was an affiliate of Riley and a principal of RIP, nor that he and Mr. D'Agostino had been appointed to serve on other boards that were Riley targets in other hostile proxy contests.  The Schedule 13D/A also failed to disclose that, on information and belief, Riley had solicited Mr. Davis, in his capacity as a significant Regent shareholder, to submit a Form Demand Letter and had entered into agreements or understandings with Messrs. Davis and Ahn to nominate them to the Regent Board so that they would further Riley's efforts to wrest control of Regent's board and force its sale.  In addition, the Schedule 13D/A failed to disclose that Mr. Hannan had previously been censured by the NASD and the SEC.

27.     On and after the date that the Riley Form Demand Letter was sent, certain other Regent shareholders sent, or directed Cede & Co. to send, the same form of letter sent by Riley calling for a special meeting (the "Form Demand Letters").  Each of these Form Demand Letters bears a "cc" notation to John Ahn, Riley Investment Management LLC.  Copies of these virtually identical Form Demand Letters are attached hereto as Exhibit B.  There are a total of 10 different letters which were sent on behalf of at least 35 different beneficial owners of Regent stock and an unknown number of Riley investment advisory clients who were not named.

28.     Some or all of the shareholders who sent the Form Demand Letters were solicited by Riley to send the Form Demand Letters.  In fact, in correspondence to Regent, later filed with the SEC, Riley has admitted that it made at least "a handful of phone calls" to Regent investors in its successful efforts "to garner more than the 20% of the shareholders to call a special meeting" and, as noted, John Ahn of Riley was cc'd on every one of the letters that was

sent. However, not all of the Riley shareholders that were solicited were provided with all of the information concerning Riley's intentions to seek to wrest control of Regent's board and force its sale, nor were they advised of the relationships, understandings, arrangements and agreements between and among the Riley entities and affiliates, their nominees for election to Regent's board, and the creation of the group alleged herein.

29.     In addition to these successful solicitations resulting in Form Demand Letters being sent, one of Regent's directors, Jack Wyant, was solicited by John Ahn, one of Riley's principals and nominees, who requested that Mr. Wyant submit a demand for a shareholder meeting to Regent. Mr. Wyant, who beneficially owns more than 8 percent of Regent's stock, declined. Other Regent stockholders may have been solicited and declined to send demands as well.

30.     By a letter dated July 26, 2007, Mr. Davis, one of Riley's nominees for election to Regent's board of directors, sent a Form Demand Letter representing that he held 300,000 shares (the "Davis Form Demand Letter"). A copy of the Davis Form Demand Letter is attached as Exhibit C. On information and belief, Mr. Davis was solicited by Riley to send the Davis Form Demand Letter and did so pursuant to an understanding that he would be nominated to serve on Regent's board of directors. As a nominee, Mr. Davis, as well as Messrs. Ahn, D'Agostino and Hannan, are participants with Riley in the unlawful solicitation in violation of the federal proxy rules complained of herein.

31.     On August 3, 2007, Riley forwarded a Form Demand Letter dated July 31, 2007, on behalf of Pershing LLC with respect to 3,744,882 shares held by various customers listed in an attachment under the heading "SMH Capital." A copy of this Form Demand Letter (the "SMH Form Demand Letter") is attached hereto as Exhibit D. The SMH Form Demand

Letter was identical to the Third Riley Form Demand Letter that had been sent on July 19th by

Riley, but took out the reference to Riley Investment Partners but still listed "RIP" as the short

form definition for the SMH shareholders on whose behalf demand was made. Because of this

discrepancy, Regent requested that a demand letter be sent directly from Pershing or SMH. The

SMH Form Demand Letter was not sent directly to Regent until August 8.

        32.    The list of shareholders attached to the SMH Form Demand Letter

indicates that most of the shareholders on whose behalf that demand was made are affiliated with

SMH Capital and/or its principal, Don Sanders. Many of the shareholders listed on the

attachment to the SMH Form Demand Letters are Sanders Funds, Sanders IRAs and Sanders

family trust funds, and members of the Sanders family, individually, many of whom list the same

address. In total, 2,197,881 shares, or more than 6 percent of Regent's shares, appear to be

owned by Sanders-related shareholders. In 2002, SMH was allocated 2 million shares in

connection with Regent's secondary public offering. In connection with that offering, Mr.

Sanders represented to Regent that SMH's clients would buy the shares because "they buy what I

tell them to buy" – or words to that effect. In the next two years, SMH and its customers and

affiliates purchased additional shares. On information and belief, the other listed shares on the

attachment to the SMH Form Demand Letter belong to SMH's customers, and SMH has direct or

indirect authority to direct the voting and disposition of those shares.

        33.    SMH, through its principal Don Sanders, has represented to potential

buyers of his and SMH's and others' shares that he and/or SMH controls 15.5% or as many as 6

million shares of Regent. In connection with its unauthorized efforts to sell the Company, SMH

has circulated unauthorized and false and misleading materials to prospective investors – of

which Regent has obtained from third parties only two pages. On one of those pages, SMH

represents – falsely in several instances at least – that "certain shareholders have currently expressed interest in selling their shares if the appropriate opportunity was presented." The materials purport that SMH has discussed the possibility of selling the Company with shareholders representing 51.2% of the outstanding shares of the Company, including Jacobs and Riley, and "selected clients of Don Sanders" who are claimed to hold 1%, 7% and 15.5% of the Company's outstanding stock, respectively.

34.    Although the Sanders-related shareholders and SMH listed on the SMH Form Demand Letter collectively hold more than 6 percent of Regent's shares and the aggregate number of shares on the SMH Form Demand Letter represent close to 10 percent, and Sanders and SMH claimed to control as much as 15.5%, neither SMH nor any of the shareholders on the July 31 Form Demand Letter list has filed a Schedule 13D or 13G as required by the Securities Exchange Act.

35.    Riley and/or SMH either solicited the consents of SMH's clients to send the Form Demand Letter or SMH authorized the demand on their behalf, but in either event failed to comply with the proxy solicitation rules under federal securities laws and failed to disclose to SMH's clients who were Regent shareholders the nature of SMH's own interests in and intentions and agreements concerning Regent's securities, including as a banker or investor in a sale of the company, interests at least potentially in conflict with the SMH clients on whose behalf the demand was purportedly made.

36.    By a letter dated August 8, 2007, the same day that Regent received the SMH Form Demand Letter directly, Terry Jacobs, who had been Regent's Chairman and CEO since its founding in 1996 until his resignation on September 1, 2005 and who remained on the Regent Board until May 9, 2006, and whose fiduciary duties to maintain the Company's

14

confidential information continue to this date, sent a Form Demand Letter representing that he

held 400,031 shares or more than 1 percent of the total outstanding shares of Regent (the "Jacobs

Form Demand Letter"). A copy of the Jacobs Form Demand Letter is attached as Exhibit E.

Mr. Jacobs was solicited by SMH and Riley to send the Jacobs Form Demand Letter and in fact

assisted in soliciting additional Regent shareholders and in SMH's surreptitious efforts to sell the

Company as described above.

37.     On information and belief, Riley and certain other Regent shareholders,

including SMH, Davis, Ahn and Jacobs have formed a group within the meaning of Section

13(d) of the Exchange Act. Aggregating the 6% share interest owned by SMH and Sanders-

related shareholders alone with the 7.4 % owned by Riley and its affiliates and investment

advisory customers, the Riley/SMH Group holds at least 13.4% of the Company's shares. If

Jacobs', Davis' and Ahn's shares are added, the total exceeds 15%. If SMH's representations to

potential buyers are correct, SMH's holdings alone exceed 15%.

**The Disclosures Required By The Federal Securities Laws May Reveal That Regent's Anti-Takeover Provisions Have Been Triggered**

38.     Riley and SMH and any other stockholders in their group have every

motive to conceal their concerted activities and intentions because, if any stockholder or group of

stockholders holds more than 15% of Regent's shares, various provisions of Delaware law and

the Company's governance documents designed to prevent hostile, coercive and undisclosed

acquisitions of control are immediately triggered, *i.e.*, Regent's shareholder rights plan and

Section 203 of the Delaware Corporations Law. The triggering of the shareholder rights plan

would result in the issuance of rights to purchase additional shares to those of Regent's

shareholders who were not members of the group seeking to obtain control, resulting in

significant dilution of the number of shares and voting power of those who are members of the

group. Section 203 has automatic "standstill" provisions that would prevent any control group from acquiring additional shares or engaging in any change in control transaction concerning the company for a period of three years. These protections were intended by the Delaware legislature and by Regent's board to prevent the very sort of creeping acquisitions and efforts to force a change of control without providing existing shareholders a control premium – the very effort that defendants are attempting here.

### Riley's Delaware Chancery Action Seeks To Compel A Meeting Despite Riley's Blatant Proxy Violations

39.    On July 19, 2007, Riley demanded that Regent provide it with a list of all of its stockholders and other documents. Riley explained that the express purpose for seeking these stockholder lists was "to enable [Riley] to send a notice regarding, and otherwise communicate with the Company's stockholders with respect to" the special meeting Riley sought.

40.    Regent initially rejected Riley's demands and refused to provide the lists of its stockholders because Riley's demands appeared to be an attempt to circumvent the proxy solicitation process by communicating directly with the stockholders without the required filing of proxy solicitation materials, including a proxy statement meeting the requirements of Section 14(a) of the Securities Exchange Act of 1934.

41.    Even without the stockholder list, however, as shown above, Riley unlawfully communicated with Regent stockholders and requested that they submit the Form Demand Letters to Regent. These communications constitute a solicitation within the meaning of Section 14(a) of the Securities Exchange Act and Rule 14a-1 promulgated thereunder.

42.    On August 8, 2007, Regent provided a stockholder list to Riley.

## RILEY'S PRESS RELEASE VIOLATES THE PROXY RULES

43.    On August 9, 2007,  Riley published a press release (the "Press Release") announcing that Riley had filed a lawsuit against Regent.  Both the lawsuit and the Press Release falsely indicated that Regent had failed to provide a stockholder list and had wrongfully refused to call a special meeting as demanded by the Form Demand Letters.   The timing and content of the Press Release clearly demonstrate that it was directed at Regent's stockholders and was reasonably calculated to influence the stockholders to demand the special meeting and then to vote their proxies in favor of the proposals and nominees proposed by Riley.  As such, the Press Release constitutes a solicitation within the meaning of Section 14(a) of the Securities Exchange Act.

44.    On August 10, 2007, Riley filed the August 9th Press Release as soliciting materials under Rule 14a-12 under the Securities Exchange Act.  These materials are delinquent and inadequate and serve to perpetuate the ongoing violations of the federal securities laws.  Riley acknowledges in the August 9th press release that it had been soliciting consents from Regent stockholders all along, acknowledging that it has made  "telephone calls" which enabled it "to garner more than 20% of the shareholders to call a special meeting."  However, Rule 14a-12 plainly says that a definitive proxy statement meeting the requirements of the Exchange Act must be sent to shareholders <u>before</u> forms of proxy, consent or authorization are requested.  Riley flagrantly ignored this requirement.

45.    Moreover, in its August 9th Press Release, Riley has finally acknowledged that it "may" seek to solicit proxies in support of its proposals to expand Regent's board and then to elect almost half of its directors who then may fill any vacancy that later occurs.  This late disclosure is misleading in characterizing Riley's true intention as merely conditional and, in any

17

event, does not cure but rather proves that the prior solicitations were made in violation of the securities laws. Moreover, this Press Release is materially false and misleading, as are Riley's prior filings on Schedule 13D, for failure to disclose Riley's arrangements, agreements and understandings with SMH and other shareholders who have demanded a special meeting and its intent to ultimately obtain control of the board, to force its sale and to profit on that sale from the stock they and their group have bought at depressed prices at the expense of other shareholders.

46.     Riley had a legal obligation under Rules 14a-3, 14a-6 and 14a-12 under the Exchange Act to furnish Regent stockholders with the information required by Schedule 14(a) before requesting proxies, consents or authorizations. In addition, Rule 14a-9 prohibits it from making false or misleading statements in any proxy solicitation materials (including the August 9th Press Release and any other solicitations, regardless of whether filed).

47.     Riley and SMH and other members of their group had a legal obligation to file Schedule 13Ds and to update them as required in order to alert investors as to the amounts of their holdings in Regent, their relationships, understandings, arrangements and agreements with other shareholders and their purposes and intentions with respect to Regent's securities. Riley and SMH and any other members of their group have failed to provide the full and fair disclosure that Section 13(d) requires.

## COUNT I

### VIOLATION OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 (RILEY)

48.     Regent repeats and realleges paragraphs 1 through 47 as if fully set forth herein.

49.    Regent's securities are registered under Section 12 of the Securities and Exchange Act of 1934.

50.    The Form Demand Letters constitute proxies, consents or authorizations within the meaning of Section 14(a) of the Securities Exchange Act and, therefore, constitute "proxies" for purposes of the SEC's proxy rules.

51.    Riley requested that more than ten Regent stockholders make a demand and requested those who were willing to execute the Form Demand Letters, furnished the Form Demand Letters to Regent's shareholders under circumstances reasonably calculated to result in the procurement of the Form Demand Letters and otherwise solicited Regent's shareholders to execute the Form Demand Letters and/or demand a special meeting of the Company's shareholders, all of which constituted solicitations of proxies within the meaning of Section 14(a) of the Securities Exchange Act and Rule 14a-1 promulgated thereunder.

52.    Riley did not furnish any information to Regent's stockholders or make any filings with the SEC in connection with these proxy solicitations in flagrant violation of federal securities laws, including Section 14(a) under the Securities Exchange Act and Rule 14a-3 (providing that "[n]o solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with: (1) a publicly-filed preliminary or definitive written proxy statement containing the information specified in Schedule 14A (§ 240.14a-101)") and/or Rule 14a-6 (requiring filing of proxy statements and other soliciting materials with the SEC) and/or Rule 14a-12 (requiring filing with the SEC of pre-filing written communications that are made before furnishing a proxy statement meeting the requirements of Rule 14a-3).

53.     Riley issued its August 9th Press Release and advised that it "may" seek to solicit proxies in support of its proposals to expand Regent's board and then to elect almost half of its directors who then may fill any vacancy that later occurs.  This Press Release, which Riley filed with the SEC under Rule 14a-12 on August 10, 2007, is the first and only proxy solicitation material filed by Riley with the SEC and does not even purport to satisfy Riley's flagrant violation of federal securities laws in connection with Riley's solicitation of the Form Demand Letters.  Indeed, Riley's press release itself constitutes a further violation of federal securities laws because Rule 14a-12 requires that "[a] definitive proxy statement meeting the requirements of Exchange Act Rule 14a-3(a) is sent or given to security holders solicited in reliance on this Rule 14a-12 *before or at the same time* as the forms of proxy, consent or authorization are furnished to or requested from security holders."

54.     Riley's violations of Section 14(a) and the related SEC rules are continuing and without the equitable intervention of this Court will cause Regent's shareholders, as well as Regent itself, irreparable injury.

COUNT II

VIOLATION OF SECTION 14(a) OF THE SECURITIES EXCHANGE
ACT OF 1934 AND RULE 14a-9

55.     Regent repeats and realleges paragraphs 1 through 54 as if fully set forth herein.

56.     Riley's August 9th, 2007 Press Release constituted a solicitation within the meaning of Section 14(a) of the Securities Exchange Act and Rule 14a-1.

57.     Riley's Press Release contained false and misleading statements inasmuch as it characterized Riley's intention to solicit proxies in support of its nominees and proposals as

merely conditional, and in failing to disclose Riley's true purposes, intents, arrangements and understandings as alleged herein.

58.     Riley's August 10th, 2007 Schedule 14A and the Press Release were also materially misleading because:

a)   The Press Release states that Regent refused to provide the stockholder list materials to Riley, even though Riley knew at the time of publication that Regent had in fact provided the stockholder list to Riley.

b)   Riley's August 9th letter to Regent, which is reproduced in and forms a part of the Press Release, states that Regent has delayed calling a special meeting and providing stockholder list materials "because [Regent] want[s] to impede improperly our right to contact other shareholders to solicit their proxies to elect new directors to the board," even though Regent has acted diligently and expeditiously to verify documentation provided by Riley and is only seeking to ensure that Riley complies with the federal securities laws applicable to all our stockholders.

59.     The Press Release was also materially misleading because it failed to disclose that:

a)   Riley had been engaged in proxy solicitation activities since at least June or July 2007 in violation of federal securities laws in connection with its solicitation of the Form Demand Letters;

b)   Riley, along with Mr. Riley, Mr. Ahn and Mr. D'Agostino has engaged in numerous hostile proxy contests for corporate control over the last several years;

21

c) Riley's nominees other than Davis were either principals or loyalists who had agreed to serve at Riley's behest in connection with proxy contests for Regent and various other public companies;

d) Davis had an arrangement or understanding with Riley that he would be appointed to Regent's board in return for his agreement, in response to Riley's solicitation, to send a Form Demand Letter to Regent;

e) Mr. Hannan has been censured by the SEC and the NASD in the past;

f) Riley has had the intention since at least April 2007, of seeking to take Regent private or otherwise obtaining control of its board and acquiring its shares at depressed prices in order to reap the profit after forcing the Company's sale to the detriment of Regent's other shareholders.

60.    At the time the Press Release was issued, Riley knew the foregoing statements and omissions were false and misleading, recklessly disregarded the falsity of such statements, or was negligent in failing to investigate and discover that the statements were false and misleading.

61.    As a result of this conduct, the Press Release and Riley's Schedule 14A violate Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9.

COUNT III

VIOLATION OF SECTION 13(d) OF THE
EXCHANGE ACT (RILEY AND SMH)

62.    Regent repeats and realleges paragraphs 1 through 61 as if fully set forth herein.

63.    Once each of Riley and SMH, alone or through their affiliates, each acquired, directly or indirectly, in excess of five percent of the outstanding stock of the

Company, each was required under Section 13 of the Exchange Act to file a Schedule 13D or 13G disclosing, *inter alia*, their intentions with respect to their investment in Regent and their allegiance with other persons as part of any "group." Moreover, upon a material change in the information reported, such Schedule 13D filings are required to be promptly amended.

64.     Defendant SMH is in violation of Section 13 in that it has failed to make any of the filings and disclosures required by that statute although SMH and its affiliates own in excess of 5 percent of the shares of the Company.

65.     Defendants Riley and SMH are also in violation of Section 13(d) in that they have failed to disclose that, on information and belief, they are acting together, and with other shareholders which may include Jared Davis, Terry Jacobs, John Ahn and others as a "group" as construed under Rule 13d-5(b)(1), for the purpose of seeking to amend the bylaws of the Company and elect directors including principals and affiliates of Riley, and Mr. Davis, to Regent's board.

66.     Riley's Schedule 13D is materially false and misleading in that it fails to disclose its agreements and understandings with Mr. Ahn and Mr. Davis and its relationship with Mr. D'Agostino.

67.     Riley's Schedule 13D is materially false and misleading in that it fails to disclose that:

        a)  Riley had been engaged in proxy solicitation activities since at least mid-June or July 2007 in violation of the securities laws in connection with its solicitation of the Form Demand Letters;

        b)  Riley, as well as Mr. Riley, Mr. Ahn and Mr. D'Agostino have been engaged in numerous hostile proxy contests for corporate control over the

last several years;

c)  Riley's nominees other than Mr. Davis were either principals or loyalists with past board service at Riley's behest in connection with various proxy contests;

d)  Mr. Davis had an arrangement or understanding with Riley that he would be appointed to Regent's board in return for his agreement, in response to Riley's solicitation, to send a Form Demand Letter to Regent;

e)  Mr. Hannan has been censured by the SEC and the NASD in the past;

f)  Riley has had the intention since at least April 2007, of seeking to take Regent private or otherwise obtaining control to the detriment of Regent's other shareholders.

68.  At the time that Riley filed its Schedule 13Ds it knew that such documents were false or misleading in failing to disclose the existence of its agreements and understandings with SMH, Mr. Davis and other shareholders.

69.  Defendants violations of Section 13(d) are continuing and without the equitable intervention of this Court will cause Regent's shareholders, as well as Regent itself, irreparable injury.

70.  Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiff requests that the Court enter an Order:

a)  ordering that no special meeting of stockholders for the purposes outlined in the Form Demand Letters may be held until Riley complies with its obligations under the federal securities laws;

b)  declaring that Riley's solicitations of the Form Demand Letters violated

the federal securities laws and that the Demand Letters secured thereby are
unlawful, void and of no force and effect;

c)  enjoining any further solicitations of the From Demand Letters or any
other solicitations of proxies, consents or authorizations until Riley
complies with its obligations under the federal securities laws;

d)  requiring corrective disclosure with respect to Riley's false and misleading
statements or omissions in connection with the Press Release and related
Schedule 14A and enjoining Riley from any further similar violations of
federal securities laws;

e)  declaring that SMH violated the federal securities laws by failing to file a
Schedule 13G or 13D and directing that SMH make such filings as
required and comply with all applicable federal securities laws in
connection therewith;

f)  declaring that Riley and SMH formed a "group" under applicable federal
securities laws and violated the federal securities laws by failing to file a
Schedule 13D with respect to such "group" and directing that Riley, SMH
and any other member of the "group" file a Schedule 13D and comply
with all applicable federal securities laws in connection therewith; and

g)  Granting such further relief as this Court shall deem appropriate.

Dated:  August 15, 2007                    Respectfully submitted,

_____
Attorneys for Plaintiff Regent Communications, Inc.

Raymond J. DiCamillo (#3188)
DiCamillo@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
10th and King Streets
Wilmington, Delaware  19899
Tel:  (302) 651-7700
Fax:  (302) 651-7701

-and-

Laurie B. Smilan
LATHAM & WATKINS LLP
11955 Freedom Drive, Suite 500
Reston, Virginia  20190
Tel:  (703) 456-1000
Fax:  (703) 456-1001

# EXHIBIT A

## DEMAND TO CALL A SPECIAL MEETING

Riley Investment Partners Master Fund, L.P.
c/o Riley Investment Management LLC
11100 Santa Monica Blvd., Suite 800
Los Angeles, CA 90025

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Riley Investment Partners Master Fund, L.P. ("RIP") is a holder of record of 1,000 shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). A copy of RIP's stock certificate is attached. In addition, RIP is the beneficial holder of 2,587,913 shares of Common Stock.

As a holder of record, RIP hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.  To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

    SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting

power of a majority of the shares present and entitled to vote at the meeting.

2.  To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4.  VACANCIES IN THE BOARD OF DIRECTORS.  In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.  To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.  To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

RIP further requests that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. RIP demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

RIP reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then

RIP reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

RIP, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

Sincerely,


Riley Investment Partners Master Fund, L.P.
By: Riley Investment Management LLC, its
general partner

By: _____
      Name:  John Ahn
      Title:  Principal


Attachment



# DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Pershing, LLC ("Participant"), that on the date hereof 3,744,882 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by Riley Investment Partners Master Fund, L.P. ("RIP") a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.  To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

    SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2. To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS. In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3. To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4. To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

2

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting.  If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By: _____
Name:
Title:

Peter J. Gleason, partner

cc: John Ahn, Riley Investment Management LLC

4

JUL-19-2007 09:19 FROM:                    201 793 6652          TO:212 855 5181          P.3

# DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant U&S Securities LLC ("Participant"), that on the date hereof 3,056,969 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by Riley Investment Partners Master Fund, L.P., Putnam MBF Securities Inc. and Richard McKenzie JR, IRA (collectively "RIP"), customers of the Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.  To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

    SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This

LCCATION:201 793 6652          RX TIME          07/19 '07 09:01

provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2.     To amend Section 4 of Article II of this Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

SECTION 4.  VACANCIES IN THE BOARD OF DIRECTORS.  In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term, provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.     To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.     To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of RJP, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above.  This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals.  Code & Co., at the request of the Participant on behalf of RJP, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

Code & Co., at the request of the Participant on behalf of RJP, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Code & Co., at the request of the Participant on behalf of RJP, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Code & Co., at the request of the Participant on behalf of RJP, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

JUL-19-2007 08:18 FROM:          201 793 6652          TO:212 855 5181          P.6

While Cede & Co., is furnishing this request as the shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true parties in interest, RIP. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that RIP are not denied its rights as the beneficial owners of the Shares, and Cede & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By:
Name:
Title:

**Peter J. Glueason, partner**

cc: John Ahn, Riley Investment Management LLC

# EXHIBIT
# B

# DEMAND TO CALL A SPECIAL MEETING

Cede & Co,
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 26, 2007

VIA DHL, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Ridge Clearing and Outsourcing Solutions, Inc. ("Participant 158"), that on the date hereof 300,000 credited to Participant DTC account are beneficially owned by Jared Davis a customer of Participant.

At the request of Participant on behalf of Jared Davis, Cede & Co., as a holder of record of the Shares hereby request that you call a special meeting of the shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati Ohio time, on September 3, 2007 at Cincinnatan Hotel, 601 Vine Street, Cincinnati, OH 45202 for the following purposes and to conduct the following business:

1.     1. To amend Section 1 of Article II of the Company's Amended and Restated By-
laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting

power of a majority of the shares present and entitled to vote at the meeting.

2. To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS. In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3. To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4. To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Jared Davis, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Code & Co., at the request of the Participant on behalf of Jared Davis, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

2

Cede & Co., at the request of the Participant on behalf of Jared Davis, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Jared Davis, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Jared Davis, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

While Cede & Co., is furnishing this request as the shareholder of record of the Shares, it does so only at the request of the Participants and only as a nominal party for the true party in interest, Jared Davis. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Jared Davis is not denied his rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter. This letter shall supersede the Demand to Call a Special Meeting dated July 20, 2007 sent on behalf of the Participant for Jared Davis.

Sincerely,

Cede & Co

By: _____

Name:
Title:

Peter J. Gleason, partner

4

FAX
ORIGINAL

## DEMAND TO CALL A SPECIAL MEETING

### Terry S. Jacobs

### 6561 Madeira Hills Drive

### Cincinnati, Ohio 45243

August 08, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention:  Secretary and President

Dear Sir or Madam:

Terry S. Jacobs ("Stockholder") is a holder of record of 400,031 shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). An exhibit listing Stockholder's stock certificates and number of shares is attached.

As a holder of record, Stockholder hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.    To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1.  NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders.  Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2.  To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS.  In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.  To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.  To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

Stockholder further requests that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above.  This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals.  Stockholder demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

Stockholder reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors.  To the extent that the size of the Board of Directors is increased above five (5), then Stockholder reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting.  Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size

2

of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Stockholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting.   If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

Sincerely,

Terry S. Jacobs

By: *Terry S. Jacobs*

Attachment

3

08/08/2007  16:36    513-381-1248          THE JFP GROUP                          PAGE  05/05

## Regent Communications, Inc. (RGCI) Common Stock
## <u>Owned by Terry S. Jacobs</u>

| Certificate No. | Number of Shares |
|---|---|
| FTB 0815 | 37,909 |
| FTB 0466 | 300,000 |
| FTB 0799 | 1,988 |
| FTB 0797 | 20,000 |
| FTB 0761 | 4,450 |
| FTB 0398 | 654 |
| FTB 0597 | 10,144 |
| FTB 0496 | 24,855 |
| FTB 0949 | 31 |
| | 400,031 |

# DEMAND TO CALL A SPECIAL MEETING

**Cede & Co.**
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Banc of America Securities LLC ("Participant"), that on the date hereof 192,776 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by GPC LXII, LLC ("Shareholder"), a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

  1.   To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

        SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

FILE No.714 07/19 '07 13:40   ID:DTC REORG & PROXY          FAX:212 855 5181              PAGE  3/  5

JUL 19 2007 09:58 FR 6467334375              6467334375 TO 912128555182          P.04

may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2.     To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4.  VACANCIES IN THE BOARD OF DIRECTORS.  In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.     To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.     To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above.  This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals.  Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By: _____

Name:

Title:

**Peter J. Gleeson, partner**

cc: John Ahn, Riley Investment Management LLC



# DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/n The Depository Trust Company
55 Water Street
New York, NY 10041

July 26, 2007

VIA DHL, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio  45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Ridge Clearing and Outsourcing Solutions, Inc. ("Participant 158"), that on the date hereof 108,986 credited to Participant DTC account are beneficially owned by Kevin H. McClorey a customer of Participant.

At the request of Participant on behalf of Kevin H. McClorey, Cede & Co., as a holder of record of the Shares hereby request that you call a special meeting of the shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati Ohio time, on September 3, 2007 at Cincinnatian Hotel, 601 Vine Street, Cincinnati, OH  45202 for the following purposes and to conduct the following business:

1.      1. To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

may only be amended by stockholders holding the voting
power of a majority of the shares present and entitled to vote
at the meeting.

2.    To amend Section 4 of Article II of the Company's Amended and Restated By-
laws, by replacing it in its entirety with the following:

SECTION 4.  VACANCIES IN THE BOARD OF
DIRECTORS.  In the event a vacancy in the Board of
Directors or any director's office is created by reason of death,
resignation, disqualification, removal or other cause or by
reason of any increase in the authorized number of directors,
the directors then in office, though less than a majority of the
whole authorized number of directors, by the vote of a
majority of their number, or a sole remaining director may fill
such vacancy for the unexpired term; provided that any
vacancy in the Board of Directors that results from an increase
in the number of directors approved by the stockholders or the
removal of a director by the stockholders shall be filled by
stockholders at a meeting or special meeting holding a
plurality of the voting power of the shares present and entitled
to vote at such meeting.  This provision may not be amended
by the Board of Directors and may only be amended by
stockholders holding the voting power of a majority of the
shares present and entitled to vote at the meeting.

3.    To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to
the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.    To repeal each provision of or amendment to the Company's Amended and
Restated By-laws (other than any amendments contemplated by the foregoing
proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the
Company's quarterly report on Form 10-Q for the quarter ended September 30,
2005, as filed with the Securities and Exchange Commission on November 9,
2005.

At the request of the Participant on behalf of Kevin H. McClorey, the undersigned further
request that, at such time as the Company has received requests from other stockholders who,
together with the Shares, hold in excess of 20% of the Company's outstanding stock, the
Company set the date and time of the special meeting as requested above.  This Notice shall
serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below
described nominations and proposals. Cede & Co., at the request of the Participant on behalf of
Kevin H. McClorey, demands that voting at the Special Meeting be conducted by a stock vote
pursuant to Section 6 of Article I of the By-laws.

Cede & Co., at the request of the Participant on behalf of Kevin H. McClorey, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Kevin H. McClorey, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Kevin H. McClorey, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

While Cede & Co., is furnishing this request as the shareholder of record of the Shares, it does so only at the request of the Participants and only as a nominal party for the true party in interest, Kevin H. McClorey. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Kevin H. McClorey is not denied his rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter. This letter shall supersede the Demand to Call a Special Meeting dated July 25, 2007 sent on behalf of the Participant for Kevin H. McClorey.

Sincerely,

Cede & Co

By: _____
Name:
Title:

**Peter J. Oleson, partner**

4

07/26/2007   19:47        12126356560
2007-Jul-26  04:20pm  From-BNY SUNGARD                    1 212 635 6560        T-235  P.001/004  F-666

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 26, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

This demand letter is deemed to replace in its entirety our demand letter sent on behalf of the Participant dated July 24, 2007. The letter dated July 24, is hereby revoked.

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of 166,818 shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant The Bank of New York ("Participant"), that on the date hereof 166,818.00 of such shares (the "Shares") credited to DTC 0901 account are beneficially owned by Lewcom LTD. L.P. ("Shareholder") a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

    1.    To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized

07/26/2007    18:47                                                                        NO.514    P003

2007-Jul-26  04:20pm   From-BNY SUNGARD              1 212 635 6560        T-235  P.002/004  F-666

number of directors shall not become effective until the
expiration of the term of the directors then in office, unless at
the time of such decrease, there are vacancies on the Board of
Directors which are being eliminated by the decrease.  This
provision may not be amended by the Board of Directors and
may only be amended by stockholders holding the voting
power of a majority of the shares present and entitled to vote
at the meeting.

2.    To amend Section 4 of Article II of the Company's Amended and Restated By-
laws, by replacing it in its entirety with the following:

SECTION 4.  VACANCIES IN THE BOARD OF
DIRECTORS.   In the event a vacancy in the Board of
Directors or any director's office is created by reason of death,
resignation, disqualification, removal or other cause or by
reason of any increase in the authorized number of directors,
the directors then in office, though less than a majority of the
whole authorized number of directors, by the vote of a
majority of their number, or a sole remaining director may fill
such vacancy for the unexpired term; provided that any
vacancy in the Board of Directors that results from an increase
in the number of directors approved by the stockholders or the
removal of a director by the stockholders shall be filled by
stockholders at a meeting or special meeting holding a
plurality of the voting power of the shares present and entitled
to vote at such meeting.  This provision may not be amended
by the Board of Directors and may only be amended by
stockholders holding the voting power of a majority of the
shares present and entitled to vote at the meeting.

3.    To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to
the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.    To repeal each provision of or amendment to the Company's Amended and
Restated By-laws (other than any amendments contemplated by the foregoing
proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the
Company's quarterly report on Form 10-Q for the quarter ended September 30,
2005, as filed with the Securities and Exchange Commission on November 9,
2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at
such time as the Company has received requests from other stockholders who, together with the
Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and
time of the special meeting as requested above.  This Notice shall serve to satisfy the notice
requirements of Section 2 of Article I of the By-laws as to the below described nominations and

07/26/2007    18:47    NO.514   D004
2007-Jul-26  04:20pm   From-BNY SUNGARD                    1 212 635 6560      T-235  P.003/004  F-666

proposals. Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

*\*\**

07/26/2007   18:47                                                    NO.514   P005
2007-Jul-26  04:21pm  From-BNY SUBGARD          1 212 635 6560     T-235  P.004/004  F-866

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By:
Name:
Title:

Peter J. Gleason, partner

cc: John Ahm, Riley Investment Management LLC

4

# DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant PNC BANK, N.A. ("Participant"), that on the date hereof 168,000 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by PNC BANK N.A. Trustee U/A Dated 2/28/97 C Heekin Clat 2 ("Shareholder"), a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.    To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

provision may not be amended by the Board of Directors and
may only be amended by stockholders holding the voting
power of a majority of the shares present and entitled to vote
at the meeting.

2.   To amend Section 4 of Article II of the Company's Amended and Restated By-
laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF
> DIRECTORS.  In the event a vacancy in the Board of
> Directors or any director's office is created by reason of death,
> resignation, disqualification, removal or other cause or by
> reason of any increase in the authorized number of directors,
> the directors then in office, though less than a majority of the
> whole authorized number of directors, by the vote of a
> majority of their number, or a sole remaining director may fill
> such vacancy for the unexpired term; provided that any
> vacancy in the Board of Directors that results from an increase
> in the number of directors approved by the stockholders or the
> removal of a director by the stockholders shall be filled by
> stockholders at a meeting or special meeting holding a
> plurality of the voting power of the shares present and entitled
> to vote at such meeting.  This provision may not be amended
> by the Board of Directors and may only be amended by
> stockholders holding the voting power of a majority of the
> shares present and entitled to vote at the meeting.

3.   To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to
the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.   To repeal each provision of or amendment to the Company's Amended and
Restated By-laws (other than any amendments contemplated by the foregoing
proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the
Company's quarterly report on Form 10-Q for the quarter ended September 30,
2005, as filed with the Securities and Exchange Commission on November 9,
2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at
such time as the Company has received requests from other stockholders who, together with the
Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and
time of the special meeting as requested above. This Notice shall serve to satisfy the notice
requirements of Section 2 of Article I of the By-laws as to the below described nominations and
proposals. Cede & Co., at the request of the Participant on behalf of Shareholder, demands that
voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of
the By-laws.

2

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By: _____

Name:

Title:

Peter J. Gleeson, partner

cc:  John Ahn, Riley Investment Management LLC

4

# DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant PNC BANK, N.A. ("Participant"), that on the date hereof 229,256 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by PNC BANK N.A. Trustee U/A Dated 2/28/97 C Heekin Clat 1 ("Shareholder"), a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.  To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2.  To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS.  In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.  To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.  To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above.  This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals.  Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By: _____

Name:

Title:

Peter J. Gleason, partner

cc: John Ahn, Riley Investment Management LLC

4

# EXHIBIT C

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co,
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 26, 2007

VIA DHL, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Ridge Clearing and Outsourcing Solutions, Inc. ("Participant 158"), that on the date hereof 300,000 credited to Participant DTC account are beneficially owned by Jared Davis a customer of Participant.

At the request of Participant on behalf of Jared Davis, Cede & Co., as a holder of record of the Shares hereby request that you call a special meeting of the shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati Ohio time, on September 3, 2007 at Cincinnatian Hotel, 601 Vine Street, Cincinnati, OH 45202 for the following purposes and to conduct the following business:

1.    1. To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting

power of a majority of the shares present and entitled to vote at the meeting.

2. To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS. In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3. To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4. To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Jared Davis, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Code & Co., at the request of the Participant on behalf of Jared Davis, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

2

Cede & Co., at the request of the Participant on behalf of Jared Davis, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Jared Davis, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Jared Davis, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

While Cede & Co., is furnishing this request as the shareholder of record of the Shares, it does so only at the request of the Participants and only as a nominal party for the true party in interest, Jared Davis. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Jared Davis is not denied his rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter. This letter shall supersede the Demand to Call a Special Meeting dated July 20, 2007 sent on behalf of the Participant for Jared Davis.

Sincerely,

Cede & Co

By: _____

Name:
Title:

**Peter J. Gleason, partner**

4

# EXHIBIT D

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 31, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of
shares of common stock, $.01 par value per share ("Common Stock"), of Regent
Communications, Inc. (the "Company"). DTC is informed by its participant Pershing, LLC
("Participant"), that on the date hereof 3,744,882 of such shares (the "Shares") credited to
Participant's DTC account are beneficially owned by various customers (see attached list)
("RIP"), a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the
Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the
"Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The
Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to
conduct the following business:

1.  To amend Section 1 of Article II of the Company's Amended and Restated By-
    laws, by replacing it in its entirety with the following:

    SECTION 1. NUMBER OF DIRECTORS. The number of
    directors that shall constitute the entire Board shall be nine (9)
    until changed by the Board of Directors pursuant to the
    affirmative vote of a majority of the directors then in office or
    approval of the stockholders.  Any decrease in the authorized
    number of directors shall not become effective until the
    expiration of the term of the directors then in office, unless at
    the time of such decrease, there are vacancies on the Board of
    Directors which are being eliminated by the decrease.  This
    provision may not be amended by the Board of Directors and

may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2. To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS. In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3. To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4. To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

2

FILE No.807 08/01 '07 12:62  ID:DTC REORG & PROXY    FAX:212 855 5181    PAGE  3/ 5

08/01/2007  09:48    201-333-4288              REORG                        PAGE  05/07

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors.  To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting.  Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting.  If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

*\*\*

3

08/01/2007 09:48 201-333-4280 REORG PAGE 05/07

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

"This letter shall supersede the Demand to Call a Special Meeting dated July 19, 2007 sent on behalf of the Participant."

Sincerely,

Cede & Co.

By: _____
Name:
Title:

Peter J. Gleason, partner

cc: John Ahn, Riley Investment Management LLC

4

**SMH Capital**
**Regent Communications -- RCCI**

| Quantity | Name | Address |
|---|---|---|
| 794,284 | Sanders Opportunity Fund (Institutional) LP | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 247,739 | Sanders Opportunity Fund LP | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 212,456 | IRA FBO Don Sanders Pershing LLC As Custodian | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 205,009 | IRA FBO Katherine U Sanders Pershing LLC As Custodian | 4014 Inverness Drive, Houston, TX 77019 |
| 187,000 | James Investments Inc | 6263 North Scottsdale Road #125, Scottsdale, AZ 85260 |
| 110,000 | Bruce Slovin | 111 East 61st Street, New York, NY 10021 |
| 500,000 | Edward F Heil | 8052 Fisher Island Drive, Miami Beach, FL 33109 |
| 40,000 | Steve Scott | 1021 Main Street, Suite 1575, Houston, TX 77002 |
| 50,000 | Max M Dillard | 5702 Champions Glen Drive, Houston, TX 77069 |
| 75,000 | John M O'Quinn | 3316 Travis Street, Suite 200, Houston, TX 77002 |
| 50,000 | James W. Christmas | 53 Fern Street, Floral Park, NY 11001 |
| 75,000 | Morton A. Cohn | 600 Being Drive, Suite 210, Houston, TX 77057 |
| 50,000 | Joe M. Bailey | PO Box 488, Flatonia, TX 78941-0488 |
| 500,000 | Katherine U. Sanders | 4014 Inverness Drive, Houston, TX 77019 |
| 25,000 | Brad D. Sanders | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 30,000 | Christine M. Sanders | 1025 S Shepherd #401, Houston, TX 77019 |
| 30,500 | Charles Banfar & Becky Banfar TIC | 6808 Long Drive, Houston, TX 77057 |
| 63,000 | Alpert Family Foundation | 6263 North Scottsdale Road #125, Scottsdale, AZ 85250 |
| 25,000 | Courtney Cohn Hopson Separate Account | 600 Being Drive, Suite 210, Houston, TX 77057 |
| 47,550 | Laura K. Sanders | 7799 E Joshua Tree, Scottsdale, AZ 85250 |
| 30,000 | Tanya J Drury | 109 Timberwilde, Houston, TX 77024 |
| 50,000 | J All Partnership | 18 Augusta Pines Drive #210C, Spring, TX 77389 |
| 100,000 | Don A. Sanders Children's Trust DTD 2003 Don West TTEE | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 167,353 | Sanders 1998 Children's Trust DTD 12-01-1997 Donald V West | 600 Travis Street, Suite 3100, Houston, TX 77002 |

3,744,862

# EXHIBIT E

FAX
ORIGINAL

## DEMAND TO CALL A SPECIAL MEETING

### Terry S. Jacobs

### 6561 Madeira Hills Drive

### Cincinnati, Ohio 45243

August 08, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio  45202
Attention:  Secretary and President

Dear Sir or Madam:

Terry S. Jacobs ("Stockholder") is a holder of record of 400,031 shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). An exhibit listing Stockholder's stock certificates and number of shares is attached.

As a holder of record, Stockholder hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.  To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

08/08/2007 16:36     513-381-1248     THE JFP GROUP                    PAGE 03/05

2.    To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4.   VACANCIES IN THE BOARD OF DIRECTORS.   In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.   This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.    To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.    To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

Stockholder further requests that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above.  This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals.  Stockholder demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

Stockholder reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors.  To the extent that the size of the Board of Directors is increased above five (5), then Stockholder reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting.  Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size

2

of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Stockholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting.   If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

Sincerely,

Terry S. Jacobs

By: _Terry S. Jacobs_

Attachment

3

# Regent Communications, Inc. (RGCI) Common Stock
## Owned by Terry S. Jacobs

| Certificate No. | Number of Shares |
|---|---|
| FTB 0815 | 37,909 |
| FTB 0466 | 300,000 |
| FTB 0799 | 1,988 |
| FTB 0797 | 20,000 |
| FTB 0761 | 4,450 |
| FTB 0398 | 654 |
| FTB 0597 | 10,144 |
| FTB 0496 | 24,855 |
| FTB 0949 | 31 |
| | 400,031 |

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I.(a) PLAINTIFF | DEFENDANT |
|---|---|
| Regent Communications, Inc. | Riley Investment Partners Master Fund, L.P., Riley Investment Management, LLC, and SMH Capital Inc. |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
( IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
OF LAND INVOLVED.

| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Raymond J. DiCamillo<br>Richards, Layton & Finger<br>One Rodney Square - P.O. Box 551<br>Wilmington, DE 19899<br>(302) 651-7700 | |

**II.   BASIS OF JURISDICTION** (PLACE AN X IN ONE BOX ONLY)

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of
Parties in Item III)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX
(For Diversity Cases Only)FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 50 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS - Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☒ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Eject<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | | |

**VI.   CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.  DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIV
The claims asserted herein arise under Sections 13(d) and 14(a) of the Exchange Act. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

**VII.   REQUESTED IN
COMPLAINT:**
CHECK IF THIS IS A
☐ Under F.R.C.P. 23
**CLASS ACTION**
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** __YES  _X_ NO

**VIII. RELATED CASE(S)**(See instructions):      None
**IF ANY**   Judge _____   Docket Number _____

DATE   SIGNATURE OF ATTORNEY OF RECORD

August 15, 2007

FOR OFFICE USE ONLY
RECEIPT # _____   AMOUNT _____   APPLYING IFP_____   JUDGE _____   MAG. JUDGE _____

INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

RLF1-3189165-1

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a) Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8 (a), F. R. C. P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**V. Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI. Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.C.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.
(rev. 07/89)

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 7 - 4 8 9

# ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____4____ COPIES OF AO FORM 85.

_____8/15/07_____
(Date forms issued)

_____
(Signature of Party or their Representative)

Damason Tweedie
(Printed name of Party or their Representative)

**Note: Completed receipt will be filed in the Civil Action**