IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REGENT COMMUNICATIONS, INC.<br><br>Plaintiff,<br>v.<br><br>RILEY INVESTMENT PARTNERS MASTER FUND, L.P., RILEY INVESTMENT MANAGEMENT, LLC, and SMH CAPITAL INC.,<br><br>Defendants. | Civil Action No. 07-499-JJF |

CONSOLIDATED OPPOSITION BY DEFENDANTS RILEY INVESTMENT PARTNERS
MASTER FUND, L.P. AND RILEY INVESTMENT MANAGEMENT LLC TO PLAINTIFF
REGENT COMMUNICATIONS INC.'S MOTIONS FOR:
(1) TEMPORARY RESTRAINING ORDER; AND (2) EXPEDITED DISCOVERY

## INTRODUCTION

In this case, Regent Communications, Inc. ("Regent" or the "Company) and its management have sued its shareholders to prevent a special meeting that was requested by more than 20% of Regent's shareholders. If the Chancery Court, in a first-filed, parallel proceeding, orders such a meeting, it is expected to take place in October, and all shareholders could then participate, as is their right, in an election and a vote on the future management and direction of the Company. There is no legal or equitable basis to enjoin the meeting that may be ordered in the future, and the Company's motions for a temporary restraining order and expedited discovery should be denied for at least the following four reasons.

First, the motion for a temporary restraining order is premature. No special meeting is yet scheduled. In fact, there is a first-filed, pending action between Riley Investment Partners Master Fund, L.P. and Regent in Delaware Court of Chancery where Chancellor Chandler will

adjudicate the issue of whether a special meeting should be held. Trial is set in that action for September 25, 2007 and, if a meeting is ordered, it will not reasonably take place until late October at the earliest. Accordingly, there is no imminent emergency. Nor is the prospect of a shareholder meeting the type of irreparable harm to justify an injunction.

Second, Regent has not established the "substantial likelihood" of prevailing on its claims. Regent contends that Riley violated Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") because Riley contacted a "handful" of shareholders to support the calling of a special meeting and that conduct rises to the level of a formal "proxy solicitation." Courts, however, have long recognized that where a request for "proxies" was _not_ mentioned in communications and where a date for a stockholder meeting had _not_ been established, communications should _not_ be constructed as a formal "proxy solicitation."

Regent also contends that Riley violated Section 13(d) by failing to disclose in its four 13(d) filings its relationship with SHM. Regent's contention rests on pure conjecture. Regent has proffered no evidence, nor can it, that Riley and SHM have agreed in advance to anything.

Third, the balance of the equities and consideration of the public interest mandate denial of the motions. Within the last 12 months, the Company's stock price has plunged approximately 32%, a loss of more than $51 million in shareholder value. Yet the Company's management is engaging in expensive, legal wrestling in two courts against its own shareholders to prevent a special meeting, election, and a vote from taking place – where all the shareholders, the true owners of the Company, can ultimately decide the best future course for the Company.

Fourth, Regent's request for expedited discovery is defective for many reasons. Because Regent alleges violations of the Exchange Act, discovery is stayed under the Private Securities Litigation Reform Act of 1995 ("Reform Act" or "PSLRA") unless Regent could establish

"undue prejudice," which Regent fails to do. Moreover, if Chancellor Chandler, in fact, orders a shareholder meeting, and taking into account that shareholders must receive appropriate notice, the earliest a meeting would likely take place is late October 2007, which affords the parties more than two months. Regent's request for completing discovery in <u>seven days</u> is unreasonable. In addition, Regent's proposed discovery is grossly overbroad and imposes an undue burden. For example, Regent asks that Riley, within seven days, provide all information concerning all expected witness testimony in this case, and produce all documents regarding all of its prior shareholder election activity.

In sum, while Regent may try to taint Riley with labels such as "corporate raider," it is Regent who is acting in disservice to its own shareholders. Riley simply asks for a special meeting of <u>all</u> shareholders. By their motions, Regent's entrenched management is trying to exploit the Company's resources and the legal system to stymie corporate democracy and shareholder suffrage. The Court should not lend its equitable power to such an improper pursuit.

I. **STATEMENT OF FACTS**

    A. **Regent And Its Failure To Maximize Shareholder Value**

Regent Communications, Inc. ("Regent" or the "Company") is a radio broadcasting company that owns approximately 51 FM and 17 AM stations in 14 mid-size markets in the United States. (Compl., ¶ 9.) The recent-track record of the Company's management is decidedly poor. The Company is publicly traded on NASDAQ and, over the past several years, Regent's stock price has declined substantially from well over $10 per share to below $3 per share currently, a loss of over 70% shareholder value. (*See* Declaration of Peter M. Stone ("Stone Decl."), Ex. A at 11 (Form 13-D, April 4, 2007)).

Within the past year alone, the Company's stock has plunged from a high of $4.20 per share on August 31, 2006 to a near 52-week low of $2.87 per share as of last Friday, August 24, 2007. In other words, the Company's stock has declined approximately 32% per share within the last 12 months, representing a loss of more than $51 million in shareholder value.

Despite the Company's dismal stock performance, Regent's CEO, William L. Stakelin, and its CFO, Anthony A. Vasconcellos, last year earned $668,776 and $498,471, respectively. Indeed, for 2007, the CEO and CFO even received a salary raise and more stock options. (*Id.*, Ex. B at 11-12, 14 (Proxy Statement, Schedule 14, April 9, 2007).) .

### B. Riley's Purchase of Regent Stock And Management's Improper Entrenchment and Refusals

Starting in January 2007, Riley Investment Management, LLC and Riley Investment Partners Master Fund, L.P., on their own behalf and/or on behalf of clients (collectively, "Riley") began purchasing the Company's stock in ordinary market transactions. (Stone Decl., Ex. A at 8-9.) Riley prides itself, and has a long history of success, in unlocking value in companies for the benefit of all shareholders. Riley is not a "corporate raider." Riley is exactly the type of informed and activist shareholder envisioned by the Sarbanes-Oxley Act of 2002 to hold management accountable and generally to effectuate change that benefits all shareholders.

On April 4, 2007, in a public filing with the Securities and Exchange Commission, Riley announced that it beneficially owned more 2.5 million shares of the Company's stock, representing 6.5% of all outstanding stock at the time. (*Id.*) Riley acquired the shares because it "believed such securities represented an attractive investment." (*Id.* at 7.) Riley also specifically disclosed why such securities may be attractive, including a letter Riley had sent – that same day -- to Regent's CEO and its board of directors. In the letter, Riley explained to the CEO and the board that: (i) there was negative public sentiment specifically to the terrestrial radio

broadcasting market (as opposed to a larger diversified media company, for example); and (ii) the Company's small size relative to its public company costs (nearly $2 to $2.5 million per year) made it difficult to realize value as an independent public entity. (*Id.* at 11.) Riley further explained that the Company should explore other alternatives to maximizing shareholder value.[1]

Management hastily sought to entrench itself. A mere three days later, on April 9, 2007, the Company scheduled an annual shareholders meeting on 30 days notice, on May 9, 2007, and the primary purpose of the meeting was to elect its existing board of five directors, including the CEO who sits on the board, to another one-year term. (Stone Decl., Ex. B.) Absent from Regent's proxy statement was any mention or commentary on Riley's April 4, 2007 letter. (*Id.*)

### C. Riley Files Action In Delaware Chancery Court Which Is Set For Trial On September 25, 2007

Riley continued to purchase the Company's stock and beneficially owns approximately 7.4% of the Company. (*See* Stone Decl., Exs. C and D (Schedule 13D/A, Amendment Nos. 1 and 2, June 29, 2007 and July 19, 2007, respectively).) On July 19, 2007, Riley asked that, at such time as the Company received requests from other stockholders (together with Riley) who held in excess of 20% of the Company's outstanding stock, the Company set a special meeting of the shareholders on September 3, 2007 pursuant to the Company's own bylaws and Delaware law. (*Id.*, Ex. E.) Riley also asked that the Regent provide certain stocklist materials of the Company, including a current list of record shareholders and breakdown of shares held through nominees, for purposes of preparing for the special meeting once the Company had set it.[2]

---

[1] For example, the letter noted that if the Company was sold to financial buyers, the sale may yield a price of approximately $4.50 per share; perhaps as much as $6.00 per share could be had if the Company was sold to strategic buyers (representing more than a 100% premium). (*Id.* at 12.)

[2] Pursuant to Section 220 of the Delaware General Corporation Law, on July 19, 2007 and thereafter on July 20, 2007, Riley asked the Company to inspect and copy certain stock list materials. On August 8,
(continued...)

On and after July 19, 2007, Riley and certain other record stockholders sent letters requesting a special meeting. The Company nonetheless rejected the shareholders' request to set a special meeting or provide a list of stockholders. (Stone Decl., Ex. F (Schedule 13D/A, Amendment No. 3, August 19, 2007).) Regent initially told Riley that the 20% requirement had not been met, and thus, neither a meeting could be called or even a list provided. After sending the Company for a second time documentation that 20% had made the request, Riley was told the request was invalid as the Company did not receive "original" requests from each stockholder.

## II.   **PROCEDURAL BACKGROUND**

On or about August 9, 2007, Riley filed an action in Delaware Chancery Court against Regent, seeking to compel the Company to set a special shareholders meeting and provide stocklist materials. The action is captioned *Riley Investment Partners Master Fund, L.P. v. Regent Commc'ns, Inc.*, Civil Action No. 3154-CC ("the First-Filed Delaware State Action").

On August 15, 2007, Regent and its management filed this second and premature federal action against Riley, asserting violations of Sections 14(a) and 13(d) of the Securities Exchange Act ("Exchange Act"). On August 16, 2007, Regent sought to stay the First-Filed Delaware State Action. On August 20, 2007, Chancellor William B. Chandler, III, denied Regent's motion for a stay. (Stone Decl., Ex. G (Letter dated August 20, 2007 by Chancellor Chandler). Chancellor Chandler has now scheduled a trial on September 25, 2007 (less than 30 days from this filing) in the First-Filed Delaware State Action. Accordingly, if Chancellor Chandler orders

---

(...continued)
2007, the Company provided Riley a list or record shareholders and a nominees breakdown as of April 2007, but has refused to provide a current nominees breakdown the remaining stocklist materials.

a special meeting on September 25, such meeting will take place at the earliest in late October 2007, so that shareholders can receive appropriate notice.

### III. THE HIGH LEGAL HURDLES TO OBTAIN INJUNCTIVE RELIEF

"[T]he grant of injunctive relief is an extraordinary remedy, which should be granted only in limited circumstances." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir.1989) (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988)). To be entitled to injunctive relief, the moving party must establish: (1) there is a substantial likelihood that he ultimately will prevail on the merits of the claim; (2) he will suffer immediate irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the junction should issue. Fed. R. Civ. P. 65. The movant bears the burden of establishing, by a clear showing, each and every element. *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994).

### IV. THE MOTION SHOULD BE DENIED BECAUSE THERE IS NO IMMINENT EMERGENCY OR IRREPARABLE HARM

A showing of irreparable harm has been considered "the most important prerequisite" to injunctive relief. *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1268 (10th Cir. 2005); *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005). A plaintiff has the burden of making a "clear showing of immediate irreparable injury." *Cont'l Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir.1980) (quoting *Ammond v. McGahn*, 532 F.2d 325, 329 (3d Cir.1976)). The "requisite feared injury or harm must be irreparable not merely serious or substantial." *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir.1977). Speculative harm, likewise, does not equate with an "immediate irreparable injury." *Id.*

There is no emergency here. Regent seeks a restraining order to stop a special meeting "if a special meeting is called." (TRO Mot. at 17 (emphasis added).) The First-Filed Delaware State Action, however, is set for trial on September 25, 2007. At that trial, Chancellor Chandler will determine whether any such special meeting must be called or not; if so, it will likely take place in late October. As the Third Circuit has explained, "more than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury," or a "presently existing actual threat." An injunction "may not be used simply to eliminate a possibility of a remote future injury ...." *Continental Group, Inc.*, 614 F.2d at 358.

Thus, Regent places the proverbial cart before the horse to even request to somehow enjoin a special meeting from taking place before the special meeting itself is set. Nowhere in its motion does Regency proffer evidence of an actual emergency.[3] In addition, there is no irreparable harm present. Regent vaguely contends that it will potentially suffer irreparable harm if the shareholders (not it) are denied the ability to make a fully-informed decision. (TRO Mot. at 18.) But, assuming that a special meeting is set and assuming Riley seeks to advance its shareholder agenda, Riley will <u>then</u> engage in a proxy solicitation, which admittedly will require a proxy statement and the requisite disclosures. Similarly, Regent, its management, and its board will have the ability to voice – at that appropriate time – their concerns about Riley in a competing proxy statement. Since the shareholders will be fully informed, there can be no injury at all. At a minimum, there is no special meeting yet set and no decision to be made; *ergo*, there

---

[3] Regent's motion shows there is no emergency: "Beginning on July 19, 2007, Riley caused letters to be sent ... calling for a special meeting." (TRO Mot. at 3.) If calls for a meeting posed an immediate harm, why wait a month to seek an injunction? *See Plessey Co. PLC v. Gen. Elec. Co. PLC*, 628 F. Supp. 477, 500 (D.Del.1986) ("The element of urgency becomes questionable when such a delay exists.").

can be no irreparable harm. *Special Situations Cayman Fund, L.P. v. Dot Com Entertainment Group, Inc.*, No. 03-CV-0811ECF, 2003 WL 23350128, at *2 (W.D.N.Y. Dec. 5, 2003).[4]

## V. REGENT WILL NOT PREVAIL ON THE MERITS

Even assuming *arguendo* that Regent could show immediate, irreparable injury, Regent is not "substantially likely" to prevail on its claims for violation of Section 14(a) and 13(d).

### A. Riley Did Not "Solicit" "Proxies" In Violation of Section 14(a)

Regent's central argument is that Riley violated Section 14(a) of the Securities Exchange Act of 1934 and, in particular, Rule 14a-3 promulgated thereunder. Rule 14a-3 provides that no solicitation for a "proxy" shall be made unless the person solicited receives a publicly-filed preliminary or definitive written proxy statement containing certain information. Regent contends that Riley violated Rule 14a-3 by asking a "handful" Regent stockholders to support the calling of a special meeting of shareholders. Regent's argument is untenable for two reasons.

First, to state a claim under Section 14(a), the complainant must: (1) prove that a proxy was solicited in contravention of an SEC rule or regulation; (2) prove an actual injury, and (3) prove a causal relationship between the violation of the rule or regulation and the injury. *Ash v. GAF Corp.*, 723 F.2d 1090, 1092-93 (3rd Cir. 1983). Here, in addition to being unable to prove an injury for the reasons stated above, Regent also cannot prove a violation of Rule 14a-3 because there was no "solicitation" of a "proxy." The term "solicitation" means a "communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy." 17 C.F.R. § 240.14a-1( l)(1)(iii). At most,

---

[4] *Special Situations* is instructive. There, the court denied a motion for injunctive relief, finding no irreparable harm where the movant had the ability to inform other shareholders of allegedly inaccurate disclosures by calling a special shareholders meeting. *Id.* The court also found no irreparable harm because at the time there was no "proposal to be voted upon by the [Company's] shareholders." *Id.* See also *Int'l Banknote Co., Inc. v. Muller*, 713 F. Supp. 612, 621 (S.D.N.Y.1989) (holding that violation of section 13(d) of the 1934 Act did not establish irreparable harm).

Riley merely asked other shareholders if they would support the calling of a special meeting. That most certainly is not the same as soliciting a proxy, consent or authorization to vote shares. *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 601 (5th Cir. 1974) ("No proxies were mentioned in the communication, and as of July 17 no stockholders meeting had been called and no proxies had been requested."). *See also Chris-Craft Indus., Inc. v. Independent Stockholders Comm.*, 354 F. Supp. 895 (D. Del. 1973) (no proxy solicitation where stockholder believed "peaceful takeover could be achieved" by using "support letters of dissatisfied substantial shareholders to force management into submission.").[5]

Section 14(a) and Rule 14a-3 are prophylactic measures to enhance corporate suffrage and, to that end, the proxy rules are intended and designed to require disclosure before proxies are solicited to vote. *Smallwood* is a good example. There, the board of directors of a corporation sent a letter to its shareholders describing a proposed merger and expressing the board's belief that it was in the shareholders' best interests. The court held the letter was not a solicitation. First, the court noted that no shareholder meeting had been scheduled and that therefore shareholders were not facing an imminent decision to execute proxies. Second, the court observed that the statement in support of the merger was innocuous. *Smallwood*, 489 F.2d at 601. As the court summarized, proxy disclosure rules serve a purpose, "but requiring the gathering and dissemination of too much information will hang as a heavy weight around the neck of the securities market." *Id.* at 601 n. 29.[6] Regent's only contrary, non-binding

---

[5] *See also Shamrock Holdings, Inc. v. Polaroid Corp.*, 709 F. Supp. 1311 (D. Del. 1989) (no "solicitation" where reasonable shareholder would not "read the document as an attempt ... to solicit his or her vote.").

[6] *Smallwood* is strongly supported by the statutory language and common sense. The definition of "solicitation" makes no reference to asking other shareholders to support a meeting, but rather only for requests for "proxies" – that is, the legal right to vote on behalf of another. *See* 17 C.F.R. § 240.14a-1(l)(i)-(iii). Similarly, a formal proxy solicitation does not make sense until a meeting is scheduled; for example, the proxy has to have the date and time of the meeting. 17 C.F.R. § 240.14a-101).

"authority" is a single treatise which itself cites no cases. (TRO Mot. at 13.) And, even if this is somewhat an issue of first impression, it cannot be "substantially likely" that Regent will prevail.

Second, even assuming Riley's conduct arose to the level of a "solicitation" for a proxy (which it did not), Riley's conduct is exempt from Section 14(a) because Riley did not solicit more than 10 shareholders. *See* 17 C.F.R. § 240.14a-2(b)(2) (exemption to proxy rules where "any solicitation made otherwise on behalf of the registrant where the total number of persons solicited is not more than ten."). Here, Regent contends that it received only "10" letters from shareholders supporting the calling of a meeting and, thus on its face, Riley comes within the exemption set forth in Rule 14a-2(b). Moreover, to the extent, for example, 11 shareholders were contacted rather than 10, any alleged violation would a *de minimis* if there is no showing (like here) that anyone has been materially misled. *Crouch v. Prior*, 905 F.Supp. 248 (D.V.I. 1995); *International Banknote Co., Inc. v. Muller*, 713 F.Supp. 612 (S.D.N.Y. 1989).

### B. Regent Has Proffered No Evidence Of A Violation Of Section 13(d)

Regent secondarily asserts a claim for violation of Section 13(d). Regent contends that Riley and defendant SMH Capital, Inc. ("SMH") "are in violation of Section 13(d) in that they have failed to disclose that they are acting together, and with other shareholders." (TRO Mot. at 16.) Yet, Regent submits no evidence to substantiate this allegation. There is no evidentiary proof that that Riley and SMH have agreed to anything in advance of the meeting.

Indeed, Riley not only filed a Schedule 13(d) in April 2007, but subsequently filed three prompt amendments. All four filings included detailed disclosures about Riley's transactions in Regent stock, Riley's desire for a special meeting, its correspondence to the Company's management (which the Company did not itself disclose to its shareholders), and all other material information. (Stone Decl., Exs. A, D-F.)

## VI. THE BALANCING OF HARMS WEIGHS IN FAVOR OF RILEY

Balancing the equities also weighs heavily against issuing Regent injunctive relief. Riley is seeking only a shareholder meeting. Regent's shareholders will decide if any change ultimately occurs. Thus, there is no harm to Regent.

On the other hand, Riley does face irreparable harm. Riley owns more than 7% of the Company, and has millions of dollars at stake. And, more than 20% of the shareholders have now called for a meeting. Courts have consistently found that the "denial or frustration of the right of shareholders to vote their shares or obtain representation on the board of directors amounts to an irreparable injury." *Shoen v. AMERCO*, 885 F. Supp. 1332, 1352 (D. Nev. 1999). *See also Ocilla Indus., Inc. v. Katz*, 677 F. Supp. 1291, 1301 (E.D.N.Y. 1987) ("disenfranchisement of shareholders poses serious risk of irreparable harm").

## VII. REGENT'S MOTION FOR EXPEDITED DISCOVERY SHOULD BE DENIED

### A. Applicable Legal Standards

In general, "courts will not permit discovery from any source before the parties have conferred (pursuant to Federal Rule of Civil Procedure 26(f)), unless the parties agree to or the court authorizes expedited discovery." *BAE Sys. Aircraft Controls Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 587 (D. Del. 2004) (denying plaintiff's motion for expedited discovery). Here, the parties are not in agreement to permit expedited discovery, so Regent has applied to the Court for authorization. While Regent argues that the appropriate legal standard to be applied is a basic one of "reasonableness," since this is an action under Sections 13(d) and 14(a) of Exchange Act, the discovery stay provisions of the PSLRA apply. *See* 15 U.S.C. § 78u-4(b)(3)(B); *see also In re Marvell Tech. Group Ltd. Deriv. Litig.*, 2007 WL 1545194 (N.D. Cal.) ("discovery stay of subpart(b)(3) [of the PSLRA] applies to 'any private action arising under' the Securities Exchange Act of 1934"); *In re Trump Hotel Shareholder Deriv. Litig.*, 1997 WL

442135 (S.D.N.Y.) ("*Trump Hotel*") ("Having chosen to invoke Section 14 of the Exchange Act, plaintiffs are necessarily subject to the PSLRA."). Accordingly, as discussed below, Regent cannot receive any discovery until after a motion to dismiss is heard unless it shows "undue prejudice," which the Congress intended and courts have held to be a very high standard.

Moreover, even if the Reform Act rules did not apply, there actually are two different standards that courts within this Circuit utilize in determining whether expedited discovery is warranted. And, Regent's motion fails under either of these other two standards.

### B. Discovery Is Stayed Under The Reform Act, And Plaintiff Cannot Demonstrate Undue Prejudice To Lift The Stay

The Reform Act amended the Exchange Act in which Sections 13(d) and 14(a) are found. The statute now provides that "[i]n any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). Since Riley intends to move to dismiss, all discovery is stayed unless and until Regent can show "undue prejudice" that permits "particularized discovery." Regent cannot make this showing. In particular, courts have interpreted the undue prejudice standard to be very high, and specifically not to include a case where a party needs discovery to support his claims. *See, e.g., S.G. Cowen v. U.S. Dist. Ct.*, 189 F.3d 909 (9th Cir. 1999); *Trump Hotel*, 1997 U.S. Dist. LEXIS 11866.

A case on point is *Medical Imaging Ctr. of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717 (S.D. Cal. 1996). There, as here, a company was attempting to avoid the holding of a special meeting of shareholders to elect directors by claiming that its opponents had improperly formed an undisclosed group in violation of Section 13(d) of the Exchange Act. The court denied the company's request for discovery to support a preliminary injunction motion and accompanying

claim of undue prejudice under the Reform Act, finding that the company not only could seek discovery after a motion to dismiss was decided but also had alternative remedies available even if discovery could not be had before the meeting was held. *Id.* at 720-21.

### C. Expedited Discovery Should Not Be Permitted Because Regent Cannot Establish The Elements For A Preliminary Injunction

Even if the Reform Act did not apply, the proper standard would be for the Court to "analyze[] the expedited discovery request using factors similar to those used for injunctive relief or specific performance." *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). Courts within this Circuit apply the *Notaro* standard where, as here, "the defendant nonmoving party need[s] protection from the plaintiff's extraordinary discovery requests made extraordinarily early in the litigation process." *Entertainment Tech. Corp. v. Walt Disney Imagineering*, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D.Pa. Oct. 2, 2003) (denying motion for expedited discovery); *see also Better Packages, Inc. v. Zheng*, No. Civ. A. 05-4477(SRC), 2006 WL 1373055, at * 4-5 (D.N.J. May 17, 2006) (same). Under *Notaro*, Regent's motion for expedited discovery fails for the reasons set forth above in opposition to its restraining order request.

### D. Regent's Expedited Discovery Should Be Denied Because Is Not Reasonable

In addition to *Notaro*, courts in this Circuit in non-securities cases sometimes apply a less stringent "reasonableness" standard for expedited discovery. (See Disc. Mot. at 6.) But even under this standard, Regent's proposed expedited discovery is unreasonable.

#### 1. The Proposed Timing Is Not Reasonable

The Delaware Chancery Court has set a trial for September 25, 2007 on the issue of whether a shareholder meeting should be ordered. If a shareholder meeting is ordered, taking into account that shareholders must receive appropriate notice, the earliest a meeting would likely take place is late October 2007. This schedule gives the parties at least two months. Thus,

Regent's will receive disclosures and can begin discovery pursuant to the timeframe set out in the Federal Rules; certainly, there is no need to attempt to complete discovery in seven days.

### 2.  The Proposed Discovery Is Not Narrowly Tailored

Regent's proposed discovery requests are overly broad and would impose an undue burden on Riley. As Regent itself admits, in order for a court to grant expedited discovery, the proposed discovery requests must be "narrowly tailored." (Disc. Mot. at 4.) Indeed, courts within this Circuit routinely deny motions for expedited discovery which include overly broad discovery requests. *See e.g., BAE Sys. Aircraft Controls, Inc.*, 224 F.R.D. at 588 ("Where the [discovery] requests are overly broad, leave should be denied."); *Better Packages, Inc.*, 2006 WL 1373055 at * 4-5 (denying expedited discovery as "[m]any of the requests to produce, interrogatories and depositions are overly broad and extend well beyond those issues likely to arise in a preliminary injunction hearing. . . . Many of the discovery requests also go directly to the merits of Plaintiff's claims against Defendants. . . . The scope of the requested discovery in response would lead to the parties conducting nearly all discovery in an expedited fashion...").

In this case, Regent's proposed discovery is overly broad and unduly burdensome. For example, in both its proposed document requests and interrogatories, Regent defines "Defendants" to include "any parents, subsidiaries, or other affiliated entities or Persons; and all agents, employees, counsel and other Persons acting on their behalf." (Disc. Mot. at Ex. A) Riley could not possibly collect documents from all of these entities/persons within the proposed seven days, and Regent encroaches upon the attorney-client privilege by including "counsel."

Regent's proposed discovery also includes requests that improperly go just to the merits. *Better Packages, Inc.*, 2006 WL 1373055 at * 5. For example, Interrogatory No. 3 asks Riley to "[i]dentify each Person with knowledge referring or relating to the allegations in the Complaint and describe with full particularity that knowledge." (Disc. Mot. at Ex. A) This asks Riley to

-15-

describe the full scope of every witness's testimony on all subjects. Document Request No. 20 and Interrogatory No. 10 similarly ask Riley to "[i]dentify and describe with full particularity," and to produce "[a]ny and all documents," regarding numerous prior shareholder actions that defendants have participated in within the last five years. (Disc. Mot. at Ex. A.) Information regarding other shareholder actions is wholly irrelevant to a preliminary injunction hearing.[7]

## VIII. CONCLUSION

For the foregoing reasons, the Court should deny both Regent's motion for a temporary restraining order and its motion for expedited discovery.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Kevin M. Coen

David J. Teklits (#3221)
Kevin M. Coen (#4775)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
Telephone: (302) 351-9292
*Attorneys for Defendants*
*Riley Investment Partners Master Fund, L.P.*
*And Riley Investment Management, LLC*

OF COUNSEL:

PAUL, HASTINGS, JANOFKSY & WALKER LLP
Peter M. Stone
Jay C. Gandhi
Five Palo Alto Square, Sixth Floor
Palo Alto, CA 94306-2155

Dated: August 28, 2007

---

[7] In addition, once discovery begins, Riley and SMH are entitled to reciprocal discovery. *See e.g., Foster Wheeler Corp. v. Edelman*, Civ. No. 87-4346, 1987 WL 61446, at *8 (D.N.J, Dec. 9, 1987) (granting "reasonable and reciprocal expedited discovery" in federal securities case).

CERTIFICATE OF SERVICE

I, Kevin M. Coen, hereby certify that on August 28, 2007 a copy of the CONSOLIDATED OPPOSITION BY DEFENDANTS RILEY INVESTMENT PARTNERS MASTER FUND, L.P. AND RILEY INVESTMENT MANAGEMENT LLC TO PLAINTIFF REGENT COMMUNICATIONS INC.'S MOTIONS FOR: (1) TEMPORARY RESTRAINING ORDER; AND (2) EXPEDITED DISCOVERY was served by electronic filing upon the following attorneys of record:

>Raymond J. DiCamillo, Esquire
>Richards, Layton & Finger
>One Rodney Square
>Wilmington, DE 19801

_____
Kevin M. Coen (#4775)