IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REGENT COMMUNICATIONS, INC.,

Plaintiff,

v.

RILEY INVESTMENT PARTNERS
MASTER FUND, L.P., RILEY
INVESTMENT MANAGEMENT LLC,
SMH CAPITAL INC., SANDERS
OPPORTUNITY FUND, L.P., SANDERS
OPPORTUNITY FUND
(INSTITUTIONAL), L.P., SOF
MANAGEMENT, LLC, DON A.
SANDERS, BRYANT RILEY and JOHN
AHN,

Defendants.

No. 07-499 JJF

Judge Joseph Farnan

## FIRST AMENDED COMPLAINT

Plaintiff Regent Communications, Inc. ("Regent" or the "Company"), by and

through its undersigned attorneys, for its First Amended Complaint against Defendants Riley

Investment Management LLC ("RIM"), Riley Investment Partners Master Fund, L.P. ("RIP") [1],

Bryant R. Riley ("Mr. Riley"), John Ahn ("Mr. Ahn"), SMH Capital Inc. ("SMH Capital"),

Sanders Opportunity Fund, L.P., Sanders Opportunity Fund (Institutional), L.P. (together with

Sanders Opportunity Fund, L.P. the "SOF Funds"), SOF Management, LLC ("SOF

Management")[2], and Don A. Sanders ("Mr. Sanders"), (collectively "Defendants"), upon

knowledge as to itself and upon information and belief as to all other matters, alleges as follows:

## INTRODUCTION

1.   This action involves ongoing violations of Sections 13 and 14(a) of the

---

[1]   RIM and RIP are referred to collectively as "Riley."

[2]   Mr. Sanders, the two SOF Funds, and SOF Management are referred to collectively
herein as "Sanders."

Securities Exchange Act of 1934 (the "Exchange Act") by two investment firms – Riley, a registered investment advisor which has been involved in more than 20 hostile corporate campaigns, and SMH Capital – together with their respective principals, Mr. Riley, Mr. Ahn, and Mr. Sanders. Defendants, acting in concert with Terry Jacobs ("Jacobs"), the former Chairman and CEO of Regent, and other Regent shareholders, have formed a group that seeks to seize control of Regent – a group that is required to be, but has not been, disclosed. Riley and SMH Capital, a registered broker-dealer which also is a market-maker in Regent stock and provides research coverage with respect to Regent, are both subject to regulation by the Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority (FINRA), formerly the National Association of Securities Dealers ("NASD").

2.    Riley and Sanders (including Mr. Sanders, SOF Management and the SOF Funds) each have beneficial ownership of more than 5 percent of the Company's outstanding common stock – something Sanders was required to but failed to disclose until a week after Regent filed its initial Complaint in this action. Indeed, Sanders and SMH Capital, which have been making presentations without authorization in their effort to sell Defendants' shares of the Company, have represented that Sanders controls as much as 15.5% to the potential buyers it is soliciting, and that Riley and former CEO Jacobs own 7.4% and 1 % respectively. Sanders' belatedly-filed 13G and 13D reflect that at the time they engaged in a concerted effort with the other Defendants to demand a special shareholder meeting, Sanders owned 8.2%. Given that Regent's Shareholder Rights Plan and the Delaware anti-takeover statutes are triggered by 15% control by any person or group, the fact of these undisclosed holdings by Sanders alone and together with Riley and other members of their group may have significant consequences. Indeed, it is telling that within the last two weeks, Sanders reports having sold 535,000 shares, in

2

an apparent attempt to reduce their holdings so that, collectively with the other Defendants, they will get below the 15% level.

3.    Acknowledging that Regent's stock is undervalued, Riley snapped up its shares on the cheap. Riley, Sanders (which owned or controlled a large block of Regent stock for several years without disclosing its interest), SMH Capital and Jacobs now seek to wrest control of Regent's board of Directors (the "Board"), hoping to force a sale at a time when the Company's shares are depressed, and pocket the profits on their large stakes, depriving Regent's other smaller shareholders of fair value or a control premium for their shares. Defendants' first step, employed in Riley's other corporate conquests, is to attempt to force their way onto the Board. In support of this effort, Riley, together with Sanders and/or SMH Capital, solicited other Regent shareholders, including Riley's and SMH Capital's own customers, to make a demand for a special meeting (the "Special Meeting") of Regent's shareholders to expand the Board and elect a slate of Riley's own hand-chosen directors, then amend the bylaws so that those four directors can appoint additional directors – resulting in a majority position – as vacancies occur. While the solicited shareholders submitted Riley's convenient fill-in-the-blanks forms for making the demand that Defendants desired, Defendants failed to provide all those shareholders with all of the information about themselves, their holdings, their purposes, intentions, agreements, arrangements and understandings including with and one another and other Regent Shareholders - *i.e.*, all of the information that the federal securities laws require.

4.    In connection with their unlawful solicitation and subsequent demand for a Special Meeting of Regent's shareholders and their ultimate aim of control, Defendants and other shareholders formed a secret "group" with respect to the Company. The fact of this group and the true facts concerning the purposes of arrangements between and among Riley, Sanders, SMH

3

Capital and other shareholders in their secret "group" are required to be, but have not been, disclosed. This group is comprised of Defendants Sanders, SMH Capital, and Riley and their principals, including Defendants Mr. Riley, Mr. Ahn, and Mr. Sanders, together with Jacobs, Regent's former Chairman and CEO. The group also includes Riley's nominees to the Board: Mr. Ahn; Bob D'Agostino, a long-time Riley loyalist; Jared Davis, who was promised a Board seat in exchange for filling out and submitting Riley's form demand letter; and Joseph Patrick Hannan, another Riley nominee. In addition, the group includes various shareholders Riley and SMH solicited to demand the Special Meeting. The undisclosed understandings and agreements in furtherance of Defendants' efforts to secretly steal control of the Company are not limited to agreements to support the proposals and nominees, but also include an understanding that Sanders and SMH Capital – which have been surreptitiously shopping the Company without authorization – will act as a participant, and/or potentially as an investment banker, in any change of control transaction that Defendants seek to engineer.

        5.      On August 10, 2007, Riley belatedly filed a press release with the SEC as "soliciting materials" pursuant to Rule 14a-12. This filing indicates that Riley "may" seek to solicit proxies in support of its proposals and director nominees. This is the first SEC filing made by Riley in connection with its unlawful solicitation. It does not even purport to address Riley's, Sanders' and SMH Capital's prior solicitation of other shareholders' demands for a shareholder Special Meeting in violation of federal securities laws. While these proxy materials are in themselves materially misleading, and in no way cure the ongoing violations of the federal securities laws, they at least acknowledge what should have been disclosed months ago: that Riley and its affiliates (1) have previously solicited proxies without providing the information that the securities laws require, and (2) have done so with the aim of obtaining votes for

Defendants' proposals and its candidates. Indeed, the soliciting materials, while falsely indicating only that Riley "may" solicit proxies, are surprisingly candid in acknowledging that long before any proxy materials were furnished, Riley was soliciting and "with a handful of telephone calls, . . . w[as] able to garner more than 20% of the shareholders to call a special meeting."

6.      Moreover, Riley's recent solicitation materials are materially false and misleading, as are Riley's prior filings on Schedule 13D, because they fail to disclose (1) Riley's arrangements, agreements and understandings with Sanders, SMH Capital and other shareholders who have demanded the Special Meeting at Riley's behest, and (2) Defendants' intent to elect almost half and ultimately a majority of the Company's Board, to buy Regent's stock on the cheap and ultimately force and profit from Regent's sale at the expense of other shareholders.

7.      Meanwhile, Sanders never filed any disclosures at all with respect to its holdings of Regent stock until August 23, 2007 – after this lawsuit was filed. On that date, Mr. Sanders, in his individual capacity, simultaneously filed a very delinquent Schedule 13G, reflecting that he and Sanders had owned more than 5% of Regent's stock since December of last year (and likely earlier), and a Schedule 13D, reporting his and the SOF Funds' holdings.

8.      Sanders' filings are materially false and misleading, not least because they are self-contradictory: The Schedule 13G certifies that Sanders does not intend to change or influence the control of Regent, while the simultaneously-filed Schedule 13D declares exactly the opposite. Sanders' filings also admit that Sanders and SMH Capital have joined with the other Defendants and other shareholders to demand the Special Meeting, but still deny that such a group exists. Sanders' filings further represent admissions that Sanders has been delinquent under § 13 of the Exchange Act since at least January 2007. Under the applicable Exchange Act

Rules, which impose specific penalties for such failures, Sanders must be barred from voting any beneficially-held shares. Finally, Sanders and SMH Capital are also in violation of § 14 of the Exchange Act, insofar as they participated with Riley in soliciting shareholders to make a demand for a special meeting while failing to provide a proper proxy statement.

       9.    Defendants have concealed their concerted efforts and aim to steal control of Regent's Board not only because they desire to avoid paying a control premium and hope to obtain that premium for themselves in a forced future sale, but also to avoid the anti-takeover protections that may be triggered if full disclosure of their full shareholdings, purposes and group actions is made. Those protective measures, provided for by Regent's bylaws and governing Delaware law, are meant to ensure what defendants seek to avoid: that control – including control of the Board and the Company's destiny -- may be obtained only upon payment of a control premium and only after full and fair disclosure to all of Regent's shareholders.

      10.    In sum, Defendants and their Board nominees violated the Exchange Act's clear requirements, including under the proxy rules, that they provide full, candid and truthful disclosure of all material facts relating to their solicitations. In addition, Riley and Sanders have failed to provide full, candid and truthful disclosure relating to their intentions and agreements with respect to their sizeable holdings of Regent's shares. Sanders' violations require that it be enjoined from voting its beneficially-held shares. Such activity is inequitable, violative of the federal securities laws, and threatens irreparable harm to Regent and its shareholders and, thus, must be both disclosed and enjoined. The illegally-solicited consents and authorizations for the Special Meeting should be invalidated, further solicitation must be enjoined until Defendants comply with the proxy rules and disclose their group activity, and Sanders' failure to file timely Schedules 13G and 13D require that it be enjoined from voting its beneficially-held shares.

6

## PARTIES

11.    Regent is a Delaware corporation with its principal place of business in Covington, Kentucky. The Company is engaged in the business of owning and operating radio stations. As Riley has acknowledged in its public filings, in the past few years Regent has turned in strong operational performance, due both to the success of its continuing operations and to recent strategic acquisitions, and it has posted consistent organic growth rates which have outpaced the terrestrial radio industry's average. However, raiders such as Riley realize that due to "negative public sentiment to the terrestrial radio broadcasting market in general" Regent's public market value has continued to decline and may not reflect the Company's true value.

12.    Defendants RIM and RIP (collectively "Riley") are both controlled by Defendant Bryant R. Riley, a registered investment advisor subject to regulation by the SEC and FINRA (formerly NASD). RIP is a Cayman Islands limited partnership that, according to SEC filings, has held a significant number of Regent shares since no later than April 4, 2007. RIM is a Delaware limited liability company that is the general partner of RIP. As such, RIM has sole voting and investment power over RIP's holdings. Riley took advantage of Regent's depressed prices and stealthily acquired a significant stake. According to its latest filing with the SEC, Riley is the beneficial holder of 2,853,242 shares of common stock of the Company, representing approximately 7.4% of Regent's outstanding common stock. Of these holdings, 2,588,913 shares are held by RIP and 688,487 shares are held by investment advisory clients of, or entities affiliated with, RIP or RIM.

13.    According to its website, Riley "is primarily an activist fund" and as such seeks to influence and ultimately control the companies it invests in. As a result of these activist activities, Riley often seeks to place its employees and affiliates on the boards of publicly-traded companies it targets in an effort to "assist" such companies in acceding to its demands including

7

acquiescing to a forced sale. Indeed, Riley has been involved in more than 20 hostile corporate campaigns. Recently, Riley has engaged in proxy contests resulting in board representation by its principals, such as that attempted here. These contests have resulted in Mr. Riley and Mr. Ahn obtaining board seats at Alliance Semiconductor, Inc., Integrated Silicon Solution, and MAIR Holdings, Inc. In addition, Riley recently sought to obtain control of several other companies, including ESS Technologies and NetManage. Riley also nominated Bob D'Agostino to serve on the boards of ESS, Integrated Silicon Solutions, Inc. and Alliance Semiconductor, and seeks to nominate him as well as Riley principal John Ahn to serve on the Board of Regent as well. No information concerning Riley's history as a corporate raider or its nominees' participation in such efforts at other companies has been disclosed to Regent's shareholders.

14.    Defendant Bryant R. Riley ("Mr. Riley") is the sole manager of RIM, and owns all of RIM's outstanding membership interests. Mr. Riley is also the controlling shareholder and chairman of a Delaware corporation called B. Riley and Company, Inc. ("B. Riley & Company"). According to Riley's latest 13D filing, Mr. Riley owns 7.4% of Regent's shares.

15.    Defendant John Ahn ("Mr. Ahn") is a principal of one or more of RIP, RIM and/or B. Riley and Company. As described above, Mr. Ahn has been a board nominee, and has obtained board seats, during previous hostile takeover campaigns waged by Riley. According to Riley's July 20, 2007 Schedule 13D, Mr. Ahn owns 13,000 shares of Regent stock.

16.    Defendant SMH Capital, Inc. ("SMH Capital"), a Houston-based firm incorporated in Texas, is a registered broker dealer and a member of NASD/SIPC. It is a subsidiary of Sanders Morris Harris Group, Inc., which is also incorporated in Texas. SMH

8

Capital provides asset management and capital markets services, investment baking and financial

advisory services, trading and research, as well as brokerage services for hedge funds and fixed

income securities sales and trading. SMH Capital is a market-maker for Regent's securities and

is one of only three brokerage firms that provide analysts' research on Regent securities.

17.    Defendant SOF Management, LLC ("SOF Management") is a Delaware

corporation and the general partner of Defendants Sanders Opportunity Fund, L.P., and Sanders

Opportunity Fund (Institutional), L.P. (the "SOF Funds"), two funds affiliated with SMH

Capital. The SOF Funds are Delaware limited partnerships.

18.    Defendant Don A. Sanders ("Mr. Sanders") is Chairman and Chief

Executive of SMH Capital, and is a manager of SOF Management, the general partner of the

SOF Funds. Sanders and SMH Capital, without the authorization of Regent, have secretly been

"shopping" the Company, discussing with third parties, including direct competitors of Regent, a

possible sale or going private transaction from which they seek to profit both as an investor and

perhaps also as an investment banker, earning a lucrative fee. Sanders beneficially owns 6.9% of

Regent's shares, and, before recent sales intended to evade Regent's anti-takeover provisions,

owned 8.2%.

### JURISDICTION AND VENUE

19.    The claims asserted herein arise under Sections 13(d) and 14(a) of the

Exchange Act. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

20.    Venue is proper in this district pursuant to 15 U.S.C. §§ 78aa because the

violative conduct occurred in this district where both plaintiff and some of the defendants are

incorporated.

9

## DEFENDANTS' SOLICITATION OF REGENT SHAREHOLDERS FOR CONSENT TO DEMAND A SPECIAL SHAREHOLDER MEETING

21.    On April 4, 2007, Riley and its affiliates filed a Schedule 13D with the Securities and Exchange Commission disclosing for the first time that they were shareholders of Regent and, indeed, significant ones – indicating that they had acquired approximately 2,525,018 shares of Regent, or approximately 6.5% of Regent shares. Riley's Schedule 13D further disclosed that RIM had sole voting and dispositive power over all of those shares, and, further, dispositive power over 181,222 shares held by its investment advisory clients. The Schedule 13D disclosed further that Mr. Riley controls all of the voting and investment decisions with respect to all of the shares beneficially owned by RIM's clients and that B. Riley and Company, which Mr. Riley controls, also owns Regent stock. Mr. Riley signed the Schedule 13D and all subsequent amendments as an executive of RIP, RIM, B. Riley and Company and on his own behalf.

22.    Section 13(d) of the Exchange Act requires a shareholder holding more than 5% of a Company's shares to file a Schedule 13D and disclose, *inter alia*, the purposes of its investment to other stockholders as well as any arrangements, understandings or agreements with other shareholders with respect to the Company's stock and to amend that Schedule 13D when and if its purposes or other circumstances change.

23.    In its Schedule 13D, filed on April 4, 2007, Riley stated that its purposes in acquiring and holding Regent's securities might include "seeking representation on the Board of Directors" or to "acquire the issuer." In a letter to Regent dated April 4, 2007, which was attached to Riley's Schedule 13D, Riley stated that "we believe that selling Regent Communications may offer the best alternative" and that "we believe that the Company should not remain an independent public company."

24.     Other than the relationships between and among the Riley entities, their investment advisory clients and Bryant Riley, neither this original Schedule 13D nor any subsequent amendments disclosed any other arrangements, understandings or agreements with respect to Regent's securities between Riley and any other Regent shareholder, including the other Defendants.

25.     On June 27, 2007, Riley filed an amendment to its Schedule 13D reflecting that Riley and its affiliates had increased their holdings to 2,824,433 shares, or 7.3 percent of Regents' total shares outstanding. Of this amount, 2,562,843 were owned by RIP, 261,590 were beneficially owned by Mr. Riley and 397,024 were owned by investment advisory clients of RIM. This June 27th Schedule 13D/A reflected that, since the original filing in April, Mr. Riley had acquired beneficial ownership of an additional 261,590 shares including 90,649 which appear to have been purchased from Riley's investment advisory clients. It is not known whether Riley's investment advisory clients were advised of and consented to the interests of Riley and potential conflicts of interest represented thereby prior to the time of these additional significant acquisitions of Regent shares both from them and on their behalf were made or at any time.

26.     Beginning on July 19, 2007, Riley, Sanders and /or SMH Capital sent, or caused to be sent, or solicited other shareholders to send 11 letters (the "Form Demand Letters") calling for a special meeting ("Special Meeting") of Regent's stockholders to: (1) amend the Company's bylaws to fix the number of directors at nine; (2) amend the Company's bylaws to allow stockholders to fill vacancies on the Board created by increasing the size of the Board or the removal of a director by the stockholders; (3) elect Mr. Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan as directors of the Issuer to fill the vacancies on the Board; and (4)

11

repeal any provisions or amendments to the Company's bylaws adopted after the last version filed with the Securities and Exchange Commission. Copies of the Form Demand Letters are attached hereto as Exhibits A-K. All of the Form Demand Letters are virtually identical, except for the names of beneficial shareholders and servicing entities, further evidence that Defendants and the shareholders they solicited are acting in concert to achieve their common aims.

27.     Three of the 11 Form Demand Letters, all sent on July 19, 2007, purported to be on behalf of Riley itself, together with unnamed investment advisory clients of Riley as well as two other apparently unaffiliated parties. The first of Riley's three Form Demand Letters was sent by the Riley entities on their own behalf ("Riley Form Demand Letter"). A copy of the Riley Form Demand Letter is attached hereto as Exhibit A. The Riley Form Demand Letter noted that RIP was the holder of record of 1,000 shares and the beneficial holder of 2,587,913 shares.

28.     The second of Riley's three Form Demand Letters was sent by the stock transfer services company Cede & Co. ("Cede"), purportedly on behalf of shares beneficially owned by Riley, Putnam NBF Securities and Richard McKenzie, Jr. IRA ("Putnam Form Demand Letter"). A copy of the Putnam Form Demand Letter is attached hereto as Exhibit B. The Putnam Form Demand Letter referred to the three beneficial owners collectively as "RIP," and noted that these owners held shares totaling 3,056,969. On information and belief, the shares attributed to RIP by the Putnam Form Demand Letter included shares held by Riley's investment management clients. On information and belief, Riley either solicited the consents of its investment management clients, Putnam NBF Securities, and Richard McKenzie, Jr. IRA in order to send the Putnam Demand Letter, or else sent the Putnam Form Demand Letter without obtaining proper consents.

12

29.    The third of Riley's three Form Demand Letters, also sent by Cede, purported to be on behalf of RIP ("RIP Form Demand Letter"). A copy of the RIP Form Demand Letter is attached hereto as Exhibit C. The RIP Form Demand Letter claimed that RIP was the beneficial owner of 3,744,882 shares. The RIP Form Demand Letter was later purportedly superseded by a letter sent on behalf of Sanders- and SMH Capital-related shareholders (the "SMH Form Demand Letter," *see infra* at ¶¶ 38-40), that named those entities – not RIP – as the beneficial owners of the same 3,744,882 shares but still defined them as "RIP". The fact that RIP first purported to be the beneficial owner of these shares, but then later substituted a hastily-drafted but not fully corrective letter showing that they were in fact beneficially owned by Sanders and certain SMH-related shareholders, demonstrates the extent to which Riley, Sanders and SMH Capital were working together to achieve their common aims.

30.    In soliciting shareholders to make a demand for a special meeting, Riley solicited consents or authorizations within the meaning of the proxy rules under the federal securities laws. Riley failed to comply with those proxy solicitation rules. Riley also failed to disclose to any of the shareholders it solicited, or to its investment advisory clients, the facts the federal securities laws required it to disclose: among other things, the nature of Riley's own interests in and intentions and agreements alone and together with Sanders, SMH Capital, and the other defendants and other shareholders concerning Regent's securities, including its intention to take control of the Board, to force a sale and to keep any control premium for itself and its group to the detriment of other Regent stockholders.

31.    On July 20, 2007, Riley filed a further amended Schedule 13D/A, reflecting that Riley and its affiliates owned 2,853,242 Regent shares or 7.4% of Regent's total shares outstanding. Of this total, 2,588,913 were held by RIP. The 264,329 shares shown in the

13

June 27th Schedule 13D/A as being owned by Mr. Riley were now indicated as being held by Riley's investment advisory clients.

32.    In its July 20, 2007 Schedule 13D/A, Riley reported that its letters demanding the Special Meeting had been sent, and acknowledged that its purposes in acquiring and holding Regent's securities included seeking the Special Meeting to attempt to increase the Board and elect its own directors, *i.e.*, Messrs. Ahn, D'Agostino, Davis and Hannan. The July 20, 2007 Schedule 13D/A acknowledged that "[t]he taking of the actions proposed by [Riley] at the special meeting of Issuer's stockholders described above would result in a change in the Issuer's present board of directors and management."

33.    In the July 20, 2007 Schedule 13D/A, Riley disclosed that Jared Davis and Mr. Ahn, its nominees for election to Regent's Board, owned 376,065 and 13,000 Regent shares, respectively, or more than 1%. The Schedule 13D/A did not disclose that Mr. Ahn was an affiliate of Riley and a principal of RIP, nor that he and Bob D'Agostino had been appointed to serve on other boards that were Riley targets in past hostile proxy contests. The Schedule 13D/A also failed to disclose that Riley had solicited Jared Davis, in his capacity as a significant Regent shareholder, to submit a Form Demand Letter, and had entered into agreements or understandings with Davis and Ahn to nominate them to the Regent Board so that they would further Riley's efforts to wrest control of Regent's Board and force its sale. In addition, the Schedule 13D/A failed to disclose that Mr. Hannan had previously been censured by the NASD and the SEC. Riley never disclosed, in its July 20, 2007 Schedule 13D/A or in any other filing, its membership, together with Sanders, SMH Capital, former CEO Jacobs, the nominees to the Board, and others, in an undisclosed group seeking to gain control of Regent.

14

34.     On and after the date that the Riley Form Demand Letter, the Putnam Form Demand Letter, and the RIP Form Demand letter were sent, certain other Regent shareholders, including Defendants Sanders and Jacobs, sent, or directed Cede to send, Form Demand Letters. Copies of the Form Demand Letters sent or directed to be sent by persons other than Riley are attached hereto as Exhibits D-K. The Form Demand Letters, as mentioned above, are virtually identical. Moreover, except for the one sent by Mr. Jacobs – who has admitted he is working with Riley and Sanders – every one of the Form Demand Letters bears a "cc" notation to Mr. Ahn. These details suggest extensive collaboration between Riley, Sanders, SMH Capital, their principals, and the other members of the undisclosed group. In all, 11 Form Demand Letters were sent on behalf of at least 35 different beneficial owners of Regent stock and an unknown number of Riley investment advisory clients who were not named.

35.     The shareholders on whose behalf Form Demand Letters were sent were solicited by Riley and/or Sanders and SMH Capital to send (or direct Cede to send) the Form Demand Letters. In fact, in correspondence to Regent, later filed with the SEC, Riley has admitted that it made at least "a handful of phone calls" to Regent investors in its efforts "to garner more than the 20% of the shareholders to call a special meeting" and, as noted, Mr. Ahn of Riley was cc'd on nearly every one of the letters that was sent. However, not all of the Regent shareholders that were solicited were provided with all of the information concerning Defendants' intentions to wrest control of Regent's Board and force its sale, nor were they advised of the relationships, understandings, arrangements and agreements between and among the Riley and Sanders/SMH Capital entities and affiliates, Jacobs, and Riley's nominees for election to Regent's Board, or of the creation of the group alleged herein. Some of the shareholders Riley and/or Sanders and/or SMH Capital solicited were their own investment

15

management clients and it appears that not all of those clients, at least with respect to Sanders/SMH Capital's clients, had given full authority for such demands to be made on their behalf.

36.     In addition to Riley's, Sanders and SMH Capital's successful solicitations that resulted in Form Demand Letters being sent, one of Regent's directors, Jack Wyant, was solicited by Riley and refused. Specifically, Mr. Ahn, one of Riley's principals and nominees, requested Mr. Wyant to submit a demand for a shareholder meeting to Regent. Mr. Wyant, who beneficially owns more than 8 percent of Regent's stock, refused the Riley solicitation. Other Regent stockholders may have been solicited and declined to send demands as well. Moreover, the Riley's 13D filings themselves constituted general solicitations in the circumstances of the ongoing solicitation of consents for the Special Meeting and subsequently for proxies in favor of Riley's candidates and proposals.

37.     By a Form Demand Letter dated July 26, 2007, Jared Davis, one of Riley's nominees for election to Regent's Board, sent a Form Demand Letter representing that he held 300,000 shares (a different number than was set forth in the Riley 13D) (the "Davis Form Demand Letter"). *See* Exhibit H. On information and belief, Mr. Davis was solicited by Riley to send the Davis Form Demand Letter and did so pursuant to an understanding that he would be nominated to serve on the Board. As a nominee, Mr. Davis, as well as Messrs. Ahn, D'Agostino and Hannan, participates with Riley, Sanders, SMH Capital, and Jacobs in the unlawful solicitation in violation of the federal proxy rules complained of herein.

38.     On August 3, 2007, Riley forwarded to Regent the SMH Form Demand Letter, dated July 31, 2007, purportedly on behalf of a group of Regent shareholders affiliated with Sanders and SMH Capital. *See* Exhibit J. As noted above, the SMH Form Demand Letter

16

purports to "supersede" the RIP Form Demand Letter, *see* SMH Form Demand Letter, Exhibit J, at 4.[3] Moreover, the RIP Form Demand Letter and the SMH Form Demand Letter cite exactly the same number of shares – 3,744,882 – and the hastily-amended SMH Form Demand Letter retains the parenthetical "RIP" as the short-form reference to the beneficial owners. *See id.* at 1. Because the SMH Form Demand Letter was originally forwarded to Regent from Riley, Regent requested of Riley that a demand letter be sent directly from SMH or its agent. After a week's delay, Defendants obliged, and Regent received a copy of the SMH Form Demand Letter – still with tell-tale "RIP" reference – sent directly from Cede on August 8, 2007.

39.    As mentioned above, certain of the shareholders on whose behalf Form Demand Letters were sent were customers of Riley and/or SMH Capital. According to Sanders' 13G and 13D filings (discussed *infra*), some of the shareholders on whose behalf the SMH Form Demand Letter was submitted provided voting and dispositive power to Sanders. However, certain other shares were listed as having only shared dispositive power. The consents of such shareholders to submit a demand for a special meeting were thus required, and such consents were therefore required to be solicited. If Riley, Sanders, and/or SMH Capital solicited those consents, such solicitation was made in violation of Section 14(a); if Riley, Sanders, and or SMH Capital simply submitted the SMH Form Demand Letter without obtaining any consents, they are in violation of both Section 14(a) and Sanders and SMH may be in violation of Rule 14b-2.

40.    The collusion and cooperation between Riley, Sanders and SMH Capital became abundantly evident from (a) the SMH Form Demand Letter's citation of the same shares, under different ownership, as the RIP Form Demand Letter; (b) Defendants' hasty amendment of

---

[3]    The SMH Form Demand Letter and the RIP Form Demand Letter are the only letters that list Pershing, LLC as Participant. On information and belief, therefore, the SMH Form Demand Letter's final sentence denotes the RIP Form Demand Letter: "This letter shall supersede the Demand to Call a Special Meeting dated July 19, 2007 sent on behalf of Participant [Pershing, LLC]."

17

the representations of the SMH Form Demand Letter regarding actual beneficial ownership of
the shares discussed therein; and (c) the SMH Form Demand Letter's original transmission
directly from Riley. Nevertheless, Defendants failed, and continue to fail, to disclose their
concerted action and cooperation with respect to Regent's stock in the proper filings. Riley's,
Sanders' and SMH Capital's unreported solicitation of the shareholders listed on the SMH Form
Demand Letter is likewise obvious, and yet Defendants failed, and continue to fail, to file the
required proxy materials related to their solicitation of shareholders to demand the Special
Meeting.

## SANDERS' DISCLOSURES REGARDING ITS HOLDINGS OF REGENT STOCK AND THE EFFORTS TO SELL THE COMPANY

41.     The list of shareholders attached to the SMH Demand Letter indicates that
most of the shareholders on whose behalf that demand was made are affiliated with the various
Sanders/SMH entities and/or Mr. Sanders, who controls those entities. Many of the shareholders
listed on the attachment to the SMH Demand Letter are Sanders Funds, Sanders IRAs and
Sanders family trust funds, and members of the Sanders family, individually, many of whom list
the same address. In total, 2,197,881 shares, or more than 6 percent of Regent's shares, appear
to be owned by Sanders-related shareholders. In 2002, Sanders and/or SMH Capital were
allocated 2 million shares in connection with Regent's secondary public offering. In connection
with that offering, Mr. Sanders represented to Regent that SMH Capital's clients would buy the
shares because "they buy what I tell them to buy" – or words to that effect. In the next two
years, Sanders and SMH Capital's customers and affiliates purchased additional shares.

42.     For the past several years, Sanders has had direct or indirect voting power
and sole or shared disposition authority with respect to shares representing more than 5% of
Regent's outstanding stock. In fact, Sanders and SMH Capital have recently represented to

18

persons they have solicited to purchase their shares, or the Company itself, that Sanders controls

as much as 15.5% of Regent's shares. See Exhibit N at p.2. Nonetheless, until August 23,

2007, a week after Regent had been forced to bring this action to protect the rights of its

shareholders, neither Sanders nor SMH Capital had filed the required disclosures under Section

13(a) of the Exchange Act.

43.    On August 23, 2007, after Regent filed its Complaint, Sanders finally

disclosed its interest in Regent stock for the first time, and very belatedly, by simultaneously

filing a Schedule 13G and a Schedule 13D. A copy of the Sanders Schedule 13G is attached

hereto as Exhibit L. A copy of the Sanders Schedule 13D is attached hereto as Exhibit M. The

Sanders Schedule 13G acknowledges on its face that it is delinquent: It indicates (albeit falsely)

that the event that required its filing (i.e., the acquisition of more than 5% of Regent's stock)

took place on December 29, 2006. Under the applicable rules, as described below, the Schedule

13G should have been filed within ten days. Moreover, Schedule 13G may only be filed by

where the institutional investor or brokerage firm or principal otherwise eligible to file on behalf

of its record owner does not intend to change or influence control of the company. *See* Securities

Exchange Act Rule 13d-1(c)(1). When a person otherwise eligible to file a 13G acquires such

intent, she loses her eligibility to file the shorter form 13G and must file a Schedule 13D. *See*

Exchange Act Rule 13d-1(e)(1). Moreover, where several shareholders have arrangements,

understandings or agreements with respect to their shares, including but not limited to the

election of directors or efforts to change or influence control of the company, they must file a

joint 13D as a group.

44.    In this respect, Sanders' Schedule 13G and Schedule 13D are blatantly

contradictory. In the Schedule 13G, Sanders certifies that its Regent shares

were not acquired and are not held for the purpose of or with the

19

> effect of changing or influencing the control of the issuer of the
> securities and were not acquired and are not held in connection
> with or as a participant in any transaction having that purpose or
> effect.

Sanders Schedule 13G, Item 10. Meanwhile, Sanders' simultaneously-filed Schedule 13D

makes precisely the opposite statement: Sanders "is no longer eligible to report his beneficial

ownership of Shares of the Issuer on Schedule 13G as he may be deemed to hold Shares of the

Issuer for the purpose of or with the effect of changing or influencing the control of the Issuer."

Sanders Schedule 13D, Item 4. Sanders' Schedule 13D goes on to explain that Sanders' intent

to change the control of Regent was evidenced by, and thus that Sanders lost its eligibility to file

a Schedule 13G because of, the submission of the SMH Form Demand Letter on July 31, 2007.

Therefore, by Sanders' admission, it lost its eligibility to file a Schedule 13G no later than that

date. Since Sanders' and SMH Capital's actions – some of which Sanders admits in its

Schedule 13D – clearly demonstrate that they *do* intend to change the control of Regent,

Sanders' delinquent 13G is false and misleading.

45. Sanders' filings are materially false and misleading in a number of other

respects. For example, its Schedule 13D attaches a falsified purported copy of the SMH Form

Demand Letter, *see* Sanders Schedule 13D at Ex. 1. The letter attached to the Schedule 13D

omits the telltale parenthetical "('RIP')," which the SMH Form Demand Letter used to describe

the beneficial holders of Regent stock and which demonstrates Sanders' and SMH Capital's

collusion with Riley. *Compare id.* at p. 1 *with* SMH Form Demand Letter, Exhibit J, at p. 1. In

addition, Sanders' Schedule 13D falsely states that Sanders "may or may not seek involvement

in the issuer's affairs," Sanders Schedule 13D at Item 4, while reporting the sending of the SMH

Form Demand Letter, which Sanders acknowledges renders it ineligible to file a 13G because it

represents a direct involvement in Regent's affairs, *id.* at Item 6. Sanders and SMH Capital also

attempts to disclaim membership in a group that seeks to gain control of Regent, despite

abundant proof to the contrary, *see id.*

46.    By Sanders' own admission, the Schedule 13G and Schedule 13D are

both untimely. Sanders' Schedule 13G asserts that the "Date Of Event Which Requires Filing Of

This Statement" is December 29, 2006, *see* Sanders 13G at p. 1, but there was no purchase by

Sanders on that date which triggered the requirement to file. Rather, Sanders acquired the bulk

of its interest in Regent several years ago, beginning in 2002. Further, even if the December 29,

2006 triggering date on Schedule 13G had been accurate, the securities laws required Sanders to

disclose its interest long before August 23, 2007. Specifically, Sanders was required to file a

Schedule 13G within ten days of the triggering event, *see* Securities Exchange Act Rule 13d-

1(c).[4] Accordingly, Sanders, by its own admission on the Sanders Schedule 13G, was first

required to file no later than January 8, 2007, and yet delayed for over seven months. As a

result, all of Regent's shareholders, including those whose consents and authorizations to submit

demands for the Special Meeting were solicited by Defendants, and shareholders whose votes at

the Special Meeting Defendants are now soliciting, were kept in the dark about the true extent of

Sanders' and SMH Capital's interests.

47.    Sanders' Schedule 13D is similarly untimely, to the detriment of Regent

shareholders' interests. The securities rules require a person who has reported stock ownership

on Schedule 13G, or who is obligated to do so but has not yet made the filing, to file a Schedule

13D within ten days of acquiring the intent to change the issuer's control. *See* Securities

Exchange Act Rule 13d-1(e)(1). By Sanders' own admission, its obligation to file at least a

---

[4]    The Securities Exchange Act Rules impose different deadlines for filing a Schedule 13G
depending on whether the filer is part of a defined class of professionals, *see* Securities Exchange
Act Rule 13d-1(b), or not, *see* Securities Exchange Act Rule 13d-1(c). Sanders has filed its
Schedule 13G pursuant to Rule 13d-1(c), *see* Sanders Schedule 13G at p. 1, and is therefore
subject to that subsection's ten-day deadline.

Schedule 13G began no later than January 8, 2007, *see* Sanders Schedule 13G at 1. Again by

Sanders' own admission, it lost its eligibility to file a Schedule 13G no later than July 31, 2007,

and therefore was required to file a Schedule 13D no more than ten days later, on August 10,

2007. *See* Securities Exchange Act Rule 13d-1(e)(1).

48. The securities rules impose specific and severe restrictions on an owner of

securities who is required to file a Schedule 13G, as Sanders admits it was beginning on January

8, 2007, and who then becomes required to file a Schedule 13D, as Mr. Sanders admits it became

on July 31, 2007. Such an owner is barred from voting, or directing the voting, of the securities

he beneficially owns until ten days after filing a proper Schedule 13D. Rule 13d-1(e)(2)(i).

Such an owner is also barred from acquiring any additional shares for the same time period.

Rule 13d-1(e)(2)(i). Therefore, Sanders was disenfranchised at the time when the SMH Form

Demand Letter was sent. In truth, Sanders' obligation to file a Schedule 13D began when it

acquired any intent to change the control of Regent, *see* Rule 13d-1(e)(1)(i), which, on

information and belief, occurred long before July 31, 2007.

49. Because Sanders' shares were disenfranchised due to failure to file a 13D

at least as of July 31, 2007, the SMH Form Demand Letter is null and void. Moreover, Sanders

will remain disenfranchised so long as it fails to file a truthful Schedule 13D. As Sanders'

current Schedule 13D is materially false and misleading, *see supra*, this court must enjoin the

call of the Special Meeting and enjoin Sanders (and SMH Capital) from voting any of their

Regent shares until ten days after they finally correct the falsehoods in the Sanders 13D

including by filing a joint 13D with the other Defendants with whom they are acting in concert.

Sanders' and SMH's utter failure to follow the applicable securities laws requires the

disenfranchisement of Sanders' shares until such violations are corrected and the markets have

22

assimilated the true facts concerning the circumstances of their previously undisclosed ownership and intentions.

50.     Sanders' Schedule 13D also confirms that Defendants' undisclosed group held more than 15% of Regent's outstanding stock as of July 31, 2007. Specifically, as of August 23, 2007, Sanders held sole voting power and sole dispositive power with respect to 1,255,479 shares of Regent stock, attributable primarily to holdings by the SOF Funds, and shared dispositive power with respect to an additional 1,416,000 shares held among the 22 SMH Capital client brokerage accounts listed on the SMH Form Demand Letter, for a total of 2,671,479 shares, or 6.9% of Regent's outstanding stock. *See id.* at p. 2.

51.     Furthermore, the Schedule 13D also reveals that on August 9, 2007, nine days *after* the SMH Form Demand Letter was submitted, Sanders *sold* 540,000 shares, and bought 5,000 shares on August 2, 2007. *See id.* at p. Item 5(c). According to Sanders' admissions here, prior to August 9, 2007 – including on July 31, 2007, when Sanders and SMH Capital submitted the SMH Form Demand Letter – adding back in the net 535,000 shares from those two transactions, Sanders in fact beneficially held 3,206,479 shares, or 8.2% of Regent's outstanding stock. Combined with Riley's 7.4% holdings on that date, the combination of Sanders, SMH Capital and Riley beneficially held approximately 15.6% of the Company's stock. If it is true that Defendants have been acting as an undisclosed group, even excluding shares owned by Mr. Jacobs and other shareholders, Sanders, SMH Capital and Riley would have beneficially owned a sufficient proportion of Regent's outstanding shares to trigger Regent's Shareholder Rights Plan and Delaware Corporations Code Section 203. *See infra* ¶¶ 58-59.

52.     Sanders' Schedule 13G and Schedule 13D filings omit numerous other material facts. In particular, Sanders and SMH Capital continue to neglect any obligation to file

proxy materials pursuant to §14 (a) of the Securities and Exchange Act. Specifically, Sanders and/or SMH Capital must have solicited and obtained consents from SMH Capital's brokerage clients, as to whose shares they did not hold voting or dispositive power, to include those clients' shares in the SMH Form Demand Letter. Absent such consent, Defendants' demand for the meeting would have been invalid because they did not represent 20% of the Company's outstanding shares. Under Section 14 of the Exchange Act, because they were acting together with and at the behest of Riley, Riley and/or Sanders and/or SMH Capital were obligated to file and provide proxy materials in connection with this solicitation, but did not do so. Further, Sanders and SMH Capital failed to disclose to SMH Capital's clients who were Regent shareholders the nature of their own interests in and intentions and agreements concerning Regent's securities. Those interests include Sanders' and/or SMH Capital's desire to act as a banker or investor in a sale of the company, interests at least potentially in conflict with the SMH Capital clients on whose behalf the SMH Form Demand Letter was purportedly sent.

53.    Another fact completely neglected by Sanders' disclosures is that it and/or SMH Capital has represented to potential buyers of Regent shares that it and/or SMH Capital controls 15.5%, or as many as 6 million shares, of Regent. In connection with its unauthorized efforts to sell the Company, Sanders and/or SMH Capital has circulated unauthorized and false and misleading materials (the "Pitch Book") to prospective investors – of which Regent has obtained two pages (the "Pitch Book Pages") from third parties. A copy of the Pitch Book Pages is attached hereto as Exhibit N. On one of those pages, Sanders and/or SMH Capital represents – falsely in several instances at least – that "certain shareholders have currently expressed interest in selling their shares if the appropriate opportunity was presented." The materials purport that Sanders and/or SMH Capital has discussed the possibility of selling the Company with

24

shareholders representing 51.2% of the outstanding shares of the Company, including Jacobs and Riley, and "selected clients of Don Sanders" who are claimed to hold 1%, 7% and 15.5% of the Company's outstanding stock, respectively. It is also possible that Defendants solicited the listed Regent shareholders in connection with the other solicitations discussed herein. Accordingly, their failure to provide these shareholders with the appropriate proxy materials was in flagrant violation of their obligations under the federal securities laws.

## JACOBS JOINS THE GROUP FORMED TO WREST CONTROL OF REGENT'S BOARD

54.    Terry S. Jacobs ("Jacobs") is Regent's former Chairman and CEO, having served in those capacities from Regent's founding in 1996 until his resignation on September 1, 2005. Jacobs remained on the Board until May 9, 2006, and his fiduciary duties to maintain the Company's confidential information continue to this date. Jacobs hopes to regain his positions with Regent, and that opportunity has been discussed as an incentive for him to act in concert with the Defendants. Jacobs has joined with the Defendants and others to form the undisclosed group that seeks to change Regent's control without paying a control premium to Regent's shareholders, triggering Regent's and Delaware's proper anti-takeover measures, or disclosing their true histories or intentions. Jacobs owns more than 1% of Regent's shares.

55.    By a letter dated August 8, 2007, Jacobs sent a Form Demand Letter representing that he held 400,031 shares or more than 1 percent of the total outstanding shares of Regent (the "Jacobs Form Demand Letter"). The Jacobs Form Demand Letter is attached hereto as Exhibit K.

56.    Jacobs has stated to representatives of Regent that he was in regular contact with Defendants both before and after submission of the Form Demand Letters regarding the plan set forth in the demand letters. Jacobs has indicated that Defendants have suggested that

he return to a Board position, or as CEO and/or Chairman. Mr. Jacobs also told a Regent representative that if it was in the interest of the shareholders, he would consider returning to the helm as the CEO and/or Chairman of the Company. Jacobs was solicited by Defendants to send the Jacobs Demand Letter. Jacobs, in fact, assisted in soliciting additional Regent shareholders and participated in the surreptitious efforts to sell the Company that are described herein.

57.    On information and belief, Riley and certain other Regent shareholders, including Sanders, SMH Capital, Davis, Ahn and Jacobs have formed a group within the meaning of Section 13(d) of the Exchange Act. This group holds shares of Regent stock representing far more than 5% of the total number of outstanding shares. Nevertheless, neither Jacobs nor any other Defendant has reported the existence of this by filing a truthful and complete Schedule 13D.

## The Disclosures Required By The Federal Securities Laws May Reveal That Regent's Anti-Takeover Provisions Have Been Triggered

58.    Riley and Sanders and any other stockholders in their group have every motive to conceal their concerted activities and intentions because, if any stockholder or group of stockholders holds more than 15% of Regent's shares, various provisions of Delaware law and the Company's governance documents designed to prevent hostile, coercive and undisclosed acquisitions of control may be triggered, *i.e.*, Regent's shareholder rights plan and Section 203 of the Delaware Corporation Law. The triggering of the shareholder rights plan would result in the issuance of rights to purchase additional shares to those of Regent's shareholders who were not members of the group seeking to obtain control, resulting in significant dilution of the number of shares and voting power of those who are members of the group. Section 203 has automatic "standstill" provisions that would prevent any control group from acquiring additional shares or engaging in any change in control transaction concerning the company for a period of three

26

years. These protections were intended by the Delaware legislature and by Regent's Board to prevent creeping acquisitions and efforts to force a change of control without providing existing shareholders with the disclosure required by the securities laws, or with a control premium – the very effort that Defendants are attempting here.

59.     In an apparent attempt to avoid invocation of these anti-takeover measures, Sanders has sold significant blocks of its holdings subsequent to the demands on the Board for a special meeting. Sanders' Schedule 13D demonstrates that it sold a net of 535,000 shares between August 2 and August 9, 2007. Upon information and belief, this sale was executed for the specific purpose of avoiding of avoiding the anti-takeover provisions in Regent's bylaws and Delaware law. However, as described above, the holdings of Riley and Sanders *alone* appear to have exceeded 15% as of July 31, 2007. Aggregating the 15.6% share interest owned by the Riley/Sanders/SMH Capital group with the holding of Jacobs, Davis and Ahn, the total significantly exceeds 15%. Moreover, two large blocks of shares, each representing close to 1 million shares, were recently sold into the market but no 13D filings concerning those shares has been made although 1,950,000 shares – the amount in question – equals 5% of the Company's stock.

## Riley's Delaware Chancery Action Seeks To Compel A Meeting Despite Riley's Blatant Proxy Violations

60.     On July 19, 2007, Riley demanded that Regent provide it with a list of all of its stockholders and other documents. Riley explained that the express purpose for seeking these stockholder lists was "to enable [Riley] to send a notice regarding, and otherwise communicate with the Company's stockholders with respect to" the Special Meeting Riley sought.

61.    Regent initially rejected Riley's demands and refused to provide the lists of its stockholders because the discrepancies in the SMH Form Demand Letter called its authenticity into question, and because Riley's demands appeared to be an attempt to circumvent the proxy solicitation process by communicating directly with the stockholders without the required filing of proxy solicitation materials, including a proxy statement meeting the requirements of Section 14(a) of the Securities Exchange Act of 1934.

62.    Even without the stockholder list, however, as shown above, Riley unlawfully communicated with Regent stockholders and requested that they submit the Form Demand Letters to Regent. These communications constitute a solicitation within the meaning of Section 14(a) of the Securities Exchange Act and Rule 14a-1 promulgated thereunder.

63.    On August 8, 2007, Regent provided a stockholder list to Riley.

### RILEY'S PRESS RELEASE VIOLATES THE PROXY RULES

64.    On August 9, 2007, Riley published a press release (the "Press Release") announcing that Riley had filed a lawsuit against Regent. Both the lawsuit and the Press Release falsely indicated that Regent had failed to provide a stockholder list and had wrongfully refused to call a special meeting as demanded by the Form Demand Letters. The timing and content of the Press Release clearly demonstrate that it was directed at Regent's stockholders and was reasonably calculated to influence the stockholders to demand the special meeting and then to vote their proxies in favor of the proposals and nominees proposed by Riley. As such, the Press Release constitutes a solicitation within the meaning of Section 14(a) of the Securities Exchange Act. The SEC has also warned that filings such as Riley's Schedule 13Ds, both before and after the solicitation of consents for a special meeting, may be considered general solicitations – rendering the failure to file and provide proxy materials in connection with the solicitation of

28

consents a violation of federal securities laws. *See* SEC Division of Corporation Finance Manual of Publicly Available Telephone Interpretations, Proxy Rules and Schedule 14(a) (July 1997), at p. 1, note N.(4), *available at* http://www.sec.gov/interps/telephone/cftelinterps_proxyrules-sch14a.pdf (last accessed Aug. 27, 2007).

65.    On August 10, 2007, Riley filed the August 9th Press Release as soliciting materials under Rule 14a-12 under the Securities Exchange Act. These materials are delinquent and inadequate and serve to perpetuate the ongoing violations of the federal securities laws. Riley acknowledges in the August 9th press release that it had been soliciting consents from Regent stockholders all along, acknowledging that it has made "telephone calls" which enabled it "to garner more than 20% of the shareholders to call a special meeting." However, Rule 14a-12 plainly says that a definitive proxy statement meeting the requirements of the Exchange Act must be sent to shareholders <u>before</u> forms of proxy, consent or authorization are requested. Riley flagrantly ignored this requirement.

66.    Moreover, in its August 9th Press Release, Riley finally acknowledged that it "may" seek to solicit proxies in support of its proposals to expand Regent's Board and then to elect almost half of its directors who then may fill any vacancy that later occurs. This late disclosure is misleading in characterizing Riley's true intention as merely conditional and, in any event, does not cure but rather proves that the prior solicitations were made in violation of the securities laws. Moreover, this Press Release is materially false and misleading, as are Riley's prior filings on Schedule 13D, for failure to disclose Riley's arrangements, agreements and understandings with Sanders/SMH Capital and the other shareholders who have demanded a special meeting and its intent to ultimately obtain control of the Board, to force its sale and to

profit on that sale from the stock they and their group have bought at depressed prices at the expense of other shareholders.

67.     Defendants had a legal obligation under Rules 14a-3, 14a-6 and 14a-12 under the Exchange Act to furnish Regent stockholders with the information required by Schedule 14(a) before requesting proxies, consents or authorizations. In addition, Rule 14a-9 prohibits it from making false or misleading statements in any proxy solicitation materials (including the August 9th Press Release and any other solicitations, regardless of whether filed).

68.     Defendants, and other members of their undisclosed group, had a legal obligation to file Schedule 13Ds and to update them as required in order to alert investors as to the amounts of their holdings in Regent, their relationships, understandings, arrangements and agreements with other shareholders and their purposes and intentions with respect to Regent's securities. Defendants and any other members of their group have failed to provide the full and fair disclosure that Section 13(d) requires.

## COUNT I

### VIOLATION OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 BY RIP, RIM, MR. RILEY, AND MR. AHN

69.     Regent repeats and realleges paragraphs 1 through 68 as if fully set forth herein.

70.     Regent's securities are registered under Section 12 of the Exchange Act.

71.     The Form Demand Letters constitute proxies, consents or authorizations within the meaning of Section 14(a) of the Securities Exchange Act and, therefore, constitute "proxies" for purposes of the SEC's proxy rules.

72.     Riley and its principals requested that more than ten Regent stockholders make a demand and requested those who were willing to execute the Form Demand Letters,

30

furnished the Form Demand Letters to Regent's shareholders under circumstances reasonably calculated to result in the procurement of the Form Demand Letters, and otherwise solicited Regent's shareholders to execute the Form Demand Letters and/or demand a special meeting of the Company's shareholders, all of which constituted solicitations of proxies within the meaning of Section 14(a) of the Exchange Act and Rule 14a-1 promulgated thereunder. The stockholders solicited in this manner included, but were not limited to, (a) all of the stockholders on whose behalf Form Demand Letters were sent, including those listed within the SMH Form Demand Letter and (b) all of the stockholders whose interest in selling their Regent holdings was solicited by Sanders and/or SMH Capital in connection with the preparation of the Pitch Book.

      73.    Riley and its principals did not furnish any information to Regent's stockholders or make any filings with the SEC in connection with these proxy solicitations, in flagrant violation of federal securities laws, including Section 14(a) under the Exchange Act and Rule 14a-3 (providing that "[n]o solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with: (1) a publicly-filed preliminary or definitive written proxy statement containing the information specified in Schedule 14A (§ 240.14a-101)") and/or Rule 14a-6 (requiring filing of proxy statements and other soliciting materials with the SEC) and/or Rule 14a-12 (requiring filing with the SEC of pre-filing written communications that are made before furnishing a proxy statement meeting the requirements of Rule 14a-3).

      74.    Riley's filings on Schedule 13D between April 4, 2007 and July 20, 2007, insofar as they were filed at the time when Riley, and its principals, were soliciting other shareholders' consents to demand that Regent hold the Special Meeting, constituted solicitations of proxies within the meaning of Section 14(a) of the Exchange Act and Rule 14a-1 promulgated

thereunder. Riley and its principals did not furnish any information to Regent's stockholders or make any filings with the SEC in connection with these proxy solicitations, in flagrant violation of federal securities laws, including Section 14(a) under the Securities Exchange Act and Rule 14a-3 (providing that "[n]o solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with: (1) a publicly-filed preliminary or definitive written proxy statement containing the information specified in Schedule 14A (§ 240.14a-101)") and/or Rule 14a-6 (requiring filing of proxy statements and other soliciting materials with the SEC) and/or Rule 14a-12 (requiring filing with the SEC of pre-filing written communications that are made before furnishing a proxy statement meeting the requirements of Rule 14a-3).

75.   Riley and its principals issued its August 9th Press Release and advised that it "may" seek to solicit proxies in support of its proposals to expand Regent's Board and then to elect almost half of its directors who then may fill any vacancy that later occurs. This Press Release, which Riley filed with the SEC under Rule 14a-12 on August 10, 2007, is the first and only proxy solicitation material filed by any Defendant with the SEC and does not even purport to satisfy Defendants' violation of federal securities laws in connection with their solicitation of the Form Demand Letters. Indeed, Riley's press release itself constitutes a further violation of federal securities laws because Rule 14a-12 requires that "[a] definitive proxy statement meeting the requirements of Exchange Act Rule 14a-3(a) is sent or given to security holders solicited in reliance on this Rule 14a-12 *before or at the same time* as the forms of proxy, consent or authorization are furnished to or requested from security holders."

32

76.     Riley's and its principals' violations of Section 14(a) and the related SEC rules are continuing and without the equitable intervention of this Court will cause Regent's shareholders, as well as Regent itself, irreparable injury.

COUNT II

VIOLATION OF SECTION 14(a) OF THE SECURITIES EXCHANGE
ACT OF 1934 BY MR. SANDERS, SMH CAPITAL, THE SOF FUNDS, AND SOF
MANAGEMENT

77.     Regent repeats and realleges paragraphs 1 through 76 as if fully set forth herein.

78.     Sanders and/or SMH Capital participated with the other defendants in soliciting the Form Demand Letters, including from their own customers as to whom they did not have voting and dispositive control, and otherwise solicited or assisted the solicitation of Regent's shareholders to execute the Form Demand Letters and/or demand a special meeting of the Company's shareholders, all of which constituted solicitations of proxies within the meaning of Section 14(a) of the Exchange Act and Rule 14a-1 promulgated thereunder.

79.     To the extent that Sanders and/or SMH Capital did not solicit and obtain the consents of their customers as to whom it does not have voting and dispositive control, then the Shareholder Demands purportedly made on behalf of such shareholders are invalid and constitute a violation of the federal securities laws.

80.     Sanders' delinquent, late-filed 13D constitutes a general solicitation under the proxy rules although no proxy materials have been provided to those solicited by or with the assistance of Sanders and/or SMH Capital.

81.     Neither Sanders nor SMH Capital furnished any information to Regent's stockholders or make any filings with the SEC in connection with these proxy solicitations, in flagrant violation of federal securities laws, including Section 14(a) under the Securities

33

Exchange Act and Rule 14a-3 (providing that "[n]o solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with: (1) a publicly-filed preliminary or definitive written proxy statement containing the information specified in Schedule 14A (§ 240.14a-101)") and/or Rule 14a-6 (requiring filing of proxy statements and other soliciting materials with the SEC) and/or Rule 14a-12 (requiring filing with the SEC of pre-filing written communications that are made before furnishing a proxy statement meeting the requirements of Rule 14a-3).

82.     Defendants' violations of Section 14(a) and the related SEC rules are continuing and without the equitable intervention of this Court will cause Regent's shareholders, as well as Regent itself, irreparable injury.

## COUNT III

### VIOLATION OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9
(RIP, RIM, Mr. Riley, Mr. Ahn)

83.     Regent repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

84.     Riley's August 9th, 2007 Press Release constituted a solicitation within the meaning of Section 14(a) of the Exchange Act and Rule 14a-1.

85.     Riley's Press Release contained false and misleading statements inasmuch as it characterized Riley's intention to solicit proxies in support of its nominees and proposals as merely conditional, and in failing to disclose Riley's true purposes, intents, arrangements and understandings as alleged herein.

86.     Riley's August 10th, 2007 Schedule 14A and the Press Release were also materially misleading because:

a) The Press Release states that Regent refused to provide the stockholder list

34

materials to Riley, even though Riley knew at the time of publication that Regent had in fact provided the stockholder list to Riley.

b) Riley's August 9th letter to Regent, which is reproduced in and forms a part of the Press Release, states that Regent has delayed calling a special meeting and providing stockholder list materials "because [Regent] want[s] to impede improperly our right to contact other shareholders to solicit their proxies to elect new directors to the board," even though Regent has acted diligently and expeditiously to verify documentation provided by Riley and is only seeking to ensure that Riley complies with the federal securities laws applicable to all our stockholders.

87.    The Press Release was also materially misleading because it failed to disclose that:

a) Riley had been engaged in proxy solicitation activities since at least June or July 2007 in violation of federal securities laws in connection with its solicitation of the Form Demand Letters;

b) Riley, along with Mr. Riley, Mr. Ahn and Mr. D'Agostino has engaged in numerous hostile proxy contests for corporate control over the last several years;

c) Riley's nominees other than Davis were either principals or loyalists who had agreed to serve at Riley's behest in connection with proxy contests for Regent and various other public companies;

d) Davis had an arrangement or understanding with Riley that he would be appointed to Regent's Board in return for his agreement, in response to

Riley's solicitation, to send a Form Demand Letter to Regent;

e) Mr. Hannan has been censured by the SEC and the NASD in the past;

f) Riley has had the intention since at least April 2007, of seeking to take Regent private or otherwise obtaining control of its Board and acquiring its shares at depressed prices in order to reap the profit after forcing the Company's sale to the detriment of Regent's other shareholders.

88.    At the time the Press Release was issued, Riley knew the foregoing statements and omissions were false and misleading, recklessly disregarded the falsity of such statements, or was negligent in failing to investigate and discover that the statements were false and misleading.

89.    As a result of this conduct, the Press Release and Riley's Schedule 14A violate Section 14(a) of the Exchange Act and Rule 14a-9.

COUNT IV

VIOLATION OF SECTION 13(d) OF THE
EXCHANGE ACT
(RIP, RIM, Mr. Riley, and Mr. Ahn)

90.    Regent repeats and realleges paragraphs 1 through 89 as if fully set forth herein.

91.    Once Riley, alone or through its affiliates, acquired, directly or indirectly, in excess of five percent of the outstanding stock of the Company, it was required under Section 13 of the Exchange Act to file a Schedule 13D or 13G. Schedule 13G may be filed only if the filer is an institutional or custodial passive investor. Once and if such an investor is no longer passive but decides to acquire or hold shares "with the purpose [or] with the effect of changing or influencing the control of the issuer" the filer is no longer eligible to file a 13G but must file a 13D which requires disclosure, *inter alia*, of such intentions with respect to its investment in

36

Regent. Moreover, once and if such a filer enters into any understanding, arrangements or agreements with other persons with respect to the issuers' shares, it must disclose such arrangements in its own filings and in a joint filing as part of such a"group." Further, upon a material change in the information reported, such Schedule 13D or 13G filings are required to be promptly amended.

92.    Riley is in violation of Section 13(d) in that it has failed to disclose that, on information and belief, it is acting together, and with other shareholders which may include Sanders, Jared Davis, Terry Jacobs, and others as a "group" as construed under Rule 13d-5(b)(1), for the purpose of seeking to amend the bylaws of the Company and elect directors including principals and affiliates of Riley, and Mr. Davis, to Regent's Board.

93.    Riley's Schedule 13D is materially false and misleading in that it fails to disclose its agreements and understandings with Terry Jacobs, Jared Davis, and others, and its relationships with Bob D'Agostino and Joseph Patrick Hannan and others.

94.    Riley's Schedule 13D is materially false and misleading in that it fails to disclose that:

    a)  Riley had been engaged in proxy solicitation activities since at least mid-June or July 2007 in violation of the securities laws in connection with its solicitation of the Form Demand Letters;

    b)  Riley, as well as Mr. Riley, Mr. Ahn and Bob D'Agostino, have been engaged in numerous hostile proxy contests for corporate control over the last several years;

    c)  Riley's nominees other than Jared Davis were either principals or loyalists with past board service at Riley's behest in connection with various proxy

contests;

    d)   Jared Davis had an arrangement or understanding with Riley that he would be appointed to Regent's Board in return for his agreement, in response to Riley's solicitation, to send a Form Demand Letter to Regent;

    e)   Joseph Patrick Hannan has been censured by the SEC and the NASD in the past;

    f)   Riley has had the intention since at least April 2007, of seeking to take Regent private or otherwise obtaining control to the detriment of Regent's other shareholders.

95.     At the time that Riley filed its Schedule 13Ds it knew that such documents were false or misleading in failing to disclose the existence of its agreements and understandings with Sanders and/or SMH Capital, Terry Jacobs, Jared Davis and other shareholders.

96.     Riley's' violations of Section 13(d) are continuing and without the equitable intervention of this Court will cause Regent's shareholders, as well as Regent itself, irreparable injury.

## COUNT V

### VIOLATION OF SECTION 13(d) OF THE EXCHANGE ACT

(Mr. Sanders, SMH Capital, the SOF Funds, and SOF Management)

97.     Regent repeats and realleges paragraphs 1 through 96 as if fully set forth herein.

98.     Once Sanders, alone or through its affiliates, acquired, directly or indirectly, in excess of five percent of the outstanding stock of the Company, it was required under Section 13 of the Exchange Act to file a Schedule 13D or 13G. Schedule 13G may be

38

filed only if the filer is an institutional or custodial passive investor. Once and if such an investor is no longer passive but decides to acquire or hold shares "with the purpose [or] with the effect of changing or influencing the control of the issuer" the filer is no longer eligible to file a 13G but must file a 13D which requires disclosure, *inter alia*, of such intentions with respect to its investment in Regent. Moreover, once and if such a filer enters into any understanding, arrangements or agreements with other persons with respect to the issuers' shares, it must disclose such arrangements in its own filings and in a joint filing as part of such a"group." Further, upon a material change in the information reported, such Schedule 13D or 13G filings are required to be promptly amended.

99.     Sanders is in violation of Section 13(d) in that it has failed to disclose that, on information and belief, they it is are acting together, and with other shareholders which may include Riley, Jared Davis, Terry Jacobs, and others as a "group" as construed under Rule 13d-5(b)(1), for the purpose of seeking to amend the bylaws of the Company and elect directors including principals and affiliates of Riley, and Mr. Davis, to Regent's Board.

100.     Sanders is in violation of Section 13(d) in that it was required to disclose its ownership of more than 5% of outstanding shares of Regent's stock on Schedule 13G under Rule 13d-1(c) and failed to do so. Without ever filing the required Schedule 13G, it then became subject to Rule 13d-1(a) on or before July 31, 2007. Under Rule 13d-1(e), it was required to file a Schedule 13D within 10 days of becoming subject to Rule 13d-1(a), but failed to do so. Until ten days after the filing of a proper and truthful Schedule 13D, it is barred from voting or directing the voting of their Regent securities under Rule 13d-1(e)(2)(i) and barred from acquiring any additional beneficial ownership in any equity securities of Regent under Rule 13d-1(e)(2)(ii).

39

101.    Sanders' Schedule 13G is materially false and misleading in that (a) it states that Sanders' Regent securities were not acquired and are not held for the purpose or with the effect of changing or influencing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction having that purpose or effect, and (b) it falsely represents that Sanders' obligation to file a Schedule 13G stems from an even that occurred on December 29, 2006.

102.    Sanders' Schedule 13G and 13D are materially false and misleading in that they fail to disclose Sanders' and SMH Capital's agreements and understandings with the other Defendants and with Jared Davis, Terry Jacobs, and others, and their relationships with Jared Davis, Bob D'Agostino, and others.

103.    Sanders' Schedule 13D is materially false and misleading in that it disclaims Mr. Sanders' membership in a group with the other shareholders on whose behalf the Form Demand Letters were sent.

104.    Sanders' Schedule 13D is materially false and misleading in that it states that Mr. Sanders "may or may not seek involvement in the issuer's affairs."

105.    Sanders' Schedule 13D is materially false and misleading in that it materially falsifies the attached purported SMH Form Demand Letter.

106.    At the time that Sanders filed his Schedule 13G and Schedule 13D, he knew that such documents were materially false and/or misleading.

107.    Defendants' violations of Section 13(d) are continuing and without the equitable intervention of this Court will cause Regent's shareholders, as well as Regent itself, irreparable injury.

108.    Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiff requests that the Court enter an Order:

a) ordering that no special meeting of stockholders for the purposes outlined in the Form Demand Letters may be held until Defendants comply with their obligations under the federal securities laws;

b) declaring that Defendants' solicitations of the Form Demand Letters violated the federal securities laws and that the Demand Letters secured thereby are unlawful, void and of no force and effect;

c) declaring that SMH Capital and/or Sanders were barred from voting or directing the voting of their Regent securities at the time they directed for the SMH Form Demand Letter to be sent, and that the SMH Form Demand Letter is unlawful, void and of no force and effect;

d) enjoining any further solicitations of the Form Demand Letters or any other solicitations of proxies, consents or authorizations until Defendants comply with its obligations under the federal securities laws;

e) requiring corrective disclosure with respect to Riley's false and misleading statements or omissions in connection with the Press Release and related Schedule 14A and enjoining Riley from any further similar violations of federal securities laws;

f) requiring corrective disclosures with respect to Riley's false and misleading statements or omissions in connection with its Schedule 13Ds and enjoining Riley from any further similar violations of federal securities laws;

g) requiring corrective disclosures with respect to Sanders' and SMH

Capital's false and misleading statements or omissions in connection with
its Schedule 13G and Schedule 13D, enjoining them from voting or
directing the voting of its Regent securities until 10 days after such time as
they make said corrective disclosures, pursuant to Rule 13d-1(e)(2)(i),
enjoining them from acquiring an additional beneficial ownership interest
in any equity securities of the issuer of the securities, or of any person
controlling the issuer, pursuant to Rule 13d-1(e)(2)(ii), and enjoining them
from any further similar violations of federal securities laws;

h)  declaring that Defendants and others formed a "group" under applicable
federal securities laws and violated the federal securities laws by failing to
file a Schedule 13D with respect to such "group" and directing that
Defendants and any other member of the "group" file a Schedule 13D and
comply with all applicable federal securities laws in connection therewith;
and

i)  Granting such further relief as this Court shall deem appropriate.

Dated:  August 28, 2007                    Respectfully submitted,

*Attorneys for Plaintiff Regent Communications, Inc.*

Raymond J. DiCamillo (#3188)
DiCamillo@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
10th and King Streets
Wilmington, Delaware  19899
Tel:  (302) 651-7700
Fax:  (302) 651-7701

-and-

42

Laurie B. Smilan
LATHAM & WATKINS LLP
11955 Freedom Drive, Suite 500
Reston, Virginia 20190
Tel: (703) 456-1000
Fax: (703) 456-1001

RLF1-3194883-1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2007, a copy of the foregoing was served by efile on the following attorneys of record:

David J. Teklits, Esquire
Kevin M. Coen, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Peter J. Walsh, Esquire
Brian C. Ralston, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951


Raymond J. DiCamillo (#3188)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

REGENT COMMUNICATIONS, INC.,

                **Plaintiff,**

          v.

**RILEY INVESTMENT PARTNERS MASTER FUND, L.P., RILEY INVESTMENT MANAGEMENT LLC, SMH CAPITAL INC., SANDERS OPPORTUNITY FUND, L.P., SANDERS OPPORTUNITY FUND (INSTITUTIONAL), L.P., SOF MANAGEMENT, LLC, DON A. SANDERS, BRYANT RILEY and JOHN AHN,**

                **Defendants.**

No. 07-499 JJF

Judge Joseph Farnan

## EXHIBITS FOR FIRST AMENDED COMPLAINT

**A.**     Riley Form Demand Letter

**B.**     Putnam Form Demand Letter

**C.**     RIP Form Demand Letter

**D.**     GPC LXII  Form Demand Letter

**E.**     PNC Bank Clat I Form Demand Letter

**F.**     PNC Bank Clat II Form Demand Letter

**G.**     Lewcom Form Demand Letter

**H.**     Davis Form Demand Letter

**I.**     McClorey Form Demand Letter

**J.**     SMH Form Demand Letter

**K.**     Jacobs Form Demand Letter

**L.**     Sanders Schedule 13G

**M.**     Sanders Schedule 13D

**N.**     Pitch Book Pages

# EXHIBIT A

## DEMAND TO CALL A SPECIAL MEETING

Riley Investment Partners Master Fund, L.P.
c/o Riley Investment Management LLC
11100 Santa Monica Blvd., Suite 800
Los Angeles, CA 90025

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Riley Investment Partners Master Fund, L.P. ("RIP") is a holder of record of 1,000 shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). A copy of RIP's stock certificate is attached. In addition, RIP is the beneficial holder of 2,587,913 shares of Common Stock.

As a holder of record, RIP hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.      To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting

power of a majority of the shares present and entitled to vote at the meeting.

2.  To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS. In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.  To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.  To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

RIP further requests that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. RIP demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

RIP reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then

RIP reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

RIP, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

Sincerely,


Riley Investment Partners Master Fund, L.P.
By: Riley Investment Management LLC, its
general partner


By: _____
Name: John Ahn
Title: Principal


Attachment

3



# EXHIBIT B

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant UBS Securities LLC ("Participant"), that on the date hereof 3,956,969 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by Riley Investment Partners Master Fund, L.P., Putnam NGF Securities Inc. and Richard McKenzie Jr., IRA (collectively "RIP"), customers of the Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.  To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it it its entirety with the following:

    SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This

JUL-19-2007 08:18 FROM:                    201 793 6652          TO:212 885 5181          P.4

provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.;"

2.      To amend Section 4 of Article II of this Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

        SECTION 4.  VACANCIES IN THE BOARD OF DIRECTORS.  In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.      To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Harman, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.      To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of RKP, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above.  This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals.  Code & Co., at the request of the Participant on behalf of RKP, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

2

LOCATION:201 793 6652          RX TIME   07/19 '07 09:01

JUL-19-2007 09:18 FROM:                    201 793 6652        TO:212 855 5181        P:5

Code & Co., at the request of the Participant on behalf of RJP, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Code & Co., at the request of the Participant on behalf of RJP, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Code & Co., at the request of the Participant on behalf of RJP, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

JUL-19-2007 09:18 FROM:    281 793 6652    TO:212 855 5181    P.6

While Code & Co., is furnishing this request as the shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true parties in interest, RIP. Code & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that RIP are not denied its rights as the beneficial owners of the Shares, and Code & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By: _____

Name:

Title:

**Peter J. Shannon, partner**

cc: John Ahn, Riley Investment Management LLC

LOCATION:281 793 6652    RX TIME    07/19 '07 09:01

# EXHIBIT C

FILE No.807 08/01 '07 12:52   ID:DTC REORG & PROXY   FAX:212 855 6181   PAGE   2/ 5

08/01/2007  09:48    201-333-4288      REORG           PAGE  03/07

---

# DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 31, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Pershing, LLC ("Participant"), that on the date hereof 3,744,882 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by various customers (see attached list) ("RIP"), a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

    1.    To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1.  NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2.   To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4.  VACANCIES IN THE BOARD OF DIRECTORS:  In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.   To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.   To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3 (i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

2

FILE No.807 08/01 '07 12:52  ID:DTC REDRG & PROXY      FAX:212 855 5181         PAGE 3/ 5

08/01/2007  09:48    201-333-4288              REDRG

                                                        PAGE  05/07

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

FILE No.807 08/01 '07 12:52  ID:DTC REORG & PROXY          FAX:212 855 5181          PAGE    4/  5

08/01/2007  09:40    201-333-4280              REORG

PAGE  05/07

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

"This letter shall supersede the Demand to Call a Special Meeting dated July 19, 2007 sent on behalf of the Participant."

Sincerely,

Cede & Co.

By:

Name:

Title:

Peter J. Clasen, partner

cc: John Ahn, Riley Investment Management LLC

FILE No.807 08/01 '07 12:52  ID:DTC REORG & PROXY    FAX:212 855 5181    PAGE 5/5

RX TIME  08/01 '07 09:34

LOCATION:201 333 4280

SMH Capital
Regent Communications – RGCI

| Quantity | Name | Address |
|---|---|---|
| 704,284 | Sanders Opportunity Fund (Institutional) LP | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 247,739 | Sanders Opportunity Fund Lp | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 212,465 | IRA FBO Don Sanders Pershing LLC As Custodian | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 205,000 | IRA FBO Katherine U Sanders Pershing LLC As Custodian | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 187,000 | James Investments Inc | 4014 Inverness Drive, Houston, TX 77019 |
| 110,000 | Bruce Slovin | 6263 North Scottsdale Road #125, Scottsdale, AZ 85250 |
| 500,000 | Edward R. Heil | 111 East 61st Street, New York, NY 10021 |
| 40,000 | Steve Scott | 8062 Fisher Island Drive, Miami Beach, FL 33109 |
| 50,000 | Alex M Dillard | 1021 Main Streets, Suite 1575, Houston, TX 77002 |
| 76,000 | John M O Quinn | 5702 Champions Glen Drive, Houston, TX 77069 |
| 50,000 | James W. Christmas | 3515 Travis Street, Suite 200, Houston, TX 77002 |
| 75,000 | Morton A. Cohn | 63 Fern Street, Floral Park, NY 11001 |
| 60,000 | Joe M. Bailey | 600 Bering Drive, Suite 210, Houston, TX 77057 |
| 560,000 | Katherine U. Sanders | P.O. Box 488, Flatonia, TX 7894-1-0488 |
| 25,000 | Brad D. Sanders | 4014 Inverness Drive, Houston, TX 77019 |
| 30,000 | Christine M. Sanders | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 30,500 | Charles Banfor & Becky Banfor TIC | 1025 S Shepherd #401, Houston, TX 77019 |
| 63,000 | Aboaf Family Foundation | 6809 Long Lake, Houston, TX 77057 |
| 25,000 | Courtney Colm Hopson Separate Account | 6263 North Scottsdale Road #125, Scottsdale, AZ 85250 |
| 42,650 | Laura K. Sanders | 8303 Bering Drive, Suite 210, Houston, TX 77057 |
| 30,000 | Tanya J Dray | 7393 E Joshua Tree, Scottsdale, AZ 85250 |
| 50,000 | JJU Partnership | 100 Timberside, Houston, TX 77004 |
| 100,000 | Don A. Sanders Children's Trust DTD 2003 Don Weir Trustee | 18 Augusta Pines Drive #210C, Spring, TX 77389 |
| 107,373 | Sanders 1988 Children's Trust DTD 12-01-1987 Donald V Weir | 600 Travis Street, Suite 3100, Houston, TX 77002 |

3,744,862

# EXHIBIT D

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Banc of America Securities LLC ("Participant"), that on the date hereof 192,776 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by GPC LXII, LLC ("Shareholder"), a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.  To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

    SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

2.    To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS.   In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.    To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.    To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above.  This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By:

Name:

Title:

Peter J. Gleeson, partner

cc: John Ahn, Riley Investment Management LLC

# EXHIBIT E

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant PNC BANK, N.A. ("Participant"), that on the date hereof 229,256 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by PNC BANK N.A. Trustee U/A Dated 2/28/97 C Heekin Clat 1 ("Shareholder"), a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

    1.    To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2. To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS. In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3. To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4. To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

07/20/2007  14:56    5136518403            PNC: ADVI                              PAGE  08/09
07/20/2007  10:27    5136518403            PNC: ADVI
Jul. 20. 2007  12:27PM                                          No. 0410    P. 9

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

07/20/2007  14:56    5136518403                    PRU: ADV1                              PAGE  05/05
07/20/2007  18:27    5136518403                    PRU: ADV1
Jul. 20. 2007 12:27PM                                                No. 0410   P. 10

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does
so only at the request of the Participant and only as a nominal party for the true party in interest,
Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are
necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares,
and Cede & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By:

Name:
Title:

Peter J. Gleason, partner

cc: John Ahn, Riley Investment Management LLC

4

# <u>EXHIBIT F</u>

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 19, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention:  Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant PNC BANK, N.A. ("Participant"), that on the date hereof 168,000 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by PNC BANK N.A. Trustee U/A Dated 2/28/97 C Heekin Clat 2 ("Shareholder"), a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

    1.      To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

                SECTION 1.  NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2.   To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4.  VACANCIES IN THE BOARD OF DIRECTORS.  In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.   To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.   To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above.  This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals.  Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

2

07/20/2007  14:58     5136518483              PNC: ADVI                               PAGE  04/09
07/20/2007  10:27     5136518403              FNC. ADVI
Jul. 20. 2007  12:26PM                                              No. 0410    P.  5

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

07/20/2007  14:50    5136518403              PNC: ADVI                      PAGE  05/09
07/20/2007  10:27    5136518403              PNC. ADVI
  Jul. 20, 2007 12:26PM                                        No. 0410   P. 6

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By: _____
Name:
Title:

Peter J. Gleason, partner

cc:  John Ahn, Riley Investment Management LLC

4

# EXHIBIT G

07/26/2007   18:47          12126356560                              NO.514   0002

2007-Jul-26  04:20pm   From-BNY SUNGARD                 I 212 635 6960    T-235  P.001/004  F-666

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 26, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

This demand letter is deemed to replace in its entirety our demand letter sent on behalf of the Participant dated July 24, 2007. The letter dated July 24, is hereby revoked.

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of 166,818 shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc, (the "Company"). DTC is informed by its participant The Bank of New York ("Participant"), that on the date hereof 166,818.00 of such shares (the "Shares") credited to DTC 0901 account are beneficially owned by Lewcom LTD. L.P. ("Shareholder") a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

i.    To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized

07/26/2007    18:47                                                    NO.514    D003

2007-Jul-26  04:20pm   From-BNY SUNGARD                    1 212 635 6560        T-235  P.002/004  F-666

number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2.    To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

SECTION 4.  VACANCIES IN THE BOARD OF DIRECTORS.  In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.    To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.    To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above.  This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and

2

07/26/2007    18:47                                                          NO.514    0004
2007-Jul-26  04:20pm    From-BNY SUNGARD                    1 212 695 6560.        T-295  P.003/004  F-866

proposals. Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

07/26/2007    10:47                                                                NO.514   D005
2007-Jul-26  04:21pm    From-BNY SUNGARD                          1 212 935 6560    T-235  P.004/004  F-666

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does
so only at the request of the Participant and only as a nominal party for the true party in interest,
Shareholder, Cede & Co., has no interest in this matter other than to take those steps, which are
necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares,
and Cede & Co., assumes no further responsibility in this matter.

Sincerely,

Cede & Co.

By:

Name:

Title:

Peter J. Gleason, partner

cc:  John Ahn, Riley Investment Management LLC

4

# EXHIBIT H

Jul. 27.  2007  9:40AM

07/26/2007  12:5A FAX

2124288982 TO 915132412   No. 3685 P.2P.  5

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 26, 2007

VIA DHL, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Ridge Clearing and Outsourcing Solutions, Inc. ("Participant 158"), that on the date hereof 300,000 credited to Participant DTC account are beneficially owned by Jared Davis a customer of Participant.

At the request of Participant on behalf of Jared Davis, Cede & Co., as a holder of record of the Shares hereby request that you call a special meeting of the shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati Ohio time, on September 3, 2007 at Cincinnatian Hotel, 601 Vine Street, Cincinnati, OH 45202 for the following purposes and to conduct the following business:

    1.    1. To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting

power of a majority of the shares present and entitled to vote at the meeting.

2.  To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS. In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.  To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Thannon, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.  To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Jared Davis, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Cede & Co., at the request of the Participant on behalf of Jared Davis, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

2

Cede & Co., at the request of the Participant on behalf of Jared Davis, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Jared Davis, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Jared Davis, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

\*\*\*

3

JUL. 27. 2007 9:41AM29 FR ADP                2124288982 TO 9151324129No. 3085 P.47. 8
07/26/2007 12:58 FAX                         Ø009

While Code & Co., is furnishing this request as the shareholder of record of the Shares, it does so only at the request of the Participants and only as a nominal party for the true party in interest, Jared Davis. Code & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Jared Davis is not denied his rights as the beneficial owner of the Shares, and Code & Co., assumes no further responsibility in this matter. This letter shall supersede the Demand to Call a Special Meeting dated July 20, 2007 sent on behalf of the Participant for Jared Davis.

Sincerely,

Cede & Co

By: _____
Name:
Title:

**Peter J. Gleason, partner**

4

# EXHIBIT I



JUL. 27. 2007 X:59RMERB FR ADP                    2124288982 TO 9151324124NO. 3000P.07.  1
07/28/2007 12:56 FAX

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/n The Depository Trust Company
55 Water Street
New York, NY 10041

July 26, 2007

VIA DHL, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Ridge Clearing and Outsourcing Solutions, Inc. ("Participant 158"), that on the date hereof 108,986 credited to Participant DTC account are beneficially owned by Kevin H. McClorey a customer of Participant.

At the request of Participant on behalf of Kevin H. McClorey, Cede & Co., as a holder of record of the Shares hereby request that you call a special meeting of the shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati Ohio time, on September 3, 2007 at Cincinnatian Hotel, 601 Vine Street, Cincinnati, OH 45202 for the following purposes and to conduct the following business:

1.  1. To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become affective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2.    To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS.   In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting.  This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.    To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.    To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Kevin H. McClorey, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Cede & Co., at the request of the Participant on behalf of Kevin H. McClorey, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

2

Cede & Co., at the request of the Participant on behalf of Kevin H. McClorey, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Kevin H. McClorey, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Kevin H. McClorey, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

JUL. 27. 2007 9:40AM FR RDF
07/28/2007 13:58 FAX                    2124200382 TO 9191524124  NO. 3085 P.4

While Cede & Co., is furnishing this request as the shareholder of record of the Shares, it does so only at the request of the Participants and only as a nominal party for the true party in interest, Kevin H. McClorey. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Kevin H. McClorey is not denied his rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter. This letter shall supersede the Demand to Call a Special Meeting dated July 25, 2007 sent on behalf of the Participant for Kevin H. McClorey.

Sincerely,

Cede & Co

By: _____
Name:
Title:

**Peter J. Glennon, partner**

4

# EXHIBIT J

08/01/2007  14:05   201-333-4280       REORG                                    PAGE  02/05
FILE No.807 08/01 '07 12:52  ID:DTC REORG & PROXY       FAX:212 855 5181          PAGE  17  5

08/01/2007  09:48   201-333-4280           REORG                                 PAGE  03/07

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 31, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Pershing, LLC ("Participant"), that on the date hereof 3,744,582 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by various customers (see attached list) ("RIP"), a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.  To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1.  NUMBER OF DIRECTORS.  The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders.  Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease.  This provision may not be amended by the Board of Directors and

LOCATION:201 333 4280          RX TIME   08/01 '07 09:54

may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2. To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS. In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3. To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4. To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3 (i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Cede & Co., at the request of the Participant on behalf of Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

FILE No.807 08/01 '07 12:52  ID:DTC REORG & PROXY    FAX:212 855 5181    PAGE  3/ 5

08/01/2007  09:40    201-333-4280    REORG    PAGE  05/07

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

FILE No.807 08/01 '07 12:52  ID:DTC REORG & PROXY    FAX:212 855 5181    PAGE  4/ 5

08/01/2007  09:40    201-333-4280    REORG    PAGE 06/07

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

"This letter shall supersede the Demand to Call a Special Meeting dated July 19, 2007 sent on behalf of the Participant."

Sincerely,

Cede & Co.

By: _____
Name:
Title:

~~Peter J. Clanson, partner~~

cc: John Ahn, Riley Investment Management LLC

LOCATION:201 333 4280    RX TIME  08/01 '07 09:34

FILE No.807 08/01 '07 12:52  ID:DTC REORG. & PROXY    FAX:212 855 5181    PAGE  6/ 6

RX TIME    08/01 '07 09:34

LOCATION:801 333 4280

SBM Capital
Regent Communications -- RGCI

| Quantity | Name | Address |
|---|---|---|
| 704,284 | Sanders Opportunity Fund (Institutional) LP | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 247,739 | Sanders Opportunity Fund LP | 800 Travis Street, Suite 3100, Houston, TX 77002 |
| 212,450 | IRA FBO Don Sanders Pershing LLC As Custodian | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 205,000 | IRA FBO Katherine U Sanders Pershing LLC As Custodian | 4014 Inverness Drive, Houston, TX 77019 |
| 167,000 | James Investments Inc | 9265 North Scottsdale Road #125, Scottsdale, AZ 85250 |
| 110,000 | Bruce Slovin | 111 East 61st Street, New York, NY 10021 |
| 50,000 | Edward E Hall | 8052 Fisher Island Drive, Miami Beach, FL 33109 |
| 40,000 | Steve Scott | 1021 Main Street, Suite 1970, Houston, TX 77002 |
| 50,000 | Mardia Dillard | 5702 Champions Glen Drive, Houston, TX 77069 |
| 75,000 | John M O'Quinn | 3518 Travis Street, Suite 200, Houston, TX 77002 |
| 60,000 | James W. Christmas | 63 Fern Street, Floral Park, NY 11001 |
| 75,000 | Morton A. Cohn | 600 Bering Drive, Suite 210, Houston, TX 77057 |
| 60,000 | Joe M. Bailey | PO Box 488, Fulshear, TX 75494-0488 |
| 560,000 | Katherine U. Sanders | 4014 Inverness Drive, Houston, TX 77019 |
| 25,000 | Berd D. Sanders | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 10,000 | Christine M. Sanders | 1025 S Shepherd #401, Houston, TX 77019 |
| 30,500 | Charles Banfer & Becky Banfer TIC | 6808 Long Drive, Houston, TX 77087 |
| 63,000 | Abood Family Foundation | 6253 North Scottsdale Road #125, Scottsdale, AZ 85250 |
| 25,000 | Courtney Colin Hopson Separate Account | 600 Bering Drive, Suite 210, Houston, TX 77057 |
| 47,550 | Laura K. Sanders | 7795 E. Joshua Tree, Scottsdale, AZ 85250 |
| 30,000 | Tanya J Drury | 100 Timberloch, Houston, TX 77024 |
| 50,000 | J-Hil Partnership | 18 Augusta Pines Drive #210C, Spring, TX 77389 |
| 100,000 | Don A. Sanders Children's Trust DTD 2003 Don West TEE | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 167,393 | Sanders 1998 Children's Trust DTD 12-01-1997 Donald V West | 600 Travis Street, Suite 3100, Houston, TX 77002 |

3,744,882

# EXHIBIT K

## DEMAND TO CALL A SPECIAL MEETING

### Terry S. Jacobs

### 6561 Madeira Hills Drive

### Cincinnati, Ohio 45243

August 08, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

**Terry S. Jacobs** ("Stockholder") is a holder of record of 400,031 shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). An exhibit listing Stockholder's stock certificates and number of shares is attached.

As a holder of record, Stockholder hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.   To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2. To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS. In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3. To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4. To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

Stockholder further requests that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Stockholder demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

Stockholder reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Stockholder reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size

2

of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Stockholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

\*\*\*

Sincerely,

Terry S. Jacobs

By: _Terry S. Jacobs_

Attachment

3

## Regent Communications, Inc. (RGCI) Common Stock
### Owned by Terry S. Jacobs

| Certificate No. | Number of Shares |
|---|---|
| FTB 0815 | 37,909 |
| FTB 0466 | 300,000 |
| FTB 0799 | 1,988 |
| FTB 0797 | 20,000 |
| FTB 0761 | 4,450 |
| FTB 0398 | 654 |
| FTB 0597 | 10,144 |
| FTB 0496 | 24,855 |
| FTB 0949 | 31 |
| | 400,031 |

# EXHIBIT L

**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# SCHEDULE 13G
(Rule 13d−102)

**Information to be Included in Statements Filed Pursuant to Rule 13d−1(b), (c), and (d) and
Amendments Thereto Filed Pursuant to Rule 13d−2.**

**Under the Securities Exchange Act of 1934**

---

Regent Communications, Inc.

(Name of Issuer)

---

Common Stock

(Title of Class of Securities)

---

7582

December 29, 2006

(Date of Event which Requires Filing of this Statement)

---

Check the appropriate box to designate the rule pursuant to which this Schedule is filed:

☐ Rule 13d−1(b)

☒ Rule 13d−1(c)

☐ Rule 13d−1(d)

The information required in the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act
of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act.

Page 1 of 5 Pages

CUSIP No. 758865109

| 1 | NAME OF REPORTING PERSON<br>SS. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON<br><br>**DON A. SANDERS** |
|---|---|
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(a) ☐<br>(b) ☒ |
| 3 | SEC USE ONLY |
| 4 | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>**TEXAS** |

| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 5 | SOLE VOTING POWER<br><br>**1,255,479** |
|---|---|---|
| | 6 | SHARED VOTING POWER |
| | 7 | SOLE DISPOSITIVE POWER<br><br>**1,255,479** |
| | 8 | SHARED DISPOSITIVE POWER<br><br>**1,589,700** |

| 9 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>**2,844,179** |
|---|---|
| 10 | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (9) EXCLUDES CERTAIN SHARES ☐ |
| 11 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (9)<br><br>**6.9%** |
| 12 | TYPE OF REPORTING PERSON<br><br>**IN** |

CUSIP No. 758865109

| Item 1 | (a) | Name of Issuer: |
| | | Regent Communications, Inc. |
| | (b) | Address of Issuer's Principal Executive Offices: |
| | | 100 East RiverCenter Blvd., Suite. 900, Covington, Kentucky 41011 |
| Item 2 | (a) | Name of Persons Filing: |
| | | Don A. Sanders |
| | (b) | Address of Principal Business Office of, if None, Residence: |
| | | 600 Travis, Suite 3100, Houston, Texas 77002 |
| | (c) | Citizenship or Place of Organization: |
| | | |
| | (d) | Title of Class Securities: |
| | | Common Stock |
| | (e) | CUSIP Number: |
| | | 758865109 |
| Item 3 | | If this Statement is Filed Pursuant to Rules 13d−1(b) or 13d−2(b) or (c), check whether the Person Filing is a: |
| | (a) | ☐ Broker or dealer registered under Section 15 of the Exchange Act; |
| | (b) | ☐ Bank as defined in Section 3(a)(6) of the Exchange Act; |
| | (c) | ☐ Insurance company as defined in Section 3(a)(19) of the Exchange Act; |
| | (d) | ☐ Investment company registered under Section 8 of the Investment Company Act; |
| | (e) | ☐ An investment adviser in accordance with Rule 13d−1(b)(1)(ii)(E); |
| | (f) | ☐ An employee benefit plan or endowment fund in accordance with Rule 13d−1(b)(1)(ii)(F); |
| | (g) | ☐ A parent holding company or control person in accordance with Rule 13d−1(b)(1)(ii)(G); |
| | (h) | ☐ A savings associations as defined in Section 3(b) of the Federal Deposit Insurance Act; |
| | (i) | ☐ A church plan that is excluded from the definition of an investment company under Section 3(c)(14) of the Investment Company Act of 1940; |
| | (j) | ☐ Group, in accordance with Rule 13d−1(b)(1) (ii)(J). |

CUSIP No. 758865109                                                                          Page 4 of 5 Pages

Item 4    Ownership

    (a)  Amount beneficially owned:

        2,844,179

    (b)  Percentage of class:

        6.9%

    (c)  Number of shares as to which such person has:

        (1)  Sole power to vote or to direct the vote:

            1,255,479[1]

        (2)  Shared power to vote or to direct the vote:

            0

        (3)  Sole power to dispose or to direct the disposition of:

            1,255,479[1]

        (4)  Shared power to dispose or to direct the disposition of:

            1,589,700[2]

[1]  Includes 794,284 shares owned by Sanders Opportunity Fund (Institutional), L.P., a Delaware limited partnership, and 247,739 shares owned by Sanders Opportunity Fund, L.P., a Delaware limited partnership (collectively, the "SOF Funds"). The general partner of the SOF Funds is SOF Management, LLC, a Delaware limited liability company. Mr. Sanders is a manager of SOF Management, LLC and the chief investment officer for the SOF Funds.

[2]  Includes 1,589,709 shares held in client brokerage accounts over which Mr. Sanders has shared dispositive power. Mr. Sanders disclaims beneficial ownership of all shares held in client brokerage accounts over which he has shared dispositive power.

Item 5    Ownership of Five Percent or Less of a Class:

    Not Applicable.

Item 6    Ownership of More than Five Percent on Behalf of Another Person:

    Not Applicable.

Item 7    Identification and Classification of Subsidiaries which Acquired the Security Being Reported on by the Parent Holding Company:

    Not Applicable.

Item 8    Identification and Classification of Members of the Group:

    Not Applicable

Item 9    Notice of Dissolution of Group:

    Not Applicable.

Item 10   Certification:

    By signing below, I certify that, to the best of my knowledge and belief, the securities referred to above were not acquired and are not held for the purpose of or with the effect of changing or influencing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction having that purpose or effect.

CUSIP No. 758865109                                                                 Page 5 of 5 Pages

SIGNATURES

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete, and correct.

Date: August 22, 2007                          Don A. Sanders
                                               Don A. Sanders

# EXHIBIT M

**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

# SCHEDULE 13D
(Rule 13d–101)

**Information to be Included in Statements Filed Pursuant to Rule 13d–1(a) and
Amendments Thereto Filed Pursuant to Rule 13d–2(a)**

Under the Securities Exchange Act of 1934

# REGENT COMMUNICATIONS, INC.
(Name of Issuer)

**Common Stock**
(Title of Class of Securities)

**758865109**
(CUSIP Number)

**John T. Unger
Senior Vice President and General Counsel
SMH Capital Inc.
600 Travis, Suite 3100
Houston, Texas 77002
713–993–4645**
(Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)

**July 31, 2007**
(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition which is the subject of this Schedule 13D, and is filing this schedule because of Rule 13d–1(b)(3) or (4), check the following box ☒.

Note: Schedules filed in paper form shall include a signed original and five copies of the schedule, including all exhibits. See Rule 13d–7(b) for other parties to whom copies are to be sent.

\*   The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

CUSIP NO. 758865109

| 1 | NAMES OF REPORTING PERSONS/ I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY) Don A. Sanders |
|---|---|
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP (See Instructions) (a) ☐ (b) ☒ |
| 3 | SEC USE ONLY |
| 4 | SOURCE OF FUNDS (See Instructions) PF |
| 5 | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) or 2(E) ☐ |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION USA |

| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | SOLE VOTING POWER 1,255,479 (See Item 5) |
|---|---|---|
| | 8 | SHARED VOTING POWER 0 |
| | 9 | SOLE DISPOSITIVE POWER 1,255,479 (See Item 5) |
| | 10 | SHARED DISPOSITIVE POWER 1,416,000 (See Item 5) |

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON 2,671,479 (See Item 5) |
|---|---|
| 12 | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES (See Instructions) ☐ |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11) 6.9% (See Item 5) |
| 14 | TYPE OF REPORTING PERSON (See Instructions) IN |

CUSIP NO. 758865109

Item 1.        Security and Issuer.

This statement relates to the common stock, no par value (the "Shares"), of Regent Communications, Inc., a Delaware corporation (the "Issuer"). The principal executive office of the issuer of such securities is located at 100 East RiverCenter Blvd., Suite 900, Covington, Kentucky 41011

Item 2.        Identity and Background.

This statement is being filed on behalf of: Don A. Sanders

Mr. Sanders is Vice Chairman and a director of Sanders Morris Harris Group Inc., a Texas corporation ("SMHG"), and Chairman of the Executive Committee and a director of SMH Capital Inc., a Texas corporation ("SMH Capital"), registered broker dealer and investment adviser, and wholly–owned subsidiary of SMHG. Mr. Sanders is also a manager of SOF Management, LLC, a Delaware corporation and the general partner of Sanders Opportunity Fund, L.P. and Sanders Opportunity Fund (Institutional), L.P. (the "SOF Funds") and chief investment officer of the SOF Funds. The address of his principal office is 600 Travis, Suite 3100, Houston, Texas 77002. Mr. Sanders is a citizen of the United States.

During the past five years, Mr. Sanders has not been convicted in a criminal proceeding (excluding traffic violations and similar misdemeanors).

During the past five years, Mr. Sanders was not or is not subject to a judgment, decree, or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws as a party to a civil proceeding of a judicial or administrative body of competent jurisdiction.

Item 3.        Source and Amount of Funds or Other Consideration.

Mr. Sanders has invested an aggregate of $1,064,491 (exclusive of brokerage commissions) in 212,456 Shares of the Issuer and the SOF Funds have invested an aggregate amount of $4,774,394 (exclusive of brokerage commissions) in 1,043,023 Shares of the Issuer reported hereunder. The source of the funds used to purchase the Shares of the Issuer held by Mr. Sanders was personal funds and the SOF Funds was the working capital of the SOF Funds. This Schedule 13D also includes 1,416,000 Shares of the Issuer with a cost basis of approximately $5,385,093 held in client brokerage accounts over which Mr. Sanders has shared dispositive power. The sources of funds used to purchase these Shares of the Issuer were personal funds of the respective clients.

Item 4.        Purpose of Transaction.

Mr. Sanders is filing this Schedule 13D because, as a result of certain matters reported under Item 6 below, he is no longer eligible to report his beneficial ownership of Shares of the Issuer on Schedule 13G as he may be deemed to hold Shares of the Issuer for the purpose of or with the effect of changing or influencing the control of the Issuer.

Mr. Sanders, the SOF Funds, and the clients of SMH Capital acquired and continue to hold the Shares of the Issuer as a long–term investment. Mr. Sanders intends to review continuously his investment in the Issuer and may or may not seek involvement in the Issuer's affairs. Mr. Sanders reserves the right to discuss various views and opinions with respect to the Issuer and its business plans with the Issuer or the members of its senior management. The discussion of such views and opinions may extend from ordinary day–to–day operations to matters such as nominees for representation on the Issuer's board of directors, senior management decisions, and extraordinary business transactions.

CUSIP 758865109

Depending on his evaluation of the Issuer's business and prospects and future developments, Mr. Sanders, the SOF Funds, or clients for which Mr. Sanders exercises investment discretion of the Funds, may from time to time purchase additional securities of the Issuer, dispose of all or a portion of the securities held by such person, or cease buying or selling shares. Any additional purchases of securities may be in open market or privately negotiated transactions or otherwise.

Except as described in this Item 4 and Item 6, neither Mr. Sanders nor the SOF Funds have any present plans or proposals which relate or would result in: (a) the acquisition by any person of additional securities of the Issuer, or the disposition of securities of the Issuer, (b) an extraordinary corporate transaction such as a merger, reorganization or liquidation, involving the Issuer or any of its subsidiaries, (c) a sale or transfer of a material amount of assets of the Issuer or any of its subsidiaries, (d) any change in the present board of directors or management of the Issuer, (e) any material change to the present capitalization or dividend policy of the Issuer, (f) any other material change in the Issuer's business or corporate structure, (g) changes in the Issuer's charter, bylaws or instruments corresponding thereto or other actions which may impede the acquisition of control of the Issuer by any person, (h) causing a class of securities of the Issuer to be delisted from a national securities exchange or to cease to be authorized to be quoted on an inter-dealer quotation system of a registered national securities association, (i) a class of equity securities of the Issuer becoming eligible for termination of registration pursuant to Section 12(g)(4) of the Securities Exchange Act of 1934, as amended, or (j) any actions similar to any of those enumerated above.

Item 5.     Interest in Securities of the Issuer.

(a) There were 38,700,561 shares of common stock of the Issuer outstanding as of May 4, 2007, as reported by the Issuer in its quarterly report on Form 10-Q for the quarter ended March 31, 2007. Mr. Sanders may be deemed to beneficially own a total of 2,671,479 Shares of the Issuer, which represents 6.9% of the Shares of the Issuer.

Neither the filing of this Schedule 13D nor any of its contents shall be deemed to constitute an admission by Mr. Sanders that he is the beneficial owner of any of the Shares referred to herein other than Shares with respect to which he possesses both voting and dispositive power for purpose of Section 13(d) of the Securities Exchange Act of 1934, as amended, or for any other purpose, and such beneficial ownership is expressly disclaimed.

(b) The number of shares of common stock as to which there is sole power to direct the vote, shared power to vote or to direct the vote, sole power to dispose or direct the disposition, or shared power to dispose or direct the disposition for Mr. Sanders is as follows:

| (1) | Sole power to vote or to direct the vote: | 1,255,479[1] |
| (2) | Shared power to vote or to direct the vote: | 0 |
| (3) | Sole power to dispose or to direct the disposition of: | 1,255,479[1] |
| (4) | Shared power to dispose or to direct the disposition of: | 1,416,000[2] |

---

[1]   Includes 794,284 shares owned by Sanders Opportunity Fund (Institutional), L.P., a Delaware limited partnership, and 247,739 shares owned by Sanders Opportunity Fund, L.P., a Delaware limited partnership (collectively, the "SOF Funds"). The general partner of the SOF Funds is SOF Management, LLC, a Delaware limited liability company. Mr. Sanders is a manager of SOF Management, LLC and the chief investment officer for the SOF Funds.

[2]   Includes 1,416,000 shares held in client brokerage accounts over which Mr. Sanders has shared dispositive power. Mr. Sanders disclaims beneficial ownership of all shares held in client brokerage accounts over which he has shared dispositive power.

CUSIP 758865109

(c) The following transactions in the common stock of the Issuer were effected within the last 60 days by the following named Reporting Persons:

|  | Trade Date | Trans Code | Quantity | Price |
|---|---|---|---|---|
| Discretionary account | 08/09/2007 | SELL | 540,000 | 3.1000 |
| Discretionary account | 08/02/2007 | BUY | 5,000 | 3.3402 |
| Discretionary account | 06/27/2007 | SELL | 15,000 | 3.3000 |
| Discretionary account | 06/27/2007 | SELL | 3,000 | 3.3000 |
| Discretionary account | 06/27/2007 | SELL | 3,000 | 3.3000 |

(d) Mr. Sanders, the SOF Funds, and the individual clients with respect to which Mr. Sanders exercises shared dispositive power have the right to receive all dividends on the Common Stock.

(e) Not Applicable.

Item 6.        Contracts, Arrangements, Understandings, or Relationships With Respect to Securities of the Issuer.

On July 31, 2007, Cede & Co., on behalf of Mr. Sanders, the SOF Funds, and certain other clients of SMH Capital, sent a letter to the Issuer requesting a special meeting of the Issuer's stockholders to: (1) to amend the Issuer's bylaws to fix the number of directors at nine, (2) to amend the Issuer's bylaws to allow stockholders to fill vacancies on the board created by increasing the size of the board or the removal of a director by the stockholders, (3) to elect John Ahn, Bob D'Agostino, Jared Davis, and Joseph Patrick Hannan as directors of the Issuer to fill the vacancies on the board; and (4) to repeal any provisions or amendments to the Issuer's bylaws adopted after the last version filed with Securities and Exchange Commission. The foregoing description of the letter is qualified in its entirety by reference to the letter attached as Exhibit 1. Certain other shareholders of the Issuer sent, or directed Cede & Co. to send, the same form of letter calling for a special meeting. Such other shareholders (based on information they provided), Mr. Sanders, the SOF Funds, the other clients of SMH Capital, hold, in the aggregate, at least 20% of the outstanding Shares of the Issuer. Mr. Sanders expressly disclaims beneficial ownership of Shares of the Issuer held by these other shareholders and disclaims the formation of a group with these other shareholders. The other shareholders have not committed to, and were not asked, to vote at the special meeting. Mr. Sanders did not solicit, and did not obtain, proxies with respect to the shares held by such other shareholders.

Except as stated herein, Mr. Sanders is not a party to any contract, arrangement, understanding, or relationship (legal or otherwise) with any person with respect to any securities of the Issuer, including but not limited to, any transfer or voting of any such securities, finder's fees, joint ventures, loans or option arrangements, puts or calls, guarantees or profits, divisions of profit or loss, or the giving or withholding of proxies.

Item 7.        Material to be Filed as Exhibits.

| Exhibit | Title |
|---|---|
| 1. | Letter dated July 31, 2007, sent by Cede & Co. on behalf of Pershing LLC. |

CUSIP 758865109

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete, and correct.

Date: August 22, 2007

Don A. Sanders
Don A. Sanders

ATTENTION: INTENTIONAL MISSTATEMENTS OR OMISSIONS OF FACT CONSTITUTE FEDERAL CRIMINAL VIOLATIONS (see 18 U.S.C. 1001).

Exhibit 1

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
c/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 31, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Pershing, LLC ("Participant"), that on the date hereof 3,744,882 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by various customers (see attached list) of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.    To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

2.    To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

SECTION 4. VACANCIES IN THE BOARD OF DIRECTORS. In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3.    To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.    To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005.

At the request of the Participant on behalf of Shareholder, the undersigned requests that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above. This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals. Cede & Co., at the request of the Participant on behalf of the Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws.

2

Cede & Co., at the request of the Participant on behalf of the Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By–laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3

While Cede & Co. is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co. has no interest in this matter other than to take those steps, which are necessary to ensure the Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co. assumes no further responsibility in this matter.

"This letter shall supersede the Demand to Call a Special Meeting dated July 19, 2007 sent on behalf of the Participant."

Sincerely,

Cede & Co.

By:    Peter J. Glessen, partner
Name:
Title:

cc: John Ahn, Riley Investment Management LLC

4

SMH Capital
Regent Communications—RGCI

| Quantity | Name | Address |
|---|---|---|
| 794,284 | Sanders Opportunity Fund (Institutional), L.P. | 600 Travis, Suite 3100, Houston, TX 77002 |
| 247,739 | Sanders Opportunity Fund, L.P. | 600 Travis, Suite 3100, Houston, TX 77002 |
| 212,456 | IRA FBO Don Sanders Pershing LLC As Custodian | 600 Travis, Suite 3100, Houston, TX 77002 |
| 205,000 | IRA FBO Katherine U. Sanders Pershing LLC As Custodian | Withheld |
| 187,000 | James Investments Inc. | Withheld |
| 110,000 | Bruce Slovin | Withheld |
| 500,000 | Edward F. Heil | Withheld |
| 40,000 | Steve Scott | Withheld |
| 50,000 | Max Dillard | Withheld |
| 75,000 | John M. O'Quinn | Withheld |
| 60,000 | James W. Christmas | Withheld |
| 75,000 | Morton A. Cohn | Withheld |
| 60,000 | Joe M. Bailey | Withheld |
| 560,000 | Katherine U. Sanders | Withheld |
| 25,000 | Brad D. Sanders | Withheld |
| 30,000 | Christine M. Sanders | Withheld |
| 30,500 | Charles Barrior & Becky Barrior TIC | Withheld |
| 63,000 | Alpert Family Foundation | Withheld |
| 25,000 | Courtney Cohn Hopson Separate Account | Withheld |
| 47,500 | Laura K. Sanders | Withheld |
| 30,000 | Tanya J. Drury | Withheld |
| 50,000 | J–All Partnership | Withheld |
| 100,000 | Don A. Sanders Children's Trust DTD 2003 Don Weir Trustee | 600 Travis, Suite 3100, Houston, TX 77002 |
| 107,353 | Sanders 1998 Children's Trust DTD 12–01–1997 Donald V Weir, Trustee | 600 Travis, Suite 3100, Houston, TX 77002 |

3,744,882

# EXHIBIT N

Management Organizational Chart



11

◈ Selected Ownership

Certain shareholders have currently expressed interest in selling their shares if the appropriate opportunity was presented.

*(in thousands)*

| Selected Shareholders | Shares | % | Market Value (1) |
|---|---|---|---|
| Selected Clients of Don Sanders | 6,000 | 15.5% | $20,220 |
| T. Rowe Price Associates, Inc. | 3,587 | 9.3% | 12,088 |
| Wyatt, John H. (Director) | 3,246 | 8.4% | 10,940 |
| Lewis, Andrew L. (Director) | 2,863 | 7.4% | 9,648 |
| Riley Investment Management | 2,706 | 7.0% | 9,120 |
| Group of Cincinnati Investors | 1,000 | 2.6% | 3,370 |
| Jacobs, Terry S. (Former CEO) | 400 | 1.0% | 1,348 |
| **Total Selected Ownership** | **19,803** | **51.2%** | **$66,735** |
| | | | |
| **TOTAL OWNERSHIP (as of 3/31/07)** | **38,701** | **100.0%** | **$130,421** |

(1) $3.37 stock price as of 6/12/07

22