IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REGENT COMMUNICATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-499-JJF |
| | ) | |
| RILEY INVESTMENT PARTNERS | ) | |
| MASTER FUND, L.P. et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff Regent Communications, Inc. ("Regent" or the "Company"), hereby submits a supplemental memorandum in further support of its motion for a temporary restraining order, filed August 17, 2007, seeking to enjoin the call of a special meeting of Regent stockholders and/or the continuing solicitation or voting of any proxies in support of the proposals sought to be acted upon at that meeting since such solicitations are in violation of the federal securities laws. This memorandum is in addition to and does not supersede Regent's prior memorandum except to the extent that certain events have occurred since that motion was filed, as detailed herein.

In response to Regent's allegations that Defendant SMH Capital, Inc. ("SMH Capital"), was in violation of the federal securities laws for failing to file any stock ownership disclosure forms – either a Schedule 13G or 13D – with the SEC, Defendant Don Sanders,[1] a principal in SMH Capital filed a Schedule 13G *and* a Schedule 13D on August 23, 2007. As shown further below (and in Regent's First Amended Complaint), these filings do not "cure" Defendants' ongoing violations of

---

[1] Mr. Sanders, the Sanders Opportunity Fund, L.P., the Sanders Opportunity Fund (Institutional), L.P., and the SOF Management, LLC are referred to collectively as "Sanders."

the securities laws for, among other reasons:

- By Mr. Sanders's own admissions, the obligation of Sanders and SMH Capital to make a Schedule 13G filing began no later than January 8, 2007, but in fact it arose much earlier when Sanders and affiliates acquired more than 5% of Regent stock;

- By Mr. Sanders's own admission, Sanders and SMH Capital lost the eligibility to file a Schedule 13G no later than July 31, 2007, when they acted in concert with other stockholders and demanded a special meeting to amend Regent's bylaws and elect directors and acknowledged that this was an effort "for the purpose or with the effect of changing or influencing control of the issuer." This event, which by Mr. Sanders's own admission, rendered him and his affiliates ineligible to file the short-form Schedule 13G for passive investors, occurred almost a month *before* he filed his Schedule 13G or 13D;

- Per SEC Rule 13d-1(e)(2)(i), a party which files a Schedule 13G when in fact it is required to file a Schedule 13D is ineligible to vote its shares (or act with respect to anyone else's shares) until 10 days after it files a true and accurate Schedule 13D (which has not yet been done);

- Consequently, no later than July 31, 2007 pursuant to SEC Rule 13d-1(e)(2)(i), Sanders and SMH Capital became ineligible to vote their Regent shares;

- Further, Sanders's Schedule 13D is not only delinquent, it contains material misrepresentations and omissions including but not limited to attaching false exhibits and failing to disclose and instead denying that Sanders and SMH Capital are acting together with other shareholders as a "group" acting "for the purpose or with the effect of changing or influencing control of the issuer." As of August 23, 2007, Mr. Sanders disclosed he and/or SMH Capital hold sole voting power and sole dispositive and voting

2

power with respect to 1,255,479 shares of Regent stock and shared dispositive power but not voting power with respect to an additional 1,416,000 shares, presumably the same shares held among the 22 SMH Capital clients listed on the SMH Form Demand Letter (defined below);

- If Sanders and/or SMH Capital actually obtained authority from the shareholders holding the 1,416,000 shares as to which Sanders and SMH Capital had no voting power, Sanders and/or SMH Capital necessarily must have solicited and obtained consents from these brokerage clients to send the SMH Form Demand Letter on their behalf or, if they failed to do so, violated various rules including but not limited to SEC Rule 14b-2. Moreover, the SMH Capital shareholders whose consents were required to be solicited together with the other shareholders who were solicited and submitted or declined to submit Form Demand Letters, exceed the "less than 10 person exemption" from the federal proxy rules behind which Defendants and their group have attempted to hide. As shown in the Complaint, Sanders, SMH Capital and the other Defendants have either directly solicited or participated in the solicitation of more than 10 Regent shareholders in violation of the proxy rules. Am. Compl. at ¶¶ 21-40; SEC Rule 14a-1.

- Defendants' effort to invoke the "less than ten" exemption is further undermined by the fact that each has filed a Schedule 13D indicating that it is acting "for the purpose or with the effect of changing or influencing control of the issuer." In such circumstances, the SEC has suggested that a Schedule 13D may itself constitute a general solicitation precluding reliance on the "less than ten" exemption. SEC Division of Corporation Finance, MANUAL OF PUBLICLY AVAILABLE TELEPHONE INTERPRETATIONS, § N, ¶ 4.2 (available at http://www.sec.gov/interps/telephone/

cftelinterps_proxyrules-sch14a.pdf).[2]

- Defendants have failed to comply with the proxy rules because under Section 14 of the Securities and Exchange Act of 1934 ("Exchange Act") and the SEC's interpretation thereof, Defendants were obligated to file proxy materials in connection with that solicitation but failed to do so. TRO Mot. at 13-14; *see also* SEC Division of Corporation Finance, MANUAL OF PUBLICLY AVAILABLE TELEPHONE INTERPRETATIONS, § N, ¶ 4.2.

Under these circumstances, a temporary restraining order should issue (i) preventing the special meeting for which Defendants unlawfully solicited consents without providing the information required by the federal securities laws and (ii) preventing any voting of shares by Defendants or those whose proxies they solicit in support of the proposals Defendants seek to submit at that meeting. *Champion Parts Rebuilders, Inc. v. Cormier Corp.*, 661 F. Supp. 825, 849-50 (N. D. Ill. 1987) (preliminary injunction issued for defendants' (1) failure to file a joint Schedule 13D when required and for (2) omitting highly material facts once any Schedule was filed).[3]

## I.    RELEVANT FACTUAL HISTORY

Defendants (including SMH Capital and Sanders) caused letters to be sent in July 2007 and early August 2007, purportedly on behalf of Defendants Riley Investment Management LLC ("RIM") and Riley Investment Partners Master Fund, L.P. ("RIP") (collectively "Riley") and

---

[2] This SEC interpretation states: "An insurgent intending to engage or engaging in a solicitation of no more than 10 persons under Rule 14a-2(b)(2) should remain mindful that its filing and dissemination of a Schedule 13D – depending on the content of this document and other relevant facts and circumstances – may be deemed to constitute a more widespread 'general' solicitation that may preclude reliance upon Rule 14a-2(b)(2)."

[3] In this Circuit, "courts apply the standards for granting a preliminary injunction in determining the propriety of issuing a temporary restraining order." *Tootsie Roll Indus., Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987); TRO Mot. at 6.

4

unnamed investment advisory clients of Riley and other Regent stockholders (the "Form Demand Letters") calling for a special meeting of the Company's stockholders.[4]  *See, e g ,* Am. Compl. Exs. A-K.  Authorizations to send these letters were solicited by the Riley Defendants with the assistance of the other Defendants, including SMH Capital and Sanders, and constituted proxy solicitations within the meaning of Section 14(a) of the Exchange Act and Rule 14a-1 promulgated thereunder.  TRO Mot. at 8; Am. Compl. at ¶¶ 21-40.

### A.    SMH CAPITAL SENDS A FORM DEMAND LETTER TO REGENT ON OR AROUND AUGUST 8, 2007

SMH Capital and Sanders, working in concert with Riley and other related entities, sent their own version of the Form Demand Letter to Regent on or around August 8, 2007 ("SMH Form Demand Letter," Ex. A hereto).  The SMH Form Demand Letter was virtually identical to that sent by Riley and even listed "RIP" (*i e ,* Riley Investment Partners) as the short form definition for the shareholders on whose behalf demand was made.  *Compare* Am. Compl. Ex. A *with* SMH Form Demand Letter.  At that juncture, SMH Capital had been a shareholder holding more than 5% of the Company's outstanding stock for months if not years, having begun to acquire large amounts of shares of stock in a secondary offering in 2002, apparently acquiring additional stock and, by its own admission, having held 5% at least seven months ago and, thus, required to file a Schedule 13G in early January.  Schedule 13G of Don Sanders and SMH Capital ("Sanders Schedule 13G"), Ex. B hereto. Moreover, SMH Capital has also now admitted that at the time that it sent the SMH Form Demand Letter, which it claims was on July 31, 2007,

---

[4] The letters indicate that the purpose of the meeting is to:  (1) amend the Company's bylaws to fix the number of directors at nine; (2) amend the Company's bylaws to allow stockholders to fill vacancies on the board created by increasing the size of the board or by the removal of a director by the stockholders; (3) elect John Ahn, Bob D'Agostino, Jared David and Joseph Patrick Hannan as directors of the Company to fill the vacancies on the board; and (4) repeal any provisions or amendments to the Company's bylaws after the last version filed with the SEC. Am. Compl. Exs. A-K.

it was acting with other shareholders "for the purpose or with the effect of changing or influencing control of the issuer." While SMH Capital and Sanders deny it, they and the other shareholders who submitted demand letters – as well as others working with them – were thus all members of a group holding well in excess of the 5% required by the securities laws to file a joint Schedule 13D revealing their concerted activities as well as their arrangements, understandings and agreements. Nevertheless, at no time did SMH Capital or Sanders file any of the necessary disclosures with the SEC.

### B. SANDERS SIMULTANEOUSLY FILES A SCHEDULE 13G AND A SCHEDULE 13D ON AUGUST 23, 2007

After this lawsuit was filed, Mr. Sanders attempted to "cure" the disclosure failures of Sanders and SMH Capital by making two filings on August 23, 2007. Mr. Sanders first filed a Schedule 13G, which only passive institutional investors are entitled to file. Mr. Sanders admits that the event triggering Sanders' and SMH Capital's obligation to file a Schedule 13G actually occurred in December 2006, thus making them obligated to file a Schedule 13G in January 2007, and, yet, they failed to file until August 23, 2007. Sanders Schedule 13G at 1. By that date, however, Sanders and SMH Capital, by their own admission, had lost the eligibility to file a Schedule 13G.

Indeed, no later than July 31, 2007 – as Mr. Sanders himself admits in the second August 23 filing of Sanders and SMH Capital – Sanders and SMH Capital were actually obligated to file a Schedule 13D. Schedule 13D of Don Sanders and SMH Capital ("Sanders Schedule 13D," Ex. C hereto), Item 4. Mr. Sanders admits in the Sanders Schedule 13D that, by no later than July 31, 2007, Sanders and SMH Capital were seeking, with the other shareholders who demanded a special meeting, to influence the management and control of Regent. *Id.* In a schizophrenic denial in that very same Schedule 13D, Mr. Sanders expressly disavows Sanders's or SMH

6

Capital's participation in a shareholder group (Sanders Schedule 13D, Item 6), notwithstanding the fact that the Form Demand Letters – including the letter sent by SMH Capital – are practically identical. *Compare* Am. Compl. Exs. A-I, K *with* SMH Form Demand Letter. What the Sanders Schedule 13D filing *does* admit, however, is that because the SMH Form Demand Letter, together with those submitted with other shareholders' including the other Defendants and members of their group, constituted efforts "for the purpose or with the effect of changing or influencing control of the issuer," SMH Capital and Mr. Sanders lost their ability to file a Schedule 13G as of the date the SMH Form Demand Letter was sent, *i.e.*, on July 31, 2007. Although this required a prompt filing, at least within 10 days, Mr. Sanders made no filings whatsoever until this lawsuit was commenced.

Moreover, the belated Sanders Schedule 13D is false and misleading, because it fails to disclose and falsely disclaims the existence of a group and the arrangements, understandings and agreements with the other Defendants and the others with whom they are acting in concert. It is also false and misleading because the SMH Form Demand Letter attached to the Sanders Schedule 13D as Exhibit 1 is a "doctored" version of the letter that SMH Capital actually sent to Regent. *Compare* Sanders Schedule 13D Ex. 1 *with* SMH Form Demand Letter. The Sanders Schedule 13D version removes the telltale parenthetical "(RIP)" from the first paragraph. *Id.* "RIP" is Riley Investment Partners, and the parenthetical is a very strong indication that SMH Capital is acting in concert with the Riley group. *Id.* This "RIP" reference was highlighted in Regent's original complaint. That Mr. Sanders deleted the reference and tried to pass off the different version as the original in a filing with the SEC creates a powerful inference that Sanders and SMH Capital wanted to conceal from other Regent shareholders their association with the other Defendants in the public filing, to the extent of making false filings with the SEC.

C.    **UNDER APPLICABLE LAW, SMH CAPITAL AND SANDERS ARE INELIGIBLE TO VOTE THEIR REGENT SHARES AND WILL REMAIN SO UNTIL TEN DAYS AFTER THEY FILE A TRUE AND ACCURATE SCHEDULE 13D**

Because Defendants have, in fact, formed a secret "group" with respect to the Company, the Sanders Schedule 13D does not and cannot satisfy the disclosure obligations of SMH Capital and Sanders under applicable rules. SEC Rule 13d-1(e)(2)(i); *see also*, *e.g.*, Am. Compl. at ¶¶ 48-49. Indeed, the only thing the Sanders Schedule 13D does make clear is that Sanders and SMH Capital are ineligible to vote their Regent shares, and have been since at least July 31, 2007. Mr. Sanders has disclosed he and/or SMH Capital hold sole voting power and sole dispositive power with respect to 1,255,479 shares of Regent stock and shared dispositive power with respect to an additional 1,416,000 shares held among the 22 SMH Capital clients listed on the SMH Form Demand Letter. Sanders Schedule 13D, Item 5(b). As Exhibit 1 to the Sanders Schedule 13D indicates, however, by no later than July 31, 2007, Mr. Sanders and SMH Capital became ineligible to vote their Regent shares because on or before that date Sanders and SMH Capital were seeking to influence the management and control of Regent – but they failed (and continue to fail) to file a true and correct Schedule 13D. SEC Rule 13d-1(e)(2)(i); Sanders Schedule 13D, Item 4 & Ex. 1. Accordingly, even if Mr. Sanders and/or SMH Capital actually sought and obtained authorization from the shareholders holding the 1,416,000 shares prior to sending the SMH Form Demand Letter (which, as noted, would constitute an unlawful solicitation of proxies in violation of Section 14 of the Exchange Act) they could not have voted (and still cannot vote) those shares – or any other shares in the SMH Form Demand letter. Accordingly, they cannot have provided the consents or authorization in favor of the demand for a special meeting asserted therein. SMH Form Demand Letter. Shares beneficially owned by Sanders and SMH Capital are and will remain disenfranchised until ten days after they file a true and correct Schedule 13D. SEC Rule 13d-1(e)(2)(i).

## II.    ARGUMENT

### A.    THE SANDERS SCHEDULE 13G FILING WAS FALSE WHEN MADE

Rule 13d-1(c) provides that a person otherwise required to file a Schedule 13D may make a short-form filing on Schedule 13G provided it: "(1) [h]as not acquired the securities with any purpose, or with the effect of, changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having that purpose or effect . . . ." SEC Rule 13d-1(c).  Having begun to acquire Regent stock in a secondary offering beginning in 2002, Mr. Sanders acquired 2 million shares of Regent stock on his own behalf and on behalf of his affiliates. Am. Compl. at ¶ 41.  Additional shares were later purchased. *Id.*  The exact details of these purchases and sales are unknown because, in violation of the federal securities laws, Mr. Sanders and his affiliates never made the required filings under Section 13.  In the Schedule 13G filing made on August 23, Mr. Sanders claims that the date of the event which obligated Sanders and SMH Capital to file the Schedule 13G (*i.e.*, acquisition of 5% or more of Regent stock) was *December 29, 2006*.  Sanders Schedule 13G at 1.  Even if this date, and not the years earlier date when Mr. Sanders and his affiliates obtained a more than 5% stake were correct, Mr. Sanders was required to file a Schedule 13G within 10 days after acquiring his stake, or by no later than January 8, 2007.[5]  SEC Rule 13d-1(e).

However, Mr. Sanders failed to do so, waiting until *August 23, 2007* – more than six months after even by his own admission the filing was due – to file a Schedule 13G.  This is significant because in the intervening months SMH Capital was not at all a mere "passive investor."  In fact, in SMH Capital's contemporaneous Schedule 13D filing, Mr. Sanders admits that he and SMH Capital became ineligible to file a Schedule 13G before it was filed.  The July

---

[5] As is clear from the Sanders Schedule 13G, Mr. Sanders filed under 13d-1(c), and does not claim to fit any of the 13d-1(b) categories.  Sanders Schedule 13G at 1 & Item 3.

31 submission to Regent of the SMH Form Demand Letter rendered SMH Capital ineligible to report its ownership of Regent stock on Schedule 13G because (as Sanders admits) that letter made Sanders and SMH Capital possibly "deemed to hold shares of the Issuer *for the purpose or with the effect of changing or influencing control of the Issuer*." Sanders Schedule 13D, Item 4 (emphasis supplied). Thus, by the time Mr. Sanders filed his Schedule 13G, the representations he made to the SEC therein (even if they might have been true last January) were nevertheless entirely false in August, in violation of the securities laws. *Jacobs v. Pabst Brewing Co.*, 549 F. Supp. 1050, 1063-64 & n.2 (D. Del. 1982) (filing a Schedule 13G when a Schedule 13D is required is actionable under Section 13(d) to the same extent as failing to make any filing at all); *E.ON AG v. Acciona S.A.*, 468 F. Supp. 2d 537, 556 (S.D.N.Y. 2006) ("[W]hile materiality must be judged in the context of the total mix of information available to [a company's] shareholders, this does not relieve [a person] of its obligations to comply with Section 13(d)."); *see also GAF Corp. v. Milstein*, 453 F.2d 709, 720 (2d Cir. 1971) ("disclosure which is false or misleading subverts th[e] purpose" of disclosures).

## B. THE SANDERS SCHEDULE 13D FILING WAS FALSE WHEN MADE

Mr. Sanders's delinquent Schedule 13G filing was meant to cure his and his affiliates' months' (and probably years') long violation of the securities laws in failing to make any filing required by Section 13 at all. It does not, however, "cure" anything. Section 13(d)'s purpose "is to alert the marketplace to every large, rapid aggregation or accumulation of securities . . . which might represent a potential shift in corporate control." *GAF*, 453 F.2d at 717; *see also* TRO Mot. at 14-15. Under Section 13(d)(3), "when two or more persons act as a ... group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a person for the purposes of this subsection." *Rosenberg v. XM Ventures*, 274 F.3d 137, 144 (3d Cir. 2001) (citing 15 U.S.C. § 78m(d)(3)); *see also* TRO Mot. at 15. Significantly,

10

courts routinely find group conduct where, as here, the parties acted in parallel with an apparent common purpose and prior relationships. *See, e.g., SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1164-66 (D.C. Cir. 1978); TRO Mot. at 15.

> 1.   **Sanders Falsely Claims He And SMH Capital Are Not Part Of A Shareholder Group, Rendering Inoperative His Schedule 13D**

Incredibly, notwithstanding their obvious coordination with Riley, including reliance on the exact same form demand letter as the other Defendants, and the acknowledgement in the Schedule 13D that the sending of the demand letters represented collective action "for the purpose or with the effect of changing or influencing control of the issuer," Sanders, SMH Capital and Riley still deny that they are part of a Section 13(d) "group." Sanders Schedule 13D, Item 6. The Form Demand Letters are virtually *identical*, and all but one was copied to John Ahn, a principal of Riley Investment Management LLC. Am. Compl. Exs. A-I, K; SMH Form Demand Letter at 4. Given Riley, Sanders and SMH Capital deny the existence of the Defendants' group, Defendants' Schedules 13D are materially misleading. *GAF*, 453 F.2d at 720; *Acciona*, 468 F. Supp. 2d at 556; *Hallwood*, 95 F. Supp. 2d at 178.

> 2.   **The "Demand Letter" Attached To The Schedule 13D As Exhibit 1 Is Different From The Version Actually Sent To Regent, Rendering Defective The Sanders Schedule 13D**

Perpetuating the falsity of the Sanders Schedule 13D, the version of the SMH Form Demand Letter Sanders attached to the Sanders Schedule 13D as Exhibit 1 is different from the version that Sanders and/or SMH Capital sent to Regent. *Compare* Sanders Schedule 13D Ex. 1 (Ex. C hereto) *with* SMH Form Demand Letter (Ex. A hereto). Notably, the version attached to the Sanders Schedule 13D removes the telltale parenthetical "(RIP)" from the first paragraph. *Id.* Again, "RIP" is Riley Investment Partners, and the parenthetical provided further indication that SMH Capital was acting in concert with the Riley group. *Id.* Sanders apparently realized this

11

and deleted the parenthetical from the version that was filed with the SEC on the Sanders Schedule 13D. *Id.* This omission makes the letter, and the Sanders Schedule 13D itself, materially false and misleading, particularly given the fact that in the Sanders Schedule 13D, Mr. Sanders goes to great lengths to disclaim Sanders's and SMH Capital's membership in the Defendants' group. Sanders Schedule 13D, Item 6; *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 608 (S.D.N.Y. 1993) ("All information disclosed in a Schedule 13D must be true and accurate."). This fact alone creates a powerful inference that Sanders and SMH Capital (and indeed, all of the Defendants) seek to conceal the existence of their group from other Regent shareholders in direct contravention of Section 13's disclosure requirements. *Hallwood*, 95 F. Supp. 2d at 178; *Drexel*, 837 F. Supp. at 608.

## C. NONE OF DEFENDANTS' SCHEDULE 13DS WILL BE LEGALLY OPERATIVE UNTIL THEY FILE A TRUE AND CORRECT JOINT SCHEDULE 13D DISCLOSING THEIR ASSOCIATION

By filing Schedule 13Ds that deny the existence of their group, Defendants' disclosures are inoperative under the SEC Rules. *Jacobs*, 549 F. Supp. at 1063-64 (inappropriate filing is actionable under Section 13(d) to the same extent as failing to make any filing at all). Indeed, false and/or misleading disclosures violate the securities laws, and "[a] preliminary injunction should issue where there has been a failure to adequately disclose material information necessary to make the statements contained in a Schedule 13D not [false or] misleading." *Acciona*, 468 F. Supp. 2d at 556 (internal citations omitted).

In this case, as shown *supra* and in Regent's original memorandum is support of this motion and Regent's First Amended Complaint, the undisputed record evidence indicates that Defendants are acting in parallel with an apparent common purpose and prior relationships. *Savoy*, 587 F.2d at 1164-66; SMH Form Demand Letter; Am. Compl. Exs. A-I, K (Form Demand Letters substantially identical). Defendants have manifested a common purpose not

12

only in their special meeting demand but also in the reasons for which they are demanding the meeting, which includes amending the company's bylaws, increasing the size of the board, electing John Ahn, Bob D'Agostino, Jared David and Joseph Patrick Hannan as directors of the Company to fill the vacancies on the board, and repealing certain provisions or amendments to the Company's bylaws. *Id*; *see also* n.3 *supra*. It is inconceivable that Defendants could have developed their identical agendas independently from one another. Yet Defendants have failed to disclose their association – as well as the full extent of their plans – to the other Regent shareholders. *See, e g*, Sanders Schedule 13D, Item 6. Unless and until they full and fairly disclose, however, the SEC Rules prevent Defendants from voting their shares to demand a shareholder meeting. SEC Rule 13d-1(e)(2).

### D.    DEFENDANTS' FAILURE TO FILE A PROPER SCHEDULE 13D RENDERS ILLEGITIMATE THE SHAREHOLDER MEETING DEMAND

Rule 13d-1(e)(1) provides, "[A] person that has reported [5% ownership] in a statement on Schedule 13G … or [that] is required to report the acquisition but has not yet filed the schedule, shall immediately become subject to Rule 13d-1(a)… and shall file a statement on Schedule 13D within 10 days" if the person acquires the intention to change or influence control of the issuer. Moreover, in such circumstances the person (or group) is barred from voting the shares until 10 days after filing a corrective Schedule 13D. SEC Rule 13d-1(e)(2); *see also Champion Parts*, 661 F. Supp. at 649.

Therefore, the shares reported on the Sanders Schedule 13G – 2,844,179 out of the total 3,744,882 on whose behalf the SMH Form Demand Letter was sent – were, in fact, disenfranchised as a result of Sanders's and SMH Capital's Section 13 violations and thus were ineligible to demand a special meeting at the time the SMH Form Demand Letter was sent (and are still ineligible). SMH Form Demand Letter at 1. As Rule 13d-1(e)(2) makes clear:

> From the time the person has acquired or holds the securities with
> a purpose or effect of changing or influencing control of the issuer
> ... until the expiration of the tenth day of the filing of the Schedule
> 13D ... that person shall not (i) vote or direct the voting of the
> securities described therein . . . .

Rule 13d-1(e)(2). Because these ineligible shares comprise 6.9% of Regent's total outstanding shares, the total number of shareholders demanding the Special Meeting never reached the requisite 20%. *Compare* Sanders Schedule 13G, Item 6 *with* the SMH Form Demand Letter at 2; *see also Jacobs*, 549 F. Supp. at 1065. Accordingly, contrary to Defendants' assertions, fewer than 20% of shareholders eligible to vote their shares demanded the special meeting. *See id.* The meeting request is thus improper. That meeting should be enjoined, the demand letters from Sanders and SMH Capital invalidated and Sanders and the other Defendants should be enjoined from voting any shares for any purpose unless and until they make the appropriate disclosures. *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 903 (D. Del. 1991) (under Section 13(d), "[t]he continuation of material nondisclosures . . . can constitute irreparable harm").

## III.    CONCLUSION

As shown *supra*, the Sanders Schedule 13G and Sanders Schedule 13D are false  and misleading, rendering the disclosures inoperative and the special meeting demand illegitimate. Defendants should be restrained from (i) proceeding with their proposal at any special meeting of Regent shareholders and (ii) distributing further misleading and incomplete information to Regent shareholders.

Date:  August 28, 2007                    Respectfully submitted,

One of the Attorneys for Plaintiff
Regent Communications, Inc.

Raymond J. DiCamillo (#3188)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
10th and King Streets
Wilmington, Delaware  19899
Tel:  (302) 651-7700
Fax:  (302) 651-7701

-and-

Laurie B. Smilan
LATHAM & WATKINS LLP
11955 Freedom Drive, Suite 500
Reston, Virginia  20190
Tel:  (703) 456-1000
Fax:  (703) 456-100

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2007, a copy of the foregoing was served by efile on the following attorneys of record:

David J. Teklits, Esquire
Kevin M. Coen, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Peter J. Walsh, Esquire
Brian C. Ralston, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899-0951

Raymond J. DiCamillo (#3188)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

REGENT COMMUNICATIONS, INC.,

             Plaintiff,

      v.

RILEY INVESTMENT PARTNERS
MASTER FUND, L.P., RILEY
INVESTMENT MANAGEMENT LLC,
SMH CAPITAL INC., SANDERS
OPPORTUNITY FUND, L.P., SANDERS
OPPORTUNITY FUND
(INSTITUTIONAL), L.P., SOF
MANAGEMENT, LLC, DON A.
SANDERS, BRYANT RILEY and JOHN
AHN,

             Defendants.

No. 07-499 JJF

Judge Joseph Farnan

**EXHIBITS FOR PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR A
TEMPORARY RESTRAINING ORDER**

**A.**     SMH Form Demand Letter

**B.**     Sanders Schedule 13G

**C.**     Sanders Schedule 13D

# EXHIBIT A

08/01/2007  14:05   281-333-4280            REORG                         PAGE  02/06
FILE No.807 08/01 '07 12:52  ID:DTC REORG & PROXY        FAX:212 855 6181          PAGE  17'06

08/01/2007  09:48   281-333-4280            REORG                                  PAGE  03/07

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
C/o The Depository Trust Company
53 Water Street
New York, NY 10041

July 31, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications, Inc.
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co., the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $.01 par value per share ("Common Stock"), of Regent Communications, Inc. (the "Company"). DTC is informed by its participant Pershing, LLC ("Participant"), that on the date hereof 3,744,882 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by various customers (see attached list) ("RIP"), a customer of Participant.

At the request of Participant on behalf of Shareholder, Cede & Co., as a holder of record of the Shares, hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel, 601 Vine Street, Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

1.  To amend Section 1 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders. Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and

may only be amended by stockholders holding the voting
power of a majority of the shares present and entitled to vote
at the meeting.

2.  To amend Section 4 of Article II of the Company's Amended and Restated By-
laws, by replacing it in its entirety with the following:

SECTION 4.  VACANCIES IN THE BOARD OF
DIRECTORS.  In the event a vacancy in the Board of
Directors or any director's office is created by reason of death,
resignation, disqualification, removal or other cause or by
reason of any increase in the authorized number of directors,
the directors then in office, though less than a majority of the
whole authorized number of directors, by the vote of a
majority of their number, or a sole remaining director may fill
such vacancy for the unexpired term; provided that any
vacancy in the Board of Directors that results from an increase
in the number of directors approved by the stockholders or the
removal of a director by the stockholders shall be filled by
stockholders at a meeting or special meeting holding a
plurality of the voting power of the shares present and entitled
to vote at such meeting.  This provision may not be amended
by the Board of Directors and may only be amended by
stockholders holding the voting power of a majority of the
shares present and entitled to vote at the meeting.

3.  To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to
the Company's Board of Directors to fill the vacancies on the Board of Directors.

4.  To repeal each provision of or amendment to the Company's Amended and
Restated By-laws (other than any amendments contemplated by the foregoing
proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the
Company's quarterly report on Form 10-Q for the quarter ended September 30,
2005, as filed with the Securities and Exchange Commission on November 9,
2005.

At the request of the Participant on behalf of Shareholder, the undersigned further request that, at
such time as the Company has received requests from other stockholders who, together with the
Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and
time of the special meeting as requested above.  This Notice shall serve to satisfy the notice
requirements of Section 2 of Article I of the By-laws as to the below described nominations and
proposals.  Cede & Co., at the request of the Participant on behalf of Shareholder, demands that
voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of
the By-laws.

2

Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting. Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery.

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting. If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee.

***

3.

FILE No.807 08/01 '07 12:52  ID:DTC REORG & PROXY     FAX:212 855 5181         PAGE  4/ 5

08/01/2007  09:40    201-393-4288          REORG                    PAGE  05/07

While Cede & Co., is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co., has no interest in this matter other than to take those steps, which are necessary to ensure that Shareholder is not denied its rights as the beneficial owner of the Shares, and Cede & Co., assumes no further responsibility in this matter.

"This letter shall supersede the Demand to Call a Special Meeting dated July 19, 2007 sent on behalf of the Participant."

Sincerely,

Cede & Co.

By: _____

Name:

Title:

**Peter J. Gleason, partner**

cc: John Ahn, Riley Investment Management LLC

4

FILE No.807 08/01 '07 12:52   ID:DTC REORG. & PROXY    FAX:212 855 5181    PAGE 5/6

RX TIME   08/01 '07 09:34

LOCATION:201 333 4280

SDM Capital
Bogust Communications :- RGCI

| Quantity: | Name | Address: |
|---|---|---|
| 794,204 | Sanders Opportunity Fund (Institutional) LP | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 247,739 | Sanders Opportunity Fund LP | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 212,469 | TCA FBO Don Sanders Pershing LLC As Custodian | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 205,000 | TCA FBO Katherine U. Sanders Pershing LLC As Custodian | 4014 Inverness Drive, Houston, TX 77019 |
| 187,000 | James Investments Inc. | 8263 North Scottsdale Road #125, Scottsdale, AZ 85250 |
| 110,000 | Bruce Slovin | 111 Fred Alf Street, New York, NY 10021 |
| 500,000 | Edward E. Heil | 8062 Fisher Island Drive, Miami Beach, FL 33109 |
| 40,000 | Steve Scott | 1021 Main Street, Suite 1570, Houston, TX 77002 |
| 50,000 | Max M Dillard | 5702 Champions Gold Drive, Houston, TX 77069 |
| 75,000 | John M. O'Quinn | 3316 Travis Street, Suite 200, Houston, TX 77002 |
| 60,000 | James W. Christmas | 63 Fern Street, Floral Park, NY 11001 |
| 75,000 | Morton A. Cohn | 600 Bering Drive, Suite 210, Houston, TX 77057 |
| 60,000 | Joe M. Bailey | PO Box 489, Flatonia, TX 78941-0489 |
| 560,000 | Katherine U. Sanders | 4014 Inverness Drive, Houston, TX 77019 |
| 25,000 | Ben D. Sanders | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 30,000 | Christine M. Sanders | 1025 S Shepherd #401, Houston, TX 77019 |
| 30,500 | Charles Banks & Becky Banks TIC | 6609 Long Drive, Houston, TX 77087 |
| 63,000 | Abest Family Foundation | 8263 North Scottsdale Road #125, Scottsdale, AZ 85250 |
| 25,000 | Courtney Cohn Hopson Separate Account | 600 Bering Drive, Suite 210, Houston, TX 77057 |
| 47,591 | Laura K. Sanders | 7793 E. Joshua Tree, Scottsdale, AZ 85250 |
| 30,000 | Tanya J. Gray | 109 Timberville, Houston, TX 77024 |
| 50,000 | J&H Partnership | 18 Augusta Pines Drive #210C, Spring, TX 77389 |
| 100,000 | Don A. Sanders Children's Trust DTD 2003 Don Weir TTEE | 600 Travis Street, Suite 3100, Houston, TX 77002 |
| 187,393 | Sanders 1998 Children's Trust DTD 12-91-1997 Donald V Weir TTEE | 600 Travis Street, Suite 3100, Houston, TX 77002 |

3,744,882

# EXHIBIT B

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## SCHEDULE 13G
### (Rule 13d−102)

**Information to be Included in Statements Filed Pursuant to Rule 13d−1(b), (c), and (d) and
Amendments Thereto Filed Pursuant to Rule 13d−2.**

**Under the Securities Exchange Act of 1934**

---

Regent Communications, Inc.

**(Name of Issuer)**

Common Stock

**(Title of Class of Securities)**

——————

December 29, 2006

**(Date of Event which Requires Filing of this Statement)**

---

Check the appropriate box to designate the rule pursuant to which this Schedule is filed:

☐ Rule 13d-1(b)

☒ Rule 13d-1(c)

☐ Rule 13d-1(d)

The information required in the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act.

Page 1 of 5 Pages

CUSIP No. 758865109

| | |
|---|---|
| 1 | NAME OF REPORTING PERSON<br>SS OR I R S IDENTIFICATION NO OF ABOVE PERSON<br><br>**DON A. SANDERS** |
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(a) ☐<br>(b) ☒ |
| 3 | SEC USE ONLY |
| 4 | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>**TEXAS** |

| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | | |
|---|---|---|
| | 5 | SOLE VOTING POWER<br>**1,255,479** |
| | 6 | SHARED VOTING POWER |
| | 7 | SOLE DISPOSITIVE POWER<br>**1,255,479** |
| | 8 | SHARED DISPOSITIVE POWER<br>**1,589,700** |

| | |
|---|---|
| 9 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>**2,844,179** |
| 10 | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (9) EXCLUDES CERTAIN SHARES     ☐ |
| 11 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (9)<br><br>**6.9%** |
| 12 | TYPE OF REPORTING PERSON<br><br>**IN** |

| Item 1 | (a) | Name of Issuer: |
|---|---|---|
| | | Regent Communications. Inc |
| | (b) | Address of Issuer's Principal Executive Offices: |
| | | 100 East RiverCenter Blvd . Suite 900, Covington, Kentucky 41011 |
| Item 2 | (a) | Name of Persons Filing: |
| | | Don A Sanders |
| | (b) | Address of Principal Business Office of, if None, Residence: |
| | | 600 Travis, Suite 3100, Houston. Texas 77002 |
| | (c) | Citizenship or Place of Organization: |
| | | |
| | (d) | Title of Class Securities: |
| | | Common Stock |
| | (e) | CUSIP Number: |
| | | 758865109 |

Item 3   If this Statement is Filed Pursuant to Rules 13d–1(b) or 13d–2(b) or (c). check whether the Person Filing is a:

- (a) ☐ Broker or dealer registered under Section 15 of the Exchange Act;
- (b) ☐ Bank as defined in Section 3(a)(6) of the Exchange Act;
- (c) ☐ Insurance company as defined in Section 3(a)(19) of the Exchange Act;
- (d) ☐ Investment company registered under Section 8 of the Investment Company Act;
- (e) ☐ An investment adviser in accordance with Rule 13d–1(b)(1)(ii)(E);
- (f) ☐ An employee benefit plan or endowment fund in accordance with Rule 13d–1(b)(1)(ii)(F);
- (g) ☐ A parent holding company or control person in accordance with Rule 13d–1(b)(1)(ii)(G);
- (h) ☐ A savings associations as defined in Section 3(b) of the Federal Deposit Insurance Act;
- (i) ☐ A church plan that is excluded from the definition of an investment company under Section 3(c)(14) of the Investment Company Act of 1940;
- (j) ☐ Group. in accordance with Rule 13d–1(b)(1) (ii)(J)

Item 4     Ownership

    (a)  Amount beneficially owned:

       2,844,179

    (b)  Percentage of class:

       6 9%

    (c)  Number of shares as to which such person has:

       (1)  Sole power to vote or to direct the vote:

          1,255,479[1]

       (2)  Shared power to vote or to direct the vote:

          0

       (3)  Sole power to dispose or to direct the disposition of:

          1,255,479[1]

       (4)  Shared power to dispose or to direct the disposition of:

          1,589,700[2]

[1]  Includes 794,284 shares owned by Sanders Opportunity Fund (Institutional), L P., a Delaware limited partnership, and 247,739 shares owned by Sanders Opportunity Fund, L P , a Delaware limited partnership (collectively, the "SOF Funds") The general partner of the SOF Funds is SOF Management, LLC, a Delaware limited liability company  Mr Sanders is a manager of SOF Management, LLC and the chief investment officer for the SOF Funds

[2]  Includes 1,589,709 shares held in client brokerage accounts over which Mr  Sanders has shared dispositive power. Mr. Sanders disclaims beneficial ownership of all shares held in client brokerage accounts over which he has shared dispositive power

Item 5     Ownership of Five Percent or Less of a Class:

    Not Applicable

Item 6     Ownership of More than Five Percent on Behalf of Another Person:

    Not Applicable

Item 7     Identification and Classification of Subsidiaries which Acquired the Security Being Reported on by the Parent Holding Company:

    Not Applicable

Item 8     Identification and Classification of Members of the Group:

    Not Applicable

Item 9     Notice of Dissolution of Group:

    Not Applicable

Item 10    Certification:

    By signing below, I certify that, to the best of my knowledge and belief, the securities referred to above were not acquired and are not held for the purpose of or with the effect of changing or influencing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction having that purpose or effect

CUSIP No. 758865109                                                            Page 5 of 5 Pages

SIGNATURES

After reasonable inquiry and to the best of my knowledge and belief. I certify that the information set forth in this statement is true, complete, and correct

Date: August 22, 2007                              Don A. Sanders
                                                   Don A Sanders

# EXHIBIT C

# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# SCHEDULE 13D
### (Rule 13d–101)

**Information to be Included in Statements Filed Pursuant to Rule 13d–1(a) and
Amendments Thereto Filed Pursuant to Rule 13d–2(a)**

### Under the Securities Exchange Act of 1934

# REGENT COMMUNICATIONS, INC.
### (Name of Issuer)

**Common Stock**
(Title of Class of Securities)

**758865109**
(CUSIP Number)

**John T. Unger
Senior Vice President and General Counsel
SMH Capital Inc.
600 Travis, Suite 3100
Houston, Texas 77002
713–993–4645**
(Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)

**July 31, 2007**
(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition which is the subject of this Schedule 13D, and is filing this schedule because of Rule 13d–1(b)(3) or (4), check the following box ☒

**Note:** Schedules filed in paper form shall include a signed original and five copies of the schedule, including all exhibits. See Rule 13d–7(b) for other parties to whom copies are to be sent

\* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes)

CUSIP NO 758865109

| | | |
|---|---|---|
| 1 | NAMES OF REPORTING PERSONS/<br>I R S  IDENTIFICATION NOS  OF ABOVE PERSONS (ENTITIES ONLY)<br><br>Don A. Sanders | |
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP (See Instructions)<br>(a) ☐<br>(b) ☒ | |
| 3 | SEC USE ONLY | |
| 4 | SOURCE OF FUNDS (See Instructions)<br><br>PF | |
| 5 | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO<br>ITEMS 2(d) or 2(E) | ☐ |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>USA | |

| NUMBER OF<br>SHARES<br>BENEFICIALLY<br>OWNED BY<br>EACH<br>REPORTING<br>PERSON<br>WITH | 7 | SOLE VOTING POWER<br><br>1,255,479 (See Item 5) |
|---|---|---|
| | 8 | SHARED VOTING POWER<br><br>0 |
| | 9 | SOLE DISPOSITIVE POWER<br><br>1,255,479 (See Item 5) |
| | 10 | SHARED DISPOSITIVE POWER<br><br>1,416,000 (See Item 5) |

| | | |
|---|---|---|
| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>2,671,479 (See Item 5) | |
| 12 | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN<br>SHARES (See Instructions) | ☐ |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br><br>6.9% (See Item 5) | |
| 14 | TYPE OF REPORTING PERSON (See Instructions)<br><br>IN | |

CUSIP NO 758865109

Item 1       Security and Issuer

This statement relates to the common stock, no par value (the "Shares"), of Regent Communications, Inc., a Delaware corporation (the "Issuer") The principal executive office of the issuer of such securities is located at 100 East RiverCenter Blvd., Suite 900, Covington, Kentucky 41011

Item 2       Identity and Background

This statement is being filed on behalf of: Don A Sanders

Mr. Sanders is Vice Chairman and a director of Sanders Morris Harris Group Inc., a Texas corporation ("SMHG"), and Chairman of the Executive Committee and a director of SMH Capital Inc., a Texas corporation ("SMH Capital"), registered broker dealer and investment advisor, and wholly-owned subsidiary of SMHG. Mr. Sanders is also a manager of SOF Management, LLC, a Delaware corporation and the general partner of Sanders Opportunity Fund, L.P. and Sanders Opportunity Fund (Institutional), L.P. (the "SOF Funds") and chief investment officer of the SOF Funds The address of his principal office is 600 Travis, Suite 3100, Houston, Texas 77002 Mr. Sanders is a citizen of the United States

During the past five years, Mr. Sanders has not been convicted in a criminal proceeding (excluding traffic violations and similar misdemeanors)

During the past five years, Mr. Sanders was not or is not subject to a judgment, decree, or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws as a party to a civil proceeding of a judicial or administrative body of competent jurisdiction

Item 3       Source and Amount of Funds or Other Consideration

Mr. Sanders has invested an aggregate of $1,064,491 (exclusive of brokerage commissions) in 212,456 Shares of the Issuer and the SOF Funds have invested an aggregate amount of $4,774,394 (exclusive of brokerage commissions) in 1,043,023 Shares of the Issuer reported hereunder. The source of the funds used to purchase the Shares of the Issuer held by Mr Sanders was personal funds and the SOF Funds was the working capital of the SOF Funds This Schedule 13D also includes 1,416,000 Shares of the Issuer with a cost basis of approximately $5,385,093 held in client brokerage accounts over which Mr Sanders has shared dispositive power The sources of funds used to purchase these Shares of the Issuer were personal funds of the respective clients

Item 4       Purpose of Transaction

Mr. Sanders is filing this Schedule 13D because, as a result of certain matters reported under Item 6 below, he is no longer eligible to report his beneficial ownership of Shares of the Issuer on Schedule 13G as he may be deemed to hold Shares of the Issuer for the purpose of or with the effect of changing or influencing the control of the Issuer

Mr Sanders, the SOF Funds, and the clients of SMH Capital acquired and continue to hold the Shares of the Issuer as a long-term investment Mr Sanders intends to review continuously his investment in the Issuer and may or may not seek involvement in the Issuer's affairs Mr Sanders reserves the right to discuss various views and opinions with respect to the Issuer and its business plans with the Issuer or the members of its senior management The discussion of such views and opinions may extend from ordinary day-to-day operations to matters such as nominees for representation on the Issuer's board of directors, senior management decisions, and extraordinary business transactions

CUSIP 758865109

Depending on his evaluation of the Issuer's business and prospects and future developments, Mr Sanders, the SOF Funds, or clients for which Mr Sanders exercises investment discretion of the Funds, may from time to time purchase additional securities of the Issuer, dispose of all or a portion of the securities held by such person, or cease buying or selling shares  Any additional purchases of securities may be in open market or privately negotiated transactions or otherwise

Except as described in this Item 4 and Item 6, neither Mr. Sanders nor the SOF Funds have any present plans or proposals which relate or would result in: (a) the acquisition by any person of additional securities of the Issuer, or the disposition of securities of the Issuer, (b) an extraordinary corporate transaction such as a merger, reorganization or liquidation, involving the Issuer or any of its subsidiaries, (c) a sale or transfer of a material amount of assets of the Issuer or any of its subsidiaries, (d) any change in the present board of directors or management of the Issuer, (e) any material change to the present capitalization or dividend policy of the Issuer, (f) any other material change in the Issuer's business or corporate structure, (g) changes in the Issuer's charter, bylaws or instruments corresponding thereto or other actions which may impede the acquisition of control of the Issuer by any person, (h) causing a class of securities of the Issuer to be delisted from a national securities exchange or to cease to be authorized to be quoted on an inter-dealer quotation system of a registered national securities association, (i) a class of equity securities of the Issuer becoming eligible for termination of registration pursuant to Section 12(g)(4) of the Securities Exchange Act of 1934, as amended, or (j) any actions similar to any of those enumerated above

Item 5        Interest in Securities of the Issuer

(a) There were 38,700,561 shares of common stock of the Issuer outstanding as of May 4, 2007, as reported by the Issuer in its quarterly report on Form 10-Q for the quarter ended March 31, 2007  Mr  Sanders may be deemed to beneficially own a total of 2,671,479 Shares of the Issuer, which represents 6 9% of the Shares of the Issuer

Neither the filing of this Schedule 13D nor any of its contents shall be deemed to constitute an admission by Mr. Sanders that he is the beneficial owner of any of the Shares referred to herein other than Shares with respect to which he possesses both voting and dispositive power for purpose of Section 13(d) of the Securities Exchange Act of 1934, as amended, or for any other purpose, and such beneficial ownership is expressly disclaimed

(b) The number of shares of common stock as to which there is sole power to direct the vote, shared power to vote or to direct the vote, sole power to dispose or direct the disposition, or shared power to dispose or direct the disposition for Mr  Sanders is as follows:

| | | |
|---|---|---|
| (1) | Sole power to vote or to direct the vote: | 1,255,479[1] |
| (2) | Shared power to vote or to direct the vote: | 0 |
| (3) | Sole power to dispose or to direct the disposition of: | 1,255,479[1] |
| (4) | Shared power to dispose or to direct the disposition of: | 1,416,000[2] |

[1]   Includes 794,284 shares owned by Sanders Opportunity Fund (Institutional), L.P., a Delaware limited partnership, and 247,739 shares owned by Sanders Opportunity Fund, L P , a Delaware limited partnership (collectively, the "SOF Funds")  The general partner of the SOF Funds is SOF Management, LLC, a Delaware limited liability company  Mr  Sanders is a manager of SOF Management, LLC and the chief investment officer for the SOF Funds

[2]   Includes 1,416,000 shares held in client brokerage accounts over which Mr  Sanders has shared dispositive power  Mr  Sanders disclaims beneficial ownership of all shares held in client brokerage accounts over which he has shared dispositive power

CUSIP 758865109

(c) The following transactions in the common stock of the Issuer were effected within the last 60 days by the following named Reporting Persons:

| | Trade Date | Trans Code | Quantity | Price |
|---|---|---|---|---|
| Discretionary account | 08/09/2007 | SELL | 540,000 | 3 1000 |
| Discretionary account | 08/02/2007 | BUY | 5,000 | 3 3402 |
| Discretionary account | 06/27/2007 | SELL | 15,000 | 3.3000 |
| Discretionary account | 06/27/2007 | SELL | 3,000 | 3 3000 |
| Discretionary account | 06/27/2007 | SELL | 3,000 | 3 3000 |

(d) Mr. Sanders, the SOF Funds, and the individual clients with respect to which Mr Sanders exercises shared dispositive power have the right to receive all dividends on the Common Stock

(e) Not Applicable

Item 6        Contracts. Arrangements, Understandings, or Relationships With Respect to Securities of the Issuer

On July 31, 2007, Cede & Co , on behalf of Mr. Sanders, the SOF Funds, and certain other clients of SMH Capital, sent a letter to the Issuer requesting a special meeting of the Issuer's stockholders to: (1) to amend the Issuer's bylaws to fix the number of directors at nine, (2) to amend the Issuer's bylaws to allow stockholders to fill vacancies on the board created by increasing the size of the board or the removal of a director by the stockholders, (3) to elect John Ahn, Bob D'Agostino, Jared Davis, and Joseph Patrick Hannan as directors of the Issuer to fill the vacancies on the board; and (4) to repeal any provisions or amendments to the Issuer's bylaws adopted after the last version filed with Securities and Exchange Commission. The foregoing description of the letter is qualified in its entirety by reference to the letter attached as Exhibit 1. Certain other shareholders of the Issuer sent, or directed Cede & Co to send, the same form of letter calling for a special meeting. Such other shareholders (based on information they provided), Mr. Sanders, the SOF Funds. the other clients of SMH Capital, hold, in the aggregate, at least 20% of the outstanding Shares of the Issuer. Mr. Sanders expressly disclaims beneficial ownership of Shares of the Issuer held by these other shareholders and disclaims the formation of a group with these other shareholders The other shareholders have not committed to, and were not asked. to vote at the special meeting. Mr Sanders did not solicit. and did not obtain, proxies with respect to the shares held by such other shareholders

Except as stated herein, Mr. Sanders is not a party to any contract, arrangement, understanding, or relationship (legal or otherwise) with any person with respect to any securities of the Issuer, including but not limited to, any transfer or voting of any such securities, finder's fees, joint ventures, loans or option arrangements, puts or calls, guarantees or profits. divisions of profit or loss. or the giving or withholding of proxies

Item 7        Material to be Filed as Exhibits.

| Exhibit | Title |
|---|---|
| 1 | Letter dated July 31, 2007. sent by Cede & Co. on behalf of Pershing LLC |

CUSIP 758865109

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete, and correct

Date: August 22, 2007

Don A. Sanders
Don A. Sanders

ATTENTION: INTENTIONAL MISSTATEMENTS OR OMISSIONS OF FACT CONSTITUTE FEDERAL CRIMINAL VIOLATIONS (see 18 U S C 1001)

Exhibit 1

## DEMAND TO CALL A SPECIAL MEETING

Cede & Co.
c/o The Depository Trust Company
55 Water Street
New York, NY 10041

July 31, 2007

VIA OVERNIGHT DELIVERY, REGISTERED MAIL AND FACSIMILE

Regent Communications. Inc
2000 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Attention: Secretary and President

Dear Sir or Madam:

Cede & Co , the nominee of The Depository Trust Company ("DTC"), is a holder of record of shares of common stock, $ 01 par value per share ("Common Stock"), of Regent Communications, Inc (the "Company") DTC is informed by its participant Pershing, LLC ("Participant"), that on the date hereof 3,744,882 of such shares (the "Shares") credited to Participant's DTC account are beneficially owned by various customers (see attached list) of Participant

At the request of Participant on behalf of Shareholder, Cede & Co , as a holder of record of the Shares. hereby requests that you call a special meeting of the Shareholders of the Company (the "Special Meeting") to be held at 10:00 a.m., Cincinnati, Ohio time, on September 3, 2007 at The Cincinnatian Hotel. 601 Vine Street. Cincinnati, Ohio 45202 for the following purposes and to conduct the following business:

I    To amend Section 1 of Article II of the Company's Amended and Restated By–laws, by replacing it in its entirety with the following:

SECTION 1. NUMBER OF DIRECTORS. The number of directors that shall constitute the entire Board shall be nine (9) until changed by the Board of Directors pursuant to the affirmative vote of a majority of the directors then in office or approval of the stockholders Any decrease in the authorized number of directors shall not become effective until the expiration of the term of the directors then in office, unless at the time of such decrease, there are vacancies on the Board of Directors which are being eliminated by the decrease. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting

2    To amend Section 4 of Article II of the Company's Amended and Restated By-laws, by replacing it in its entirety with the following:

> SECTION 4  VACANCIES IN THE BOARD OF DIRECTORS  In the event a vacancy in the Board of Directors or any director's office is created by reason of death, resignation, disqualification, removal or other cause or by reason of any increase in the authorized number of directors, the directors then in office, though less than a majority of the whole authorized number of directors, by the vote of a majority of their number, or a sole remaining director may fill such vacancy for the unexpired term; provided that any vacancy in the Board of Directors that results from an increase in the number of directors approved by the stockholders or the removal of a director by the stockholders shall be filled by stockholders at a meeting or special meeting holding a plurality of the voting power of the shares present and entitled to vote at such meeting. This provision may not be amended by the Board of Directors and may only be amended by stockholders holding the voting power of a majority of the shares present and entitled to vote at the meeting.

3    To elect John Ahn, Bob D'Agostino, Jared Davis and Joseph Patrick Hannan, to the Company's Board of Directors to fill the vacancies on the Board of Directors

4    To repeal each provision of or amendment to the Company's Amended and Restated By-laws (other than any amendments contemplated by the foregoing proposals) adopted after the version of the by-laws included as Exhibit 3(i) to the Company's quarterly report on Form 10-Q for the quarter ended September 30, 2005, as filed with the Securities and Exchange Commission on November 9, 2005

At the request of the Participant on behalf of Shareholder, the undersigned requests that, at such time as the Company has received requests from other stockholders who, together with the Shares, hold in excess of 20% of the Company's outstanding stock, the Company set the date and time of the special meeting as requested above  This Notice shall serve to satisfy the notice requirements of Section 2 of Article I of the By-laws as to the below described nominations and proposals  Cede & Co., at the request of the Participant on behalf of the Shareholder, demands that voting at the Special Meeting be conducted by a stock vote pursuant to Section 6 of Article I of the By-laws

Cede & Co . at the request of the Participant on behalf of the Shareholder, reserves the right to nominate substitute persons to the Board of Directors if the Company makes or announces any changes to its By-laws, or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any of the nominees to the Board of Directors. To the extent that the size of the Board of Directors is increased above five (5), then Cede & Co., at the request of the Participant on behalf of Shareholder, reserves the right to nominate additional nominees to be elected to the Company's Board of Directors at the Special Meeting  Additional nominations made pursuant to the preceding sentence are without prejudice to the position that any attempt to increase the size of the current Board of Directors constitutes an unlawful manipulation of the Company's corporate machinery

Cede & Co., at the request of the Participant on behalf of Shareholder, is reserving the right, consistent with the requirements of applicable law, to submit additional proposals, fewer proposals or different proposals at the Special Meeting  If this Notice shall be deemed for any reason by a court of competent jurisdiction to be ineffective with respect to the any of the foregoing proposals at the Special Meeting, or if any individual nominee to the Board of Directors shall be unable to serve, this Notice shall continue to be effective with respect to the remaining proposals, the remaining nominees and as to any replacement nominee

\* \* \*

3

While Cede & Co is furnishing this request as the Shareholder of record of the Shares, it does so only at the request of the Participant and only as a nominal party for the true party in interest, Shareholder. Cede & Co. has no interest in this matter other than to take those steps, which are necessary to ensure the Shareholder is not denied its rights as the beneficial owner of the Shares. and Cede & Co assumes no further responsibility in this matter

"This letter shall supersede the Demand to Call a Special Meeting dated July 19, 2007 sent on behalf of the Participant "

Sincerely,

Cede & Co

By:     Peter J. Glessen, partner
Name:
Title:

cc: John Ahn. Riley Investment Management LLC

4